IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Cartwright International Van Lines, Inc., et al.,

Plaintiffs

v.

Lurita Alexis Doan, Administrator of General Services,

Defendant

No. 1:07-1454 (EGS)

PLAINTIFFS' RESPONSE TO DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES SUBMITTED IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## A. ANALYSIS OF DEFENDANT'S RESPONSE

By submission of its Memorandum of 31 pages, together with three declarations, it is clear that the nature of plaintiffs' case before this Court has been intentionally or inadvertently misunderstood. By the Complaint and its Motion for Preliminary Injunction, plaintiffs have advanced only one contention for resolution by this Court, namely whether GSA has violated and is continuing to violate its own regulations by authorizing the continuing offsets of millions of dollars without according plaintiffs their rights under GSA's audit regulations.

We previously pointed out that the GSA's regulations specifically require that before monies can be taken from carriers, whether by offset or otherwise, GSA has to issue a Notice of Overcharge which sets forth the specific basis for the overcharge. The record establishes that the Notices of Overcharge set forth as the only basis for the offset action the allegation that the surcharge billed under Item 433 of the governing solicitation is not applicable to Codes 5, T, and J. (Sullivan Declaration, para. 3).[1] GSA has made clear, both in the Director of Transportation Audits' letter to the undersigned, dated July 25, 2007, and at the meeting in GSA's offices at which were present both Andrew Cartwright and Kenneth Sullivan, as well as representatives of other baggage carriers, the president of the Household Goods Forwarders Association and the undersigned, that GSA claimed the alleged overcharges were supported because the surcharges should have been billed as "waiting time" under Item 503 of the solicitation. (Second Sullivan Declaration, para. 3). In its response and in the attached declarations, defendant improperly states that the requirement to bill under Item 503 was advanced by plaintiffs. (Clark Declaration, para. 12). When this is recognized, plaintiffs' case is established on the merits since it shows that GSA has offset monies on a basis not set forth in any Notice of Overcharge in clear

[1] The reference to Sullivan Declaration is to the Declaration of Kenneth J. Sullivan attached to Plaintiffs' Memorandum of Points and Authorities. Mr. Sullivan's Second Declaration is Attachment A hereto.

violation of paragraph (f) of Rule 102.-118.435 and further, that plaintiffs have not been accorded the opportunity to respond to this Item 503 "waiting time" argument by appropriate protest, as provided for in Rule 102-118.600, before an offset can properly be made. We are asking the Court to require GSA to follow its own regulations.

Although we have carefully read the defendant's presentation, line for line, we do not see any response to our contention that GSA has violated and is continuing to violate its own regulations. At no point, either in the 31-page memorandum or in the three declarations, is there any reference by defendant to the GSA regulations upon which plaintiffs rely. In its stead, we see a detailed description of GSA's procedure and an argument of why under defendant's interpretation of Items 433 and 503 of the solicitation plaintiffs' billings for the surcharges are not supportable. Clearly we do not agree with the conclusions reached by GSA but by not complying with its regulations, GSA has deprived plaintiffs of their right to administratively oppose GSA's newly found "waiting time" contention prior to offset. However, the "waiting time" issue is not before this Court. We will address the government's interpretation of Items 433 and 503 at an appropriate time in the proper forum. By bringing this action, it was not our intention to attempt to immerse this Court in the required interpretation of provisions of the solicitation. As counsel for defendant states, and we agree, that

is a matter for the Civilian Board of Contract Appeals or the United States Court of Federal Claims.

Our case before this Court is limited to the simple issue of whether GSA followed its own regulations which require that a carrier be given a Notice of Overcharge setting forth the specific basis relied upon by GSA for the overcharge, together with the opportunity to file a protest to said Notice before GSA can lawfully authorize the taking of monies from a carrier, be it by offset or otherwise. In fact, Declarant Bates (para. 8) makes clear that the GSA procedure is to provide this information in a Notice of Overcharge and to accord a carrier 60 days to file a protest. The only matter presented to the Court for decision is whether the basis for the offset is set forth in the Notice of Overcharge and whether plaintiffs have been accorded the opportunity to protest before offset, as provided for in GSA's regulations. The Notices of Overcharge set forth as the only basis for the alleged overcharge the inapplicability of the pass-through authorized by Item 433 to Code J shipments. Both the GSA letter of July 25, 2007, as well as the meeting of August 2nd, establish that the basis for GSA's offset is not the inapplicability of Item 433 to Code J shipments but the contention, which we do not believe to be supportable, that the surcharges should have been billed under Item 503 of the solicitation. It is clear that substantial monies have been taken from both Foremost and Cartwright without setting forth

in any Notice of Overcharge any reference to waiting time or to Item 503 and unless enjoined by this Court these offsets will continue.

We are not merely raising a technical argument. By declining to give the Notice required by its own regulations, GSA has deprived plaintiffs of the opportunity to respond to this contention, a right specifically provided in its regulations. It is our position that offsets, made without observing the procedural safeguards imbedded in GSA's rules, are totally improper and that the Court should enjoin GSA from taking such unlawful actions.

When GSA follows its own rules and issues Notices of Overcharge, setting forth the belated basis on which it supports its action, namely Item 503 of the solicitation, plaintiffs and other carriers will respond to that contention. If the carriers are not successful before GSA, an appeal from the GSA action will be filed either with the Civilian Board of Contract Appeals or in the United States Court of Federal Claims. However, the issue of whether the agency acted arbitrarily and capriciously by taking an action in direct conflict with its own regulations is, we respectfully submit, a matter properly before this Court under the Administrative Procedure Act. For the reasons which follow, we respectfully submit that a preliminary injunction should issue requiring GSA to act in consonance with its own regulations.

B. REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

The standards for issuance of a preliminary injunction require the Court to consider whether the moving party has established (1) a substantial likelihood that it will prevail on the merits (2) whether the moving party will suffer irreparable injury unless the preliminary injunction is granted (3) whether the injunction will substantially injure other interested parties and (4) whether the public interest would be furthered by the injunction. CityFed Financial v. Office of Thrift Supervision, 58 F.3d 738,746 (D.C. Cir.1995) Virginia Petroleum Jobbers Association v. F.P.C., 295 F.2d 921, 925 (D.C. Cir. 1958).

In the CityFed Corp. decision, the Court explained the application of these factors, stating:

> "In deciding whether to grant an injunction the district court must balance the strengths of the requesting party's arguments in each of the four required areas. If the arguments for one fact are particularly strong, an injunction may issue even if the arguments in other areas are rather weak. An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a slight showing of irreparable injury..." (58 F.3d 747) (Citations omitted). (Emphasis supplied).

See also Washington Metropolitan Area Transit Authority v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir.1977).

We maintain that the plaintiffs are entitled to a preliminary injunction under the above criteria. As we show below, plaintiffs have established a substantial likelihood of success on the merits by showing that GSA has

deprived, and is continuing to deprive plaintiffs of their rights under GSA's audit regulations by not stating the basis for offsetting the alleged overcharges against them in the Notices of Overcharge and by not according plaintiffs their right under GSA's regulations to protest the ground of the alleged overcharge. We further show that the public interest strongly favors that government agencies adhere to their regulations, that plaintiffs will suffer irreparable injury unless the preliminary injunction is granted and that the grant of a preliminary injunction will not substantially affect the government.

1. Plaintiffs Have Established a Strong Likelihood that They Will Prevail on The Merits.

Defendant contends that plaintiffs cannot prevail on the merits, first by alleging this Court does not have jurisdiction over their claims and, second, by contending GSA, by offsetting the alleged overcharges against plaintiffs for reasons other than those stated in the Notice of Overcharge, did not act arbitrarily and capriciously or otherwise not in accordance with law in violation of the APA, 5 U.S.C. § 706 (2) (A).

a. This Court Has Jurisdiction.

Defendant contends that this Court does not have jurisdiction because plaintiffs seek money damages in a contract dispute over which the Court of Federal Claims has exclusive jurisdiction. For the reasons fully set forth in Plaintiffs' Opposition to Defendant's Motion to Dismiss filed herewith, we

maintain that this Court has jurisdiction to grant the declaratory and injunctive relief sought under 28 U.S.C. 1331 and the APA, 5 U.S.C. §701 et seq., because plaintiffs are seeking non-monetary relief from this Court, viz. a declaration that GSA has deprived them of their rights under GSA's Audit Regulations, that GSA's action in violation of its own regulations is arbitrary and capricious in violation of the APA 5 U.S.C. §706 (2) (A), and lastly, plaintiffs will not receive any monetary benefit from any declaratory decision which this Court may issue on the merits of the Complaint. Accordingly, for the reasons stated in Plaintiffs' Opposition to the Motion to Dismiss filed herewith, the Court has jurisdiction under the rationale of the decisions in Kidwell v. Secretary of the Army, 56 F.3d 279 (D.C. Cir. 1995); Tootel v. Secretary of the Navy 446 F.3d 167, 169 (D.C. Cir. 2006) and Megapulse, Inc. v. Lewis. 671 F.2d 959 (D.C. Cir. 1982).

b. Plaintiffs Have Established a Strong Likelihood that They Will Prevail on the Merits.

It is clear that a party seeking an injunction has the burden of showing that there is a likelihood that he will prevail on the merits of the issues raised in its complaint. The only issue raised in the Complaint pending before the Court in this case is whether GSA followed its own regulations in taking plaintiffs' monies through offset. As set forth in our Complaint, defendant's Regulation 102-118.435(f) requires that the specific basis for the offset be set forth in the Notice of Overcharge and Regulation 102-118.600 requires GSA to give the

carrier a reasonable time within which file a protest to the Notice. In her

Declaration, Ms. Bates stated that the normal amount of time given a protester for

this purpose is 60 days. (Bates Declaration para. 8). As shown by the Bates

Declaration, para. 6, the sole basis stated for the offset in GSA's Notice of

Overcharge is that Item 433 of the solicitation does not apply to Codes 5, T, and J

shipments. However, GSA has belatedly taken the position that the offsets are

supported on the basis that the billings should have been made under Item 503 of

the solicitation covering waiting time, rather than under Item 433. This basis

now advanced by GSA to support its offsets was never contained in any of the

hundreds of Notices of Overcharge which have been issued. In fact GSA

continues to issue Notices of Overcharge asserting as its sole basis the

inapplicability of Item 433 to Code J shipments. This new "waiting time"

contention was first made known to plaintiffs by letter to their counsel, dated July

25, 2007, and was advanced again by Mr. Fitzgerald at the meeting of August 2,

2007. (Sullivan Second Declaration, para. 3; Att. 3 to the Declaration).

Although not raised in the Complaint before this Court, defendant infers that the

plaintiffs have been given the opportunity to respond to their latest contention of

"waiting time". Nothing could be further from the truth. At the August 2nd

meeting with GSA, the carriers' request for a limited time to respond to this new

"waiting time" contention before GSA resumed its offsets was denied. (Sullivan

Second Declaration, para. 3) although plaintiffs and other carriers offered to issue

a bond which would protect the government if, during this delay, the unlikely cessation of business by one of the carriers occurred. (Att. B, hereto).

In any event, it is clear that the Notices of Overcharge issued never contained the contention now relied on by GSA viz. that the billings should have been made under Item 503 of the solicitation covering waiting time rather than under Item 433 which, as shown in the Notices of Overcharge, were issued solely because of the alleged inapplicability of this Item to Code J shipments. The result is that GSA violated its own regulations by failing to include in its Notices of Overcharge the specific basis relied on for its offset and further by doing this, defendant denied plaintiffs the opportunity to respond to this newly asserted contention before the offsets were made, again in direct conflict with the terms of the regulations.

As stated in our initial filing with this Court, the taking of a person's funds requires observance of the basic elements of due process. By its own regulations, GSA appears to recognize this by providing for specific notice of what it relies on for the taking and then according the party affected 60 days to show why the basis relied upon for the offset is improper. In this case, GSA exercised its power to offset funds but failed to observe the safeguards embedded in its own regulations to avoid the arbitrary and capricious action here complained of.

For this reason, we respectfully submit that we have not only shown a likelihood of prevailing on the merits, viz. that defendant GSA took substantial

monies from plaintiffs without observing the requirements of its own regulations but has established, at this stage of the proceeding, that the allegations of the Complaint are true.

2. The Public Interest Strongly Favors Issuance of a Preliminary Injunction.

The sole reason for the Complaint is that GSA's Audit Division is violating its own regulation by offsetting alleged overcharges without stating the basis for the allegation of overcharge in the Notice of Overcharge, as required by 41 C.F.R. §102-118.435. This failure deprived plaintiffs of their right under 41 C.F.R. §120-118.600 to oppose the overcharge before the offset is made.

We maintain that the public interest strongly favors requiring government agencies to follow their published regulations in order to ensure that persons dealing with the government are accorded their rights. See Service v. Dulles, 354, U.S. 363, 388, 77 S. Ct. 1157, 1165 (1957) (The Secretary of State, having issued regulations, "could not so long as the Regulations remained unchanged, proceed without regard to them."); Brooks v. Clifford, 409 F.2d 700, 706 (4th Cir. 1969) ("...regulations once issued must be followed scrupulously"); Clean Ocean Action v. York, 57 F.3d 328, 333 (3rd Cir. 1995) ("An agency is bound by the express terms of its regulations until it amends or revokes them"); Reuters, Ltd. v. F.C.C., 781 F2.d 946 (D.C. Cir. 1986) ("... it is elementary that an agency must adhere to its own rules and regulations.").

3.    Plaintiff Foremost Will Suffer Irreparable Harm Unless the
      Preliminary Injunction Is Granted.

Defendant contends that to establish irreparable injury a plaintiff must

show that the "threat to the business's liability is certain to occur in the near

future as a direct result of the threatened action." (Def. Brief, p. 26).[2]  Plaintiff

Foremost has shown that its ability to continue in existence is directly threatened

by GSA's offset of monies the result of which will force Foremost out of the

SDDC procurement and thus out of business.  This is inevitable unless GSA is

enjoined from offsetting Foremost's funds because 100 percent of Foremost's

revenues is derived from service to the Military (Sullivan Second Declaration,

para. 5) and as of August 3, 2007, Foremost is at risk of offset of $2,593,173.16.[3]

(Sullivan Second Declaration, para. 5).  In the event of these total offsets, which

GSA commenced in August 2007 and is continuing, Foremost will be forced out

of the SDDC procurement because it will not be able to maintain SDDC's

mandatory financial requirement of a current operating ratio of 1:1, cash,

accounts receivable and prepaid transportation expenses divided by current

liabilities. (Second Sullivan Declaration, Att. 5 ¶2.2.1).  As Mr. Sullivan shows,

the threatened offsets will result in a shortfall of $573,870 in Foremost's current

operating ratio which will subject Foremost to disqualification by SDDC thus

---

[2]  Citing Power Mobility Coalition v. Lewitt, 404 F. Supp. 2d 190, 204 (D.D.C 2005).

[3]  This is an ever-increasing amount as Foremost is billed for this surcharge on all
Code J shipments.

completely cutting off Foremost's revenues and putting the company out of business. Clearly this is irreparable harm which will result unless GSA is enjoined pending a decision on the merits of this Complaint.

GSA does not deny that it will offset all monies from Foremost, but contends that Foremost could remain in business by accepting GSA's offer of a repayment plan which requires Foremost to execute a note to pay the government approximating $2.6 million dollars with interest. If payments were to be spread over a five-year period, Foremost would have to pay over $500,000 per year. Not only is $500,000 in additional annual expense not affordable causing a draconian reduction in Foremost's cash flow but failure to make a given payment causes the entire amount covered by the note to become immediately due. The occurrence of either of these events will put Foremost out of business. The financial drain of repayment will so burden Foremost that it is highly unlikely that Foremost could continue to operate.[4] (Sullivan Second Declaration, para. 6).

Lastly, defendant contends that plaintiffs may file an "administration claim against GSA." (Defendant's Brief, p. 28). This opportunity is precisely what GSA has denied plaintiffs by violating its regulations and not stating the actual basis for the alleged overcharge in the Notices of Overcharge.

---

[4] Entering into this agreement before defendant complies with its regulations and before plaintiffs' response to GSA's newly announced contention of Item 503 waiting time has been evaluated would be premature and unreasonable. If the Court grants the preliminary injunction, plaintiffs have made clear their willingness to protect the government by furnishing an appropriate bond. See discussion under section 4, infra.

Plaintiffs respectfully asks this Court to enjoin GSA from taking their monies until it states in Notices of Overcharge that the amounts paid to plaintiffs were improper because they should have been billed as "waiting time" under Item 503. GSA's offsets have been shielded from appropriate protests by plaintiffs by GSA's unlawful issuance of Notices of Overcharge which fail to make any mention of "waiting time" or of Item 503.

Further, defendant's contention that plaintiffs have a right of appeal to the Civilian Board of Contract Appeals (CBCA) of an adverse decision of GSA's Audit Division is an inadequate remedy because an action before the BCA will not stop the offsets issued without compliance with the governing regulations.

Further, when as here, damages will be difficult if not impossible to ascertain an injunction is the sole effective remedy. See: Danielson v. Local 275, Laborers Int. 4 of No. Amer; 479 F.2d 1033, 1037 (2d Cir. 1973) ("Irreparble injury is suffered when monetary damages are difficult to ascertain or are inadequate."). Blackwelder Furn. Co. Elec. V. Seilig Mfg. Co., Inc. 550 F.2d 189, 197 (4th Cir. 1977) ("...irreparability of harm includes the impossibility of ascertaining with any accuracy the extent of the loss"). (Citations omitted).

4.    The Harm that Plaintiffs Will Suffer if the Preliminary Injunction Is Not Issued Outweighs any Harm to Defendant.

Defendant claims that the government would be harmed if the preliminary injunction is granted because it would prevent GSA's from issuing offsets to

collect on some of the billings at issue. (Defendant's Brief, p. 29). This alleged harm to the government would be eliminated by GSA's acceptance of the offer of Foremost, Cartwright and other baggage carriers of a surety bond. This was offered on terms acceptable to GSA accompanied by an agreement to waive the statute of limitations on the collection of overcharges. (Fitzgerald Declaration, para. 15; Bates Declaration para. 11; Att. B hereto).

In any event, the harm to the government is directly caused by its own failure to follow the specific terms of its regulations by not setting forth in any of the Notices of Overcharge the failure of Cartwright or Foremost to bill for waiting time under Item 503, and by GSA's failure to accord Cartwright and Foremost the right to file a protest to such Notice before offsets are made. As a result, the harm to plaintiffs clearly outweighs the harm to defendant, especially when the harm complained of results from defendant's own unlawful actions and the government could be protected against any harm occurring from the issuance of a preliminary injunction by plaintiffs' issuance of an appropriate bond.

For the above reasons, plaintiffs respectfully ask the Court to issue the requested preliminary injunction.

ORAL ARGUMENT IS RESPECTFULLY REQUESTED.

Respectfully submitted,

/s/Alan F. Wohlstetter
Alan F. Wohlstetter DC Bar No. 112797
Stanley I. Goldman DC Bar No. 109405
DENNING & WOHLSTETTER
888 Seventeenth Street, NW
Suite 700
Washington, DC  20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorneys for Plaintiffs
Cartwright International Van Lines, Inc.,
Foremost Forwarders, Inc.

Dated:  September 5, 2007

SECOND DECLARATION OF KENNETH J. SULLIVAN

1. My name is Kenneth J. Sullivan. I am President of Foremost Forwarders, Inc. I have previously executed a declaration which has been submitted by my counsel in support of a preliminary injunction against GSA's action which I have asked him to obtain on our behalf.

2. I have been advised by my attorney that documents defendant has filed with the Court state that Foremost Forwarding, Inc. has not filed protests to Notices of Overcharges issued by GSA in connection with my company's billings under Item 433 of the solicitation. That statement is unfortunately incorrect. My company has submitted to date a total of 404 protests to GSA's Notices of Overcharge. In support, I attach a copy of our protest, dated April 25, 2006, in response to the Notice of Overcharge, dated April 3, 2006 (Att.1), as well as a letter from GSA, dated August 24, 2007, which acknowledges receipt of protests to some 200 additional Notices of Overcharge. (Att.2).

3. I further understand that it has been represented to the Court that the baggage carriers, such as Foremost, or its representative, asserted that the billings for this surcharge should have been made under Item 503 of the solicitation which covers waiting time. Again, this is inaccurate. I attach a letter from James F. Fitzgerald, GSA's Director of Transportation Audits, dated July 25, 2007, addressed to my attorney (Att.3), in which he advises that the billings for these

surcharges should have been made under Item 503 rather than under Item 433 of the governing solicitation. Further, I attended a meeting in the offices of GSA held on August 2, 2007, and at that meeting it was Mr. Fitzgerald, and not the carriers in attendance, Mr. Head or Mr. Wohlstetter, our attorney, who suggested that the proper billing was under waiting time provided for under Item 503. At the August 2nd meeting the carriers' request for a limited time to respond to GSA's new "waiting time" contention prior to proceeding with offsets was denied although the carriers offered to file a bond covering the government's risk in the unlikely event that a carrier went out of business during this period.

4. Although our first billings under Item 433 were characterized as WAR, with a clarification by SDDC the subsequent billings for delay time were made as CON (Att.4). SDDC clarification messages, dated March 25 and April 11, 2006 provided, respectively:

> "8. CON may be billed by TSPs due to delays entering the port..." (April 11, 2006).
>
> ***
>
> "9. CON may be billed by TSPs due to delay entering the port..." (March 25, 2006).

Mr. Fitzgerald first wanted the carriers to pay these charges and then rebill them as CON in lieu of WAR. He subsequently agreed, however, that this would be an unnecessary administrative and financial burden and agreed to rule on our protests to the Notices of Overcharge without any rebilling. As shown, none of the Notices

of Overcharge sets forth the reason for disallowing the billing the references to

WAR, rather than CON, both under Item 433.

     5.     I am advised by my counsel that the government has questioned the

validity of my statement that taking of these monies through offset would

undermine my company's ability to service military shipments which, in turn,

would result in the destruction of my company since 100 percent of Foremost's

revenues are derived from military shipments. As of August 30, 2007, there is a

total of $2,593,173.16 which is subject to the issuance of Notices of Overcharge

and offset by GSA. SDDC, which administers the Military Personal Property

Program, by regulation, has determined that for a participant in this program to be

financially qualified, it must have a current operating ratio of 1:1 (Att.5 ¶ 2.2. 1a).

As shown by the attached (Att.6), the total current assets of Foremost, consisting of

cash, accounts receivable and prepaid transportation expenses total $3,829,542.

Current liabilities total $1,810,239. If GSA is permitted to offset the surcharges

billed and previously paid by the government under Item 433 to compensate

plaintiffs' port agents for delays encountered at military airports, Foremost's total

current liabilities would increase to $4,403,412 which would result in a short fall of

$573,870 in the required current operating ratio. This would not only undercut

Foremost's ability to service military shipments, as I have previously stated, but

would subject Foremost to disqualification by SDDC for failing to meet the

required financial ratios. This, in turn, would result in a complete stoppage of Foremost's revenues which would put my company out of business.

6.     Although Cartwright (but not Foremost) has been furnished by GSA with a form of a promissory note, even if Foremost were offered this option and we were able to spread payments over a five year period, the effect on Foremost's cash flow plus the condition that the entire amount of the note becomes immediately due and payable should Foremost not be able to pay a given installment makes clear to me that these requirements would have such an adverse affect on Foremost's working capital that my company could not continue in business.

I declare under penalty of perjury that the foregoing statement is true and correct to the best of my knowledge.

Kenneth J. Sullivan

Date: August 31, 2007

Att. 1

**Foremost Forwarders, Inc.**
P.O. BOX 23758 • TIGARD, OR 97223
(503) 245-1090 • ITT TELEX 4997676
FAX # 503/245-1395

RECEIVED
MAY - 1
DENNING & WOHLSTETTER

April 25, 2006

Mr. James F. Fitzgerald
Director Audit Division (FBA), GSA
2200 Crystal Drive, Rm 300
Arlington, Va. 20406

Dear Mr. Fitzgerald:

This is in response to the Notice of Overcharge issued on April 3, 2006 against Foremost Forwarders, Inc. in the amount of $1,202,695.45. As shown by the underlying support, these charges were incurred either as a result of port congestion and/or security handling matters. CON or COF.

As you are aware, SDDC has just released a clarification message, dated April 11, 2006, now on SDDC's Website, which I understand has been furnished to you by the Household Goods Forwarders Association of America (HHGFAA). The document recognizes the point made by the HHGFAA and Alan Wohlstetter, General Counsel of the Association, who is also our attorney, that port congestion results from trucks as well as vessels. You will note that the SDDC clarification reflects this fact in its definition of CON and further makes clear that these surcharges are applicable to Codes 5,T and J. On this basis, we ask that the Notice of Overcharge be withdrawn.

In the past, we have also received Notices of Overcharge covering our assessment of unpacking charges on baggage shipments. As you may know, at the last Military/Industry Symposium, SDDC agreed that the unpacking of baggage shipments will be made a pre approved item thereby eliminating any need for authorization of this service by the Transportation Officer. In other words the request of the military member will suffice for payment of this service
Although nothing has yet been issued by SDDC on this subject, I would ask, to avoid unnecessary administrative burdens that you defer any further action on this type of overcharge until SDDC has advised of its final action on this matter.

Should anything further be required, please let me know.

Sincerely,

FOREMOST FORWARDERS, INC.

By: [signature]
Kenneth J. Sullivan, President



Att. 2
p. 1 of 11

U.S. General Services Administration

AUGUST 24, 2007

FOREMOST FORWARDERS INC
P O BOX 23758

TIGARD , OR 97281-3758

DEAR SIR/MADAM:

THIS NOTICE IS TO ADVISE YOU THAT YOUR PROTESTS AND/OR CLAIMS FOR THE ACCOUNTS LISTED ON THE FOLLOWING PAGE(S) HAVE BEEN RECEIVED AND ARE CURRENTLY BEING PROCESSED.

YOU WILL BE ADVISED BY THE TRANSPORTATION AUDITS DIVISION ON THEIR FINAL DETERMINATION. IF YOU HAVE ANY QUESTIONS OR NEED ADDITIONAL INFORMATION, PLEASE PHONE (202) 219-0958.

DIRECTOR,
TRANSPORTATION AUDIT DIVISION

Crystal Plaza 4, ROOM 300(FBA)
2200 Crystal Drive
Arlington, VA 20406



 U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | AMOUNT OF CLAIM |
|---|---|---|---|---|
| 08/20/07 | JP901684Y | Various | Various | $ 2,415.30 |
| 08/20/07 | JP931498Y | Various | Various | $ 2,208.49 |
| 08/20/07 | JP981740Y | Various | Various | $ 2,838.38 |
| 08/20/07 | JP984033Y | Various | Various | $ 2,036.02 |
| 08/20/07 | JP984130Y | Various | Various | $ 2,848.26 |
| 08/20/07 | JQ001399Y | Various | Various | $ 2,338.17 |
| 08/20/07 | JQ003405Y | Various | Various | $ 2,813.65 |
| 08/20/07 | JQ010832 | 21638228 | R HOPKO | $ 8.80 |
| 08/20/07 | JQ187737Y | Various | Various | $ 2,125.53 |
| 08/20/07 | JQ193227Y | Various | Various | $ 1,133.53 |
| 08/20/07 | JQ232473X | Various | Various | $ 1,455.35 |
| 08/20/07 | JQ292045X | Various | Various | $ 1,677.25 |
| 08/20/07 | JQ326210Y | Various | Various | $ 1,431.11 |
| 08/20/07 | JQ338002Y | Various | Various | $ 1,251.26 |
| 08/20/07 | JQ433941X | Various | Various | $ 1,539.98 |
| 08/20/07 | JQ434196X | Various | Various | $ 1,545.54 |
| 08/20/07 | JQ434521X | Various | Various | $ 1,643.21 |

U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | | AMOUNT OF CLAIM |
|---|---|---|---|---|---|
| 09/20/07 | JQ434605X | Various | Various | $ | 2,211.62 |
| 08/20/07 | JQ434762X | Various | Various | $ | 1,307.35 |
| 08/20/07 | JQ434865X | Various | Various | $ | 2,123.15 |
| 08/20/07 | JQ440172X | Various | Various | $ | 2,231.49 |
| 08/20/07 | JQ440250X | Various | Various | $ | 1,392.63 |
| 08/20/07 | JQ440573X | Various | Various | $ | 1,539.51 |
| 08/20/07 | JQ446999X | Various | Various | $ | 1,946.25 |
| 08/20/07 | JQ447468X | Various | Various | $ | 2,493.45 |
| 08/20/07 | JQ447664X | Various | Various | $ | 1,746.13 |
| 08/20/07 | JQ447702X | Various | Various | $ | 1,861.40 |
| 08/20/07 | JQ448667X | Various | Various | $ | 2,476.73 |
| 08/20/07 | JQ448714X | Various | Various | $ | 2,107.50 |
| 08/20/07 | JQ449158X | Various | Various | $ | 2,396.70 |
| 08/20/07 | JQ449465X | Various | Various | $ | 2,556.05 |
| 08/20/07 | JQ449543X | Various | Various | $ | 2,406.27 |
| 08/20/07 | JQ449777X | Various | Various | $ | 2,396.10 |
| 08/20/07 | JQ453827X | Various | Various | $ | 2,031.23 |
| 08/20/07 | JQ456521X | Various | Various | $ | 1,995.50 |
| 08/20/07 | JQ461055X | Various | Various | $ | 2,283.11 |
| 08/20/07 | JQ466860X | Various | Various | $ | 1,548.68 |
| 08/20/07 | JQ469576X | Various | Various | $ | 2,285.32 |
| 08/20/07 | JQ471693X | Various | Various | $ | 2,316.14 |



U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | AMOUNT OF CLAIM |
|---|---|---|---|---|
| 08/20/07 | JQ578591X | Various | Various | $ 2,570.99 |
| 08/20/07 | JQ579820X | Various | Various | $ 1,210.09 |
| 08/20/07 | JQ580626X | Various | Various | $ 1,725.92 |
| 08/20/07 | JQ582949X | Various | Various | $ 2,422.03 |
| 08/20/07 | JQ599707X | Various | Various | $ 2,190.29 |
| 08/20/07 | JQ599981X | Various | Various | $ 2,015.37 |
| 08/20/07 | JQ600745X | Various | Various | $ 1,301.06 |
| 08/20/07 | JQ601661X | Various | Various | $ 1,759.43 |
| 08/20/07 | JQ602395X | Various | Various | $ 1,587.96 |
| 08/20/07 | JQ605078X | Various | Various | $ 1,098.91 |
| 08/20/07 | JQ605088X | Various | Various | $ 2,371.28 |
| 08/20/07 | JQ605306X | Various | Various | $ 1,807.62 |
| 08/20/07 | JQ605631X | Various | Various | $ 1,767.61 |
| 08/20/07 | JQ605694X | Various | Various | $ 1,679.87 |
| 08/20/07 | JQ605833X | Various | Various | $ 1,457.71 |
| 08/20/07 | JQ608075X | Various | Various | $ 2,015.07 |
| 08/21/07 | JQ003505Y | Various | Various | $ 2,978.80 |
| 08/21/07 | JQ004088Y | Various | Various | $ 2,438.80 |
| 08/21/07 | JQ004553Y | Various | Various | $ 971.35 |
| 08/21/07 | JQ005624Y | Various | Various | $ 2,683.25 |
| 08/21/07 | JQ009371Y | Various | Various | $ 2,643.80 |
| 08/21/07 | JQ086652Y | Various | Various | $ 1,695.85 |



U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | AMOUNT OF CLAIM |
|---|---|---|---|---|
| 08/21/07 | JQ184569Y | Various | Various | $ 2,515.55 |
| 08/21/07 | JQ184581Y | Various | Various | $ 2,461.14 |
| 08/21/07 | JQ241880X | Various | Various | $ 1,776.43 |
| 08/21/07 | JQ245362X | Various | Various | $ 1,598.38 |
| 08/21/07 | JQ275420X | Various | Various | $ 1,825.78 |
| 08/21/07 | JQ287610X | Various | Various | $ 1,596.02 |
| 08/21/07 | JQ287878X | Various | Various | $ 2,070.45 |
| 08/21/07 | JQ288305X | Various | Various | $ 1,869.65 |
| 08/21/07 | JQ321054X | Various | Various | $ 1,650.79 |
| 08/21/07 | JQ321162X | Various | Various | $ 1,216.19 |
| 08/21/07 | JQ321763X | Various | Various | $ 1,672.81 |
| 08/21/07 | JQ322419X | Various | Various | $ 2,253.27 |
| 08/21/07 | JQ326264X | Various | Various | $ 1,829.76 |
| 08/21/07 | JQ326661X | Various | Various | $ 1,452.38 |
| 08/21/07 | JQ348759X | Various | Various | $ 1,618.96 |
| 08/21/07 | JQ350473X | Various | Various | $ 1,551.63 |
| 08/21/07 | JQ351049X | Various | Various | $ 1,728.00 |
| 08/21/07 | JQ364303X | Various | Various | $ 1,552.84 |
| 08/21/07 | JQ368816X | Various | Various | $ 2,174.63 |
| 08/21/07 | JQ370648X | Various | Various | $ 1,961.73 |
| 08/21/07 | JQ435031X | Various | Various | $ 2,180.55 |
| 08/21/07 | JQ435762X | Various | Various | $ 1,233.30 |



U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | | AMOUNT OF CLAIM |
|---|---|---|---|---|---|
| 08/21/07 | JQ445999X | Various | Various | $ | 1,361.11 |
| 08/21/07 | JQ446233X | Various | Various | $ | 2,073.35 |
| 08/21/07 | JQ446551X | Various | Various | $ | 2,110.75 |
| 08/21/07 | JQ446952X | Various | Various | $ | 1,718.67 |
| 08/21/07 | JQ478577X | Various | Various | $ | 2,048.39 |
| 08/21/07 | JQ478873X | Various | Various | $ | 2,048.60 |
| 08/21/07 | JQ479236X | Various | Various | $ | 2,157.85 |
| 08/21/07 | JQ479423X | Various | Various | $ | 1,824.02 |
| 08/21/07 | JQ480031X | Various | Various | $ | 2,581.20 |
| 08/21/07 | JQ480222X | Various | Various | $ | 2,335.25 |
| 08/21/07 | JQ480363X | Various | Various | $ | 2,541.91 |
| 08/21/07 | JQ480557X | Various | Various | $ | 2,280.35 |
| 08/21/07 | JQ480771X | Various | Various | $ | 2,376.28 |
| 08/21/07 | JQ481583X | Various | Various | $ | 2,053.95 |
| 08/21/07 | JQ485021X | Various | Various | $ | 2,173.92 |
| 08/21/07 | JQ488584X | Various | Various | $ | 1,394.79 |
| 08/21/07 | JQ488601X | Various | Various | $ | 1,943.29 |
| 08/21/07 | JQ494337X | Various | Various | $ | 2,303.66 |
| 08/21/07 | JQ494347X | Various | Various | $ | 2,192.44 |
| 08/21/07 | JQ494562X | Various | Various | $ | 1,502.97 |
| 08/21/07 | JQ495360X | Various | Various | $ | 2,146.23 |
| 08/21/07 | JQ495657X | Various | Various | $ | 2,390.79 |





U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | AMOUNT OF CLAIM | |
|---|---|---|---|---|---|
| 08/21/07 | JQ496095X | Various | Various | $ | 1,965.75 |
| 08/21/07 | JQ496378X | Various | Various | $ | 2,147.45 |
| 08/21/07 | JQ498472X | Various | Various | $ | 2,284.56 |
| 08/21/07 | JQ501204X | Various | Various | $ | 1,528.41 |
| 08/21/07 | JQ504359X | Various | Various | $ | 2,127.90 |
| 08/21/07 | JQ505018X | Various | Various | $ | 1,985.70 |
| 08/21/07 | JQ507158X | Various | Various | $ | 1,916.43 |
| 08/21/07 | JQ507527X | Various | Various | $ | 1,805.25 |
| 08/21/07 | JQ507917X | Various | Various | $ | 2,243.71 |
| 08/21/07 | JQ514496X | Various | Various | $ | 1,983.61 |
| 08/21/07 | JQ518938X | Various | Various | $ | 2,120.98 |
| 08/21/07 | JQ593465X | Various | Various | $ | 2,452.33 |
| 08/22/07 | JQ009567Y | Various | Various | $ | 2,710.75 |
| 08/22/07 | JQ009882Y | Various | Various | $ | 2,586.05 |
| 08/22/07 | JQ009996Y | Various | Various | $ | 3,040.41 |
| 08/22/07 | JQ010608Y | Various | Various | $ | 2,404.00 |
| 08/22/07 | JQ011012 | 2163821B | W JOHNSON | $ | 7.45 |
| 08/22/07 | JQ011907Y | Various | Various | $ | 2,514.98 |
| 08/22/07 | JQ012294Y | Various | Various | $ | 2,548.45 |
| 08/22/07 | JQ012322 | 2170242B | B JONES | $ | 11.05 |
| 08/22/07 | JQ012417Y | Various | Various | $ | 2,454.45 |
| 08/22/07 | JQ018458Y | Various | Various | $ | 2,590.98 |



U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | AMOUNT OF CLAIM |
|---|---|---|---|---|
| 08/22/07 | JQ037211 | 2164229B | J JENSEN | $ 14.95 |
| 08/22/07 | JQ078570Y | Various | Various | $ 1,652.26 |
| 08/22/07 | JQ087048Y | Various | Various | $ 2,221.58 |
| 08/22/07 | JQ184180Y | Various | Various | $ 2,111.25 |
| 08/22/07 | JQ184359Y | Various | Various | $ 1,000.10 |
| 08/22/07 | JQ184379Y | Various | Various | $ 2,666.05 |
| 08/22/07 | JQ185026Y | Various | Various | $ 2,210.75 |
| 08/22/07 | JQ185357Y | Various | Various | $ 1,847.75 |
| 08/22/07 | JQ185756Y | Various | Various | $ 2,767.47 |
| 08/22/07 | JQ185759Y | Various | Various | $ 2,220.45 |
| 08/22/07 | JQ185957Y | Various | Various | $ 1,662.50 |
| 08/22/07 | JQ186022Y | Various | Various | $ 1,896.85 |
| 08/22/07 | JQ186238Y | Various | Various | $ 2,655.56 |
| 08/22/07 | JQ186671Y | Various | Various | $ 1,465.05 |
| 08/22/07 | JQ187170Y | Various | Various | $ 2,779.47 |
| 08/22/07 | JQ292267X | Various | Various | $ 1,367.00 |
| 08/22/07 | JQ294244X | Various | Various | $ 1,779.61 |
| 08/22/07 | JQ350765X | Various | Various | $ 2,042.45 |
| 08/22/07 | JQ366173X | Various | Various | $ 1,598.84 |
| 08/22/07 | JQ368855X | Various | Various | $ 1,754.72 |
| 08/22/07 | JQ371686X | Various | Various | $ 1,900.48 |
| 08/22/07 | JQ375402X | Various | Various | $ 1,546.90 |



U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | AMOUNT OF CLAIM |
|---|---|---|---|---|
| 08/22/07 | JQ375503X | Various | Various | $ 1,940.59 |
| 08/22/07 | JQ375577X | Various | Various | $ 1,754.42 |
| 08/22/07 | JQ375612X | Various | Various | $ 1,605.62 |
| 08/22/07 | JQ381583X | Various | Various | $ 1,298.50 |
| 08/22/07 | JQ381895X | Various | Various | $ 1,776.19 |
| 08/22/07 | JQ382073X | Various | Various | $ 1,929.97 |
| 08/22/07 | JQ386111X | Various | Various | $ 2,218.17 |
| 08/22/07 | JQ386113X | Various | Various | $ 1,151.68 |
| 08/22/07 | JQ386236X | Various | Various | $ 1,698.83 |
| 08/22/07 | JQ387063X | Various | Various | $ 2,403.20 |
| 08/22/07 | JQ387671X | Various | Various | $ 1,228.95 |
| 08/22/07 | JQ387699X | Various | Various | $ 1,953.56 |
| 08/22/07 | JQ387711X | Various | Various | $ 1,086.07 |
| 08/22/07 | JQ392290X | Various | Various | $ 1,794.54 |
| 08/22/07 | JQ393711X | Various | Various | $ 1,258.40 |
| 08/22/07 | JQ393890X | Various | Various | $ 1,640.22 |
| 08/22/07 | JQ441489X | Various | Various | $ 1,659.94 |
| 08/22/07 | JQ443374X | Various | Various | $ 2,391.96 |
| 08/22/07 | JQ444277X | Various | Various | $ 1,736.21 |
| 08/22/07 | JQ445673X | Various | Various | $ 1,478.91 |
| 08/22/07 | JQ445720X | Various | Various | $ 1,733.00 |
| 08/22/07 | JQ445840X | Various | Various | $ 1,890.45 |



U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | | AMOUNT OF CLAIM |
|---|---|---|---|---|---|
| 08/22/07 | JQ573677X | Various | Various | $ | 2,411.18 |
| 08/22/07 | JQ593970X | Various | Various | $ | 1,885.36 |
| 08/24/07 | JQ212175X | Various | Various | $ | 1,455.40 |
| 08/24/07 | JQ376116X | Various | Various | $ | 1,345.94 |
| 08/24/07 | JQ376256X | Various | Various | $ | 1,241.30 |
| 08/24/07 | JQ376477X | Various | Various | $ | 1,764.93 |
| 08/24/07 | JQ376582X | Various | Various | $ | 1,451.99 |
| 08/24/07 | JQ376973X | Various | Various | $ | 1,317.61 |
| 08/24/07 | JQ377200X | Various | Various | $ | 1,105.64 |
| 08/24/07 | JQ377413X | Various | Various | $ | 1,096.23 |
| 08/24/07 | JQ378363X | Various | Various | $ | 1,184.74 |
| 08/24/07 | JQ378451X | Various | Various | $ | 1,578.93 |
| 08/24/07 | JQ396299X | Various | Various | $ | 2,346.98 |
| 08/24/07 | JQ397811X | Various | Various | $ | 1,942.16 |
| 08/24/07 | JQ400621X | Various | Various | $ | 2,357.55 |
| 08/24/07 | JQ527869X | Various | Various | $ | 2,396.58 |
| 08/24/07 | JQ528627X | Various | Various | $ | 1,838.42 |
| 08/24/07 | JQ533682X | Various | Various | $ | 1,663.78 |
| 08/24/07 | JQ535259X | Various | Various | $ | 2,254.63 |
| 08/24/07 | JQ546490X | Various | Various | $ | 1,572.96 |
| 08/24/07 | JQ551232X | Various | Various | $ | 2,005.56 |
| 08/24/07 | JQ551250X | Various | Various | $ | 1,819.85 |



U.S. General Services Administration

| DATE RECORDED | DRN | CARRIER BILL NUMBER | SHIP SPECIFIC REFERENCE | AMOUNT OF CLAIM |
|---|---|---|---|---|
| 08/24/07 | JQ551521X | Various | Various | $ 1,907.30 |
| 08/24/07 | JQ551619X | Various | Various | $ 1,638.06 |
| 08/24/07 | JQ554231X | Various | Various | $ 1,744.55 |
| 08/24/07 | JQ557723X | Various | Various | $ 1,589.12 |
| 08/24/07 | JQ557808X | Various | Various | $ 1,973.70 |
| 08/24/07 | JQ558813X | Various | Various | $ 1,500.70 |
| 08/24/07 | JQ559851X | Various | Various | $ 1,612.80 |
| 08/24/07 | JQ593273X | Various | Various | $ 1,912.50 |

TOTAL NUMBER OF CLAIMS: 201



GSA Federal Supply Service

JUL 25 2007

Alan F. Wohlstetter
Denning & Wohlstetter
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006

Dear Mr. Wohlstetter:

This letter is only in response to your letter dated January 23, 2007 in your capacity as the representative of the Household Goods Forwarders Association of America, Inc. (HHGFAA) concerning various Notices of Overcharge issued by GSA in connection with the pass-through of congestion expenses for Code J shipments. This letter is not in response to your January 23 letter to the extent your letter replied to any of the specific Notices that have been issued to various members of HHGFAA whom you listed in the signature block of your January 23 letter. Your January 23 letter responded to GSA's position that pass-through charges from the TSPs for port congestion, which were billed by port agents for the TSPs, were not properly filed with the appropriate regulatory body, and consequently, not allowable. You disagreed, and requested rescission of the subject Notices of Overcharge issued on that basis.

You have made various arguments to support your position including those summarized below.

(1) The legal assumption upon which the Notices of Overcharge are based is incorrect – there is no legal requirement for port agents to issue tariffs.

(2) SDDC erroneously assumed that the surcharges (including port congestion surcharges) listed in Items 432 Application of Transportation SFR – HHG and 433 Application of Transportation SFR – UB are required to be filed with a regulatory body.

(3) The Notices of Overcharge result in services rendered without payment since the Government requested the services from transportation service providers (TSPs) who contracted with port agents who performed and were paid by the TSPs.

(4) In International Personal Property Rate Solicitation (IPPRS) 13, Items 432 and 433 were amended to compensate the TSPs for charges billed by

U.S. General Services Administration
1901 S. Bell Street
Arlington, VA 20406-0003
www.gsa.gov

port agents for excessive delays caused by increased security measures as a result of September 11, 2001 (9/11).

GSA has reviewed your arguments. GSA is not convinced that the provisions of IPPRS 13, Items 432 and 433, can be interpreted and applied under the circumstances in the manner that you have described. The provisions are unambiguous and GSA applies them significantly differently from the way that you have.

IPPRS 13, Items 432 and 433

The Port Congestion Surcharge (CON) has been defined by SDDC as "an extra charge that is billed to the TSP for controlling congestion of trucks/vessels entering/departing the port." Since only the port has control over congestion at its own port, only the port can levy a fee for controlling congestion at the port. Only fees levied by the port are applied to control congestion at the port. Such fees may be imposed by commercial ports (ocean or air). Such fees are not imposed by ports on military installations. Fees denoted as for congestion at the port imposed by "port agents" who are subcontractors to the TSPs are not applied to control congestion at the port. Thus, they are not CON (fees for controlling congestion at the port) in accordance with the provisions of Items 432 and 433.

The Notices of Overcharge were issued against the TSPs for congestion surcharges billed by the "port agents" to the TSPs, These "port agents" are, in fact, the agents or subcontractors of the TSPs; they are not the agents of, and do not represent, the port. Such surcharges from "port agents" who are subcontractors of the TSPs are inappropriate under Items 432 and 433. In addition, these surcharges have been applied to shipments entering/departing ports on military installations where such fees are not levied by the military port. Thus, it is clear that the "port agents" are subcontractors to the TSPs and are not representatives of the port, and these charges are deemed inappropriate.

Compensation for Services Rendered

You have described the service provided by the ITGBLTSP port agents that warrants compensation as delays at military installations resulting from increased security measures as a consequence of "9/11." Such delays, additional waiting time due to the increased security, is not Port Congestion Surcharge (CON) as defined by SDDC. Such additional waiting time has already been provided for. The IPPRS 13 provides for excessive delays as defined by Item 503 Waiting Time. For international shipments, the TSP will expend 3 hours waiting time for direct deliveries and 1 hour for from SIT or attempted pickups, the free waiting time, before the TSP will have excessive delays which potentially meets the definition of Item 503 Waiting Time. The TSP must notify the PPSO of the potential delay, and notify the PPSO prior to expiration of the free waiting time

and obtain further instructions. Paid waiting time, the additional waiting time, begins only upon the expiration of the free waiting time and requires the prior approval of the PPSO of the potential delay. These instructions have also been posted on SDDC's website as a policy regarding delays due to installations security requirements.

Additionally, the Defense Transportation Regulation (DTR) requires TSPs to immediately notify the local transportation officer and HQ MTMC via email of any incidents that "produce significant loss, damage, or delay resulting from strikes, port congestion, fires, pilferage, vandalism and similar incidents. " See DTR, IV-B-9. Those procedures illustrate the importance to SDDC of delays including those caused by port congestion. These reporting requirements are separate and apart from the prior notification and approval required for Item 503 Waiting Time.

GSA concludes that ITGBL TSPs are not entitled to separately bill for waiting time due to increase security at the port incurred by the TSPs' port agent under the provisions of IPPRS13, Items 432 and 433 (as amended). A certain amount of free waiting time is included in the Transportation SFR for Items 432 and 433. The appropriate charge for delays at the ports resulting in excessive waiting time is provided for in IPPRS 13, Item 503 (as amended) where prior notification and approval of the PPSO is prescribed. GSA therefore denies your request for rescission of the subject Notices of Overcharge.

Accordingly, GSA will immediately resume the issuance of Notices of Overcharge for the pass-through of congestion surcharges for Code J shipments from the TSPs' "port agents," as well as the collection of the debt due the Government from the TSPs for these transportation overcharges as permitted by regulations, including administrative offset. Such Notices of Overcharge may be successfully rebutted by presenting documentation supporting waiting time in accordance with IPPRS 13, Item 503 (as amended). If a TSP is unable to pay the debt due to the Government immediately, GSA is willing to consider alternate arrangements for payment.

Sincerely,

James F. Fitzgerald
Director

Att. 4
p. 1 of 3

April 11, 2006

The below are clarifications regarding the recently published definitions, application, and personal property shipping office/transportation service provider (TSP) responsibilities of air fuel (100), bunker (BSC), war risk (WAR), port/terminal security handling (COF), and port congestion (CON) surcharges.

1. The definitions and applications were clarifications to the current International Personal Property Rate Solicitation. The clarification provided guidance as to how TSPs should have always billed and should continue to bill the listed surcharges. These clarifications will be incorporated into the next released rate solicitations. The March 1, 2006 effective date was applicable to date of publishing only, as SDDC has frequently been asked when a document was posted to our website.

2. Effective March 3, 2006, the war risk areas were redefined.

3. In alignment with Item 419 of the Domestic Solicitation, code 1 has been incorporated into billing codes BSC, COF, and CON.

4. SDDC has reviewed the feedback and invoices provided from industry and have incorporated codes 1, 4, and 5 into billing code COF and CON.

5. BSC and FAF are one and the same – a surcharge, sometimes added to ocean TSP rates, justified by higher fuel costs. When it is necessary for a TSP to bill more than one BSC and/or FAF charge per shipment, the TSP must provide supporting documentation, when requested. The supporting documentation must reflect the monetary amount(s) billed.

6. HQ SDDC solely authorizes alternate port usage, in the events of port congestion/closure. Authorization is provided via a supplement to the solicitation and disseminated via a worldwide message posted to the SDDC website.

7. TSP's should only be invoicing for WAR according to the "**JWC HULL War, Strikes, Terrorism and Related Perils.**" SDDC will provide updates to this list, as they occur. Invoices submitted that fall outside of the aforementioned listing are erroneous. Repetitious erroneous billing will result in letters of warning or other action(s), as SDDC deems appropriate.

8. CON may be billed by TSP's due to delays entering the port, in addition to extra charges billed to control the congestion of vessels entering/departing the port.

9. If there have been charges denied in the past, that were valid and fall under our recent clarification, TSP's have the ability to rebill those line items. When doing so, request that TSP's add a note in CWA to explain the rebilling.

10. The practice of duplicate billing, whether domestic or intentional, is a direct violation of government billing policies. The PPSO is responsible for receiving and processing movement orders using the Personal Property Shipping system (CWA), and resolve any billing disputes with the TSP. If a PPSO finds that a TSP has double billed a single charge, the PPSO should place the charge in a denial status as required, and send the TSP one (1) Letter of Warning (LOW) for the first offence using procedures outlined in the DTR, Appendix O, B.2. b. 3. If duplicate billing continues, PPSO's will take immediate suspension action against the TSP using

Att. 4
p. 2 of 3

procedures outlined in the DTR Appendix O, B.2, 4, c. All duplicate billing thereafter by the same TSP will be forwarded to SDDC for a formal investigation. If deemed appropriate, SDDC will convene a Carrier Review Board against the TSP to remove their company from participation in the DOD Personal Property Program in accordance with procedures outlined in SDDC Regulation 15-1 "Procedures for Disqualifying and Placing Carriers in Nonuse".

SDDC has recognized the need to provide a clearly defined description, as well as clarify the usage of the item codes Air Fuel Surcharge (100), Bunker Surcharge (BSC, FAF, BAF), War Risk (WAR), Port/Terminal Security Handling Surcharge (COF), and Port Congestion Surcharge (CON). The below definitions and application become effective March 1, 2006 and will be incorporated into the next Personal Property International (I-17) and Domestic (D-11) Rate Solicitations.

DEFINITIONS:

**Air Fuel Surcharge (100)** – An extra charge that is charged to the Transportation Service Provider (TSP) by the aerial TSP. This surcharge is applicable to codes of service 6 and 8.

**Bunker Surcharge (BSC)** – An extra charge, also known as Bunker Adjustment Factor (BAF) or Fuel Adjustment Factor (FAF), sometimes added to ocean TSP rates. This surcharge is justified by higher fuel costs. This surcharge is applicable to codes of service a 1, 2, 3, 4, and 7.

**War Risk Surcharge (WAR)** – Insurance coverage for loss of goods resulting from any act of war or as a result of the vessel "entering" the war risk area when billed by the ocean/air TSP. This charge is only applicable to areas deemed "war risk" areas, as provided for on the SDDC website, www.sddc.army.mil, Personal Property/POV, International, War Risk Areas. This surcharge is applicable to codes of service 1, 2, 3, 4, 6, 7 and 8.

**Port/Terminal Security Handling Surcharge (COF)** – An extra charge that is billed to the TSP for security of their cargo while at the port of embarkation/debarkation. This surcharge is applicable to codes of service 1, 2, 3, 4, 5, 6, 7, 8, T, and J.

**Port Congestion Surcharge (CON)** – An extra charge that is billed to the TSP for controlling the congestion of trucks/vessels entering/departing the port. This surcharge is applicable to codes 1, 2, 3, 4, 5, 7, T, and J.

APPLICATION:

**Note 1:** Air fuel, bunker and War Risk surcharges are not applicable on shipment codes of service T, 5, and J. These charges are all billed by the ocean/air TSP and this service is performed by the U.S. Government, in codes of service T, 5, and J.

**Note 2:** Surcharges, other than those identified above, will be considered on a case-by-case basis with reimbursement decision resting at the sole discretion of the Surface Deployment and Distribution Command. With the exception of fuel related surcharges and unless otherwise stated, all surcharges are meant to be temporary in nature in and until the TSP has been provided official notification to incorporate such additional fees into their single factor rate.

Att. 4
p. 3 of 3

25 March [illegible]

The below are clarifications regarding the recently published definitions, applications, and personal property shipping office/transportation service provider (TSP) responsibilities of [illegible] (100), bunker (BSC), war risk (WAR), port/terminal security handling (COF), and port congestion (CON) surcharges.

1. The definitions and applications were clarifications to the current International Personal Property Rate Solicitation. The clarification provided guidance as to how TSPs should have always billed and should continue to bill the listed surcharges. These clarifications will be incorporated into the next released rate solicitations. The March 1, 2006 effective date was applicable to date of publishing only, as SDDC has frequently been asked when a document was posted to our website.

2. Effective March 3, 2006, the war risk areas were redefined.

3. In alignment with Item 439 of the Domestic Solicitation, code 1 has been incorporated into billing codes BSC, COF, and CON.

4. SDDC has reviewed the feedback and invoices provided from industry and have incorporated codes [illegible], [illegible], and 5 into billing code COF.

5. In accordance with items 432 and 433 of the International Solicitation, all customs clearance processes are to be included in the single factor rate. Agricultural inspection and AMS security fees are not reimbursable.

6. BSC and FAF are one and the same – a surcharge, sometimes added to ocean [illegible] rates, justified by higher fuel costs. When invoicing, a TSP should be listing one line item for BSC OR FAF per shipment.

7. HQ SDDC solely authorizes alternate port usage, in the events of port congestion/closure. Authorization is provided via a supplement to the solicitation and disseminated via the SDDC website.

8. TSP's should only be invoicing for WAR according to the "JWC HULL War, Strikes, Terrorism and Related Perils." SDDC will provide updates to this list, as they occur. Invoices submitted that fall outside of the aforementioned listing are erroneous. Repetitious erroneous billing will result in letters of warning or other action(s), as SDDC deems appropriate.

9. CON may be billed by TSP's due to delays entering the port, in addition to extra charges billed to control the congestion of vessels entering/departing the port.

10. If there have been charges denied in the past, that were valid and fall under our recent clarification, TSP's have the ability to rebill those line items. When doing so, request that TSP's add a note in CWA to explain the rebilling.

11. Any TSP that is found to double bill the same charge will receive a letter of warning. If the TSP is found to continue to double bill the same charge, SDDC will take action, as appropriate.

Att. 5
p. 1 of 2

# How to do Business in the Department of Defense Personal Property Program

*January 6, 2006*

SDDC Pam 55-4

2.2 Qualification Requirements for New Entrants

2.2.1 Financial Data/Statements/Ratios

SDDC expects the TSPs to meet specific requirements at the time of application and maintain acceptable ratios while participating in the DoD program. New entrants must have their independent TSP Financial Representative (e.g. CPA) submit their most current financial data that has been audited or reviewed.

a. Annual Financial Data/Statement Requirements

Approved TSPs must have their independent Financial Representative provide data from audited or reviewed financial statements to SDDC annually. Publicly held firms may have their CFO submit the required financial data based on annual reports reviewed by the firm's independent auditor and submitted to the SEC. These TSP's must meet and maintain a quick ratio of 1 to 1 or greater and a positive debt to equity ratio of 4 to1 or less. Data will be submitted via the web using the Financial Statement web form. Financial statements must be prepared according to generally accepted accounting principles using the accrual basis of accounting. Annual financial statements must be submitted within 150-calendar days of year-end, normally defined as December 31st. If a company closes its books on a fiscal year basis (other than December 31st), then financial statements should be submitted within 150-calendar days of that date. Companies desiring to change their report dates must coordinate this with SDDC's Internal Review Office at (703) 428-3205. Requests to change reporting periods must be received not later than 90 days before the intended start of changed reporting period. SDDC will approve or reject the requested change not later than 30 days prior to the start of the change period.

## FINANCIAL DATA/STATEMENT

STANDARD CARRIER ALPHA CODE (SCAC) : **FOFD**

This information is provided under the Penalty of Law. Submission of financial statements certifies that the foregoing statements are true and complete. Any misrepresentation or falsification may be subject to prosecution under 18 USC 1001.

### PART I - CERTIFICATION

Select Reviewed or Audited and Fill in the Date :

☑ I have *reviewed* financial statements as of: 12/31/2006

☐ I have *audited* financial statements as of:

I certify that the specified Transportation Service Provider : **Foremost Forwarders, Inc.** has a **Quick Ratio** of **2.12: 1** and a **Debt to Equity Ratio** of **.24: 1**

### PART II - ACCOUNTANT INFORMATION

| | |
|---|---|
| ACCOUNTANT NAME: John R. Gunter | ACCOUNTING FIRM TELEPHONE NUMBER: (816) 471-1520 |
| ACCOUNTING FIRM: Grant Thornton LLP | |
| ADDRESS: 1201 Walnut | SUITE (If applicable): Suite 1000 |
| CITY: Kansas City | STATE: MO ZIP: 64106 |

### PART III - BALANCE SHEET

| Current Assets: | | Current Liabilities: | |
|---|---|---|---|
| Cash | $ 1135011 | Accounts payable | $ 621395 |
| Accounts receivable | $ 1746625 | Accrued liabilities | $ 1188844 |
| Due from affiliate | $ 5339012 | | |
| Prepaid transportation expense | $ 947906 | | |
| Prepaid expenses and sundry deposits | $ 3000 | | |
| Total Current Assets: | $ 9171554 | Total Current Liabilities: | $ 1810239 |
| | | Total Liabilities: | $ 1810239 |
| | | Total Equity: | $ 7487780 |

### CERTIFICATION STATEMENT:

By electronic submission of this form, I state that I have reviewed or audited the financial statements of the Transportation Service Provider specified on Part I of this form. The ratios stated on Part I and financial data extracted to Part III of the form were based on data presented in the referenced financial

statements.

FORM EDITION: 01 SEPTEMBER 2004

Back to Previous Screen

This form was submitted by John R Gunter on 5/7/2007
This form was processed by Lawrence A Powers on 5/8/2007

August 7, 2007

Mr. James F. Fitzgerald
james.fitzgerald@gsa.gov

cc: Raymond Wong, Esq.
raymond.wong@gsa.gov

Dear Jim:

As I committed at our recent meeting, I attach a copy of a bond which, in my opinion, secures the government's rights in the event that it is determined that the GSA decision on the Notices of Overcharge which were the subject of our meeting are correct. The actual bond form I was furnished was inapplicable to our situation. I have no pride of authorship and am willing to make any reasonable changes which you believe are in order. I would like to hear promptly on the bond issue.

Assuming that we get together on the bond, as consideration for deferring further deductions, I can agree that we will waive the statute of limitations insofar as it relates to Notices of Overcharge received by my clients as at the date of our meeting.

I look forward to your response.

Alan

Attachment

APPEAL BOND

BOND AMOUNT: $
DATE BOND EXECUTED 9/__/07

Bond No. ___________

KNOW ALL MEN BY THESE PRESENT, That we ____________________, as
(insert name of TSP)

Principal, having our principal place of business at ___________________ in the State of ____________________, and ___________________, as Surety, are firmly bound to the United States in the sum of $__________, which sum will be paid to the United States if it is finally determined that the United States is entitled to the monies set forth in Notices of Overcharge issued by the General Services Administration (GSA) in response to invoices for port congestion/security charges incurred on Code J shipments, viz. unaccompanied baggage shipments forwarded from origin to destination by ______________, via a military airport, with the military supplying the air transportation. If it is finally determined that payment of the aforesaid Notices of Overcharge is not due and payable, this bond shall be of no further force and effect and shall be promptly cancelled.

| Principal | Surety |
|---|---|
| ______________________ | ______________________ |
| (Legal Name) | (Legal Name |
| ______________________ | ______________________ |
| Address | Address |
| By______________________ | ______________________ |
| Its President | |