IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Cartwright International Van Lines, Inc., <u>et al</u>.,<br><br>   Plaintiffs<br><br>     v.<br><br>Lurita Alexis Doan, Administrator of General<br> Services,<br><br>   Defendant | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 07-1454<br>)  (EGS)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF FILING

By Notice, dated November 8, 2007, defendant's counsel advised the Court that defendant determined not to file a copy of the response to the carrier claims which defendant filed with the Civilian Board of Contract Appeals (CBCA) in <u>American World Forwarders, Inc.</u>, CBCA No. 888-RATE.

As the Court was previously advised, the CBCA is proceeding with the decision in the <u>American World</u> case and has stayed the twelve related cases involving the same issue, including the Cartwright Van Lines and Foremost Forwarders cases, CBCA Nos. 904-RATE and 908-RATE, respectively.

We maintain that the government's responsive pleading in <u>American World</u>, CBCA 888-RATE, is relevant to the Court's inquiry and should be provided. At the status conference of November 7, 2007, GSA's counsel in the

CBCA case, represented to the Court that GSA's responsive pleadings in the Cartwright and Foremost CBCA cases will be substantially similar to that filed in the American World case.

On November 7, 2007, we filed, pursuant to the Court's Order, a brief we filed with the CBCA in American World in reply to the government's response to our claims. It is our understanding that this Court asked the parties to file all relevant pleadings filed in the CBCA record. We believe the GSA pleading, albeit in letter form, is necessary for a full understanding of the cases pending with the CBCA and we are filing it for consideration by this Court.

Respectfully submitted,

/s/Alan F. Wohlstetter
Alan F. Wohlstetter DC Bar No. 112797
Stanley I. Goldman DC Bar No. 109405
DENNING & WOHLSTETTER
888 Seventeenth Street, NW
Suite 700
Washington, DC 20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorneys for Plaintiffs
Cartwright International Van Lines, Inc.,
Foremost Forwarders, Inc.

Dated: November 13, 2007





SEP 2 6 2007

Ellen P. Fennessy
Board Judge
Civilian Board of Contract Appeals
1800 F Street, N.W.
Washington, DC 20405

Subject: <u>American World Forwarders, Inc.</u> CBCA 888-RATE

Dear Judge Fennessy:

This submission is in response to CBCA 888-RATE filing, concerning the
captioned Appellant's request for review of the GSA Audit Division's (GSA's)
audit of multiple Government Bills of Lading identified as document reference
number (DRN) AMNW0001.

American World Forwarders (AMNW) is appealing GSA's issuance of a Notice of
Overcharge (NOC) and subsequent administrative offsets, to recover excess
transportation costs billed the United States Government. AMNW states that:

1. AMNW is claiming amounts due under the International Personal Property
   Rate Solicitation I-13 (Rate Solicitation I-13), as amended. Rate
   Solicitation I-13 authorizes pass-through charges billed by port agents,
   costs incurred for port security measures (COF) and port congestion
   (CON) as defined in item 252. In the present case, the port agent that
   AMNW refers to is, in fact, a subcontractor paid for by AMNW, and not an
   employee or contractor working on behalf of the port itself. The surcharges
   claimed by AMNW were assessed by AMNW subcontractors serving
   military air terminals for unaccompanied baggage shipments moving in
   Code J service.

2. The subject surcharges are assessed to the ITGBL TSP when AMNW
   subcontractors described by AMNW as "port agents" pick up at or deliver
   to military air terminals to compensate those AMNW subcontractors for
   costs incurred due to increased security at military installations due to
   9/11/01 which caused port congestion and delays in accessing the ports.
   The costs alleged result entirely from increased waiting times experienced
   by AMNW subcontractors allegedly due to security procedures. AMNW
   subcontractors have not been charged any fee for security procedures
   imposed by ports in response to the events of 9/11/01.

U.S. General Services Administration
1901 S. Bell Street
Arlington, VA 20406-0003
www.gsa.gov

3.  GSA issued NOCs based on the Surface Deployment and Distribution Command's (SDDC's) February 24, 2006 message that COF/CON surcharges do not apply to codes of service J, T, and 5. SDDC subsequently issued a message dated April 11, 2006, reversing its position.

4.  The message dated April 11, 2006 redefined the application of CON and COF to include codes of service J.T and 5.

5.  The April 11, 2006 message establishes that AMNW is entitled to CON/COF surcharges for the involved Code J shipments in accordance with Item 433d, for pass through charges assessed by port agents.

GSA has reviewed its records and disagrees.

BACKGROUND

Records indicate that AMNW assessed war risk surcharges (WAR) on the subject shipments which were electronically (EDI) billed through the Defense Finance and Accounting System that requires no paper documentation. These systems are heavily automated, with payments made automatically without audit, and the charges that AMNW submitted were individually very small. These numerous small payments did not initially trigger an audit but during routine post-payment audits, questions were raised concerning them. Once SDDC issued the February 24, 2006 clarification, GSA issued a NOC to recover excess transportation charges that were not due according to the definition of WAR (see Exhibit 1) as follows:

> **War Risk Surcharge (WAR)** – Insurance coverage for loss of goods resulting from any act of war or as a result of the vessel "entering" the war risk area when billed by the ocean/air TSP. This charge is only applicable to areas deemed "war risk" areas, as provided for on the SDDC website, www.sddc.army.mil, Personal Property/POV, International, War Risk Areas. This surcharge is applicable to codes of service 2, 3, 4, 6, 7, and 8.

This definition did not change in clarification message issued April 11, 2006 (see Exhibit 2)

As a result of the second modification, GSA received an e-mail dated April 11, 2006 (Exhibit 3) from Mr. Terry Head, President of the Household Goods Forwarders Association of America, Inc. (HHGFAA) notifying GSA of the reversal. The significance of this e-mail is the indication that there was confusion concerning the proper billing for services rendered. See Mr. Chuck White's (Director of Government & Military Relations, HHGFAA) statement included in the e-mail. A subsequent e-mail (Exhibit 4) from Mr. Head, dated April 26, 2007, also supported the premise that the industry was not properly billing these surcharges.

GSA replied to AMNW's (see Exhibit 5) protest by providing options to successfully challenge the NOC as follows:

1. Charges that were for CON and COF had to be supported by third part billings (as required by Item 433d).

2. CON and COF that were improperly billed as WAR had to be documented and submitted to DFAS-IN.

3. Charges billed as WAR were invalid and NOC would not be rescinded.

According to AMNW's protest (Exhibit 6), the charges billed as WAR was for port congestion (CON) and/or security (COF) handling services and consequently would be classified as category 2. GSA does not know whether AMNW properly billed these charges to DFAS –IN.

RATE SOLICITATION I-13

GSA agrees that the ITGBL TSP may bill for surcharges when actually billed by the port agent pursuant to regularly filed tariff(s) with Regulatory Bodies or Commissions where separately identified and supported by invoice. The controversy resides in (a) the requirement for the filing of rates and (b) the definition of port agent.

SDDC requires that charges billed by air TSPs, ocean TSPs and port agents be contained in tariffs and filed. This means rates and charges that do not meet this condition, do not qualify under this item. SDDC's intent is clear. There must be a resource available for validating rates and charges. Additionally, the rate solicitation has been amended multiple times since this issue emerged, and the filing requirement remains. Attached are Rate Solicitations I-13, I-14, I-15, and I-16 (Exhibit 7), covering the period between October 2001, and October 2006. Also included is the most recent issue, Rate Solicitation I-19 (Exhibit 8), effective October 2007. A review of these documents makes clear that SDDC has not relaxed the requirement for filing rates and charges with regulatory bodies or commissions.

Although the term port agent is not defined, GSA has applied the term in view of the definition of service provided in Item 407 of the rate solicitation as follows and the second clarification dated April 11, 2006:

1. Code J shipments (see below) involve shipments that enter or exit the United States via military installations, Air Mobility Command (AMC) aerial ports. The subject aerial ports in this issue are Travis AFB, CA; Dover AFB, DE; McChord AFB, WA; and McGuire AFB, NJ   AMC provides the terminal services and air transportation between aerial ports. Motor TSPs who pick up shipments and transport shipments to and from aerial ports

on behalf (as agents) of the ITGBL have no responsibility on military installations and consequently do not qualify for the surcharges provided in Item 433d. The surcharges are to compensate port agents at commercial ports

g.   Code J - Land-Air(AMC)-Land Baggage:  The movement of UB whereby a Transportation Service Provider provides packing and pickup at origin, surface transportation to the designated AMC aerial port, surface transportation from a designated aerial port to final delivery point, and cutting of the banding and opening of the box(es) when delivery to residence is completed.  AMC will provide origin and destination terminal services and air transportation between aerial ports.  When unpacking services are ordered, see Chapter V.  Additional requirements included in specific terms and conditions for Code J shipments are in Chapter XIII.

2.   COF (see below) is an extra charge billed the ITGBL TSP for security while at the port. It is clear that the port agent is employed by the port (a commercial entity) to control security.  The ITGBL TSP's agent at the port has no such authority or obligation and consequently, the ITGBL TSP may not pass through charges billed by its agent on this basis.

CON (see below) is an extra charge billed the ITGBL TSP for controlling the congestion of trucks/ vessels (ships) entering or departing the port. In order to fulfill this responsibility the port agent must be employed and authorized by the port to manage traffic. Again, the ITGBL TSP's agent has no such authority or responsibility to control this congestion, and the ITGBL TSP may not pass through charges billed by its agent on this basis.

**Port/Terminal Security Handling Surcharge (COF)** – An extra charge that is billed to the TSP for security of their cargo while at the port of embarkation/debarkation. This surcharge is applicable to codes of service 1, 2, 3, 4, 5, 6, 7, 8, T, and J.

**Port Congestion Surcharge (CON)** – An extra charge that is billed to the TSP for controlling the congestion of trucks/vessels entering/departing the port.   This surcharge is applicable to codes 1, 2, 3, 4, 5, 7, T, and J.

GSA concludes that the term port agent in this context means agents of commercial ports whose responsibility include controlling congestion and security. Alternatively, the inclusion of Code J shipments does not negate the conditions of Item 433d which states:

Bunker fuel charges (BSC), air fuel surcharges (100), port security surcharges (COF), port congestion surcharges (CON), and/or war risk surcharges (WAR), where applicable, and when actually billed to the ITGBL Transportation Service Provider by the ocean freight Transportation Service Provider, air Transportation service Provider, or port agent pursuant to regularly filed tariff(s) with the regulatory Bodies or Commissions. Such charges will be separately stated on the GBL and supported by ocean, air Transportation Service provider or port agent invoices for the actual amount.

Therefore, the surcharges provided in Item 433d may only be applied when (1) rates and charges are properly filed resulting from a billing by a port agent, not

an AMNW subcontractor, and (2) charges are billed separately and supported by invoice. If these conditions are not met, Item 433d may not be applied.

COMPENSATION

TSPs who meet the conditions of Item 433d may be compensated accordingly. However, Item 433d is not the only method of compensation available to TSPs. Attached is a copy of SDDC's directive (Exhibit 9), posted on its web site, pertaining to delays at military installations resulting from 9/11/2001. TSPs were instructed to bill charges as waiting time in accordance with Item 503 Waiting Time, of the rate solicitation (Exhibit 10). This option involves the expiration of free waiting time which may be perceived as less lucrative, however more appropriate. Nevertheless, both options are available to compensate TSPs for additional costs incurred as resulting from heightened security measures at military installations.

To summarize, GSA issued NOC's to recover excess charges based on the inappropriate application of WAR. AMNW advised that these charges should have been billed as CON/COF. GSA investigated the charges based upon this information provided by AMNW. GSA advised AMNW in June, 2006, that compensation would be allowed or disallowed based on three conditions. AMNW's situation was described in category 2: mislabeling the charges billed required rebilling to DFAS-IN under the proper service code with the appropriate documentation. AMNW's appeal is based on a request for compensation under Rate Solicitation I-13, as amended, Item 433d. GSA sustains the basis for the NOC because AMNW failed to meet the basic provisions that the rates and charges that are passed through be (1) based on filed tariffs with regulatory bodies or commissions and (2) separately stated and supported by invoices. An optional and appropriate means of compensation is provided at Item 503.

Accordingly, GSA requests that this appeal be denied.

Sincerely,

James F. Fitzgerald
Director

10 Enclosures

cc:

Alan F. Wohlstetter, Esq.
Stanley I. Goldman, Esq.
Denning & Wohlstetter
888 17th Street, N.W., Suite 700
Washington, DC 20006

Lt Col Sheila McDonald
Staff Judge Advocate
Surface Deployment and Distribution Command
Building 1990
709 Ward Drive
Scott AFB, IL 62225

Michael Tully, Esq.
Office of Regional Counsel – 4L
General Services Administration
77 Forsyth Street, Suite 600
Atlanta, GA 30303

SDDC has recognized the need to provide a clearly defined description, as well as clarify the usage of the item codes Air Fuel Surcharge (100), Bunker Surcharge (BSC, FAF, BAF), War Risk (WAR), Port/Terminal Security Handling Surcharge (COF), and Port Congestion Surcharge (CON).   The below definitions and application become effective March 1, 2006 and will be incorporated into the next Personal Property International (I-17) and Domestic (D-11) Rate Solicitations.

## DEFINITIONS:

**Air Fuel Surcharge (100)** – An extra charge that is charged to the Transportation Service Provider (TSP) by the aerial TSP.  This surcharge is applicable to codes of service 6 and 8.

**Bunker Surcharge (BSC)** – An extra charge, also known as Bunker Adjustment Factor (BAF) or Fuel Adjustment Factor (FAF), sometimes added to ocean TSP rates.  This surcharge is justified by higher fuel costs.  This surcharge is applicable to codes of service 2, 3, 4, and 7.

**War Risk Surcharge (WAR)** – Insurance coverage for loss of goods resulting from any act of war or as a result of the vessel "entering" the war risk area when billed by the ocean/air TSP.  This charge is only applicable to areas deemed "war risk" areas, as provided for on the SDDC website, www.sddc.army.mil, Personal Property/POV, International, War Risk Areas.  This surcharge is applicable to codes of service 2, 3, 4, 6, 7, and 8.

**Port/Terminal Security Handling Surcharge (COF)** – An extra charge that is billed to the TSP for security of their cargo while at the port of embarkation/debarkation.  This surcharge is applicable to codes of service 2, 3, 4, 6, 7, and 8.

**Port Congestion Surcharge (CON)** – An extra charge that is billed to the TSP for controlling the congestion of vessels entering/departing the port.    This surcharge is applicable to codes 2, 3, 4, and 7.

## APPLICATION:

**Note 1**:  Air fuel, bunker, War Risk, Port/Terminal Security Handling, and Port Congestion surcharges are not applicable on shipment codes of service T, 5, and J.

**Note 2**:  Surcharges, other than those identified above, will be considered on a case-by-case basis with reimbursement decision resting at the sole discretion of the Surface Deployment and Distribution Command.  With the exception of fuel related surcharges and unless otherwise stated, all surcharges are meant to be temporary in nature in and until the TSP has been provided official notification to incorporate such additional fees into their single factor rate.

## DOCUMENTATION:

Personal Property Shipping Offices's (PPSOs) have the right to request supporting documentation for any charge billed.  TSP's must provide supporting documentation, when requested by the PPSO to support charges billed.

## PPSO RESPONSIBILITES:

PPSOs are requested to follow the guidance identified in the Families First Phase 1 Concept of Operations (CONOPS), Electronic Bill Payment, Phase I, Personal Property Statistical Sampling Methodology for Documentation Review.  PPSOs are highly encouraged to process TSP invoices in a timely manner and request documentation only when necessary to determine proper billing or on a random basis per CONOPS guidance.

During the random sampling of invoices, if a PPSO detects continual incorrect billing issues applicable to a specific charge or TSP, the PPSO may increase their sampling of that particular charge or TSP. The PPSO should notify the TSP of the problem and request they correct and/or discontinue the irregular billing procedure. It is recommended when using this guide the PPSO, at a minimum, do a random sampling of ten percent of the shipments on a monthly basis.

When a TSP invoice charge is questionable or if the PPSO requires more information or documentation before processing the charge, the PPSO should first **dispute** the item, leave a note explaining what is needed to resolve the dispute and allow the TSP **five** working days to resolve the issue. Because the destination PPSO is not privy to view any invoices in PowerTrack, all disputes should be resolved in CWA prior to invoice transmission back to PowerTrack for payment.

For invoices that go into Audit Exception Status, TSPs will adjust their cost to match the PPSO data and once the cost has been updated and matched, the transaction will automatically be approved. TSPs using EDI 859 for invoice submission will have the option to resubmit a corrected 859 with updated quantities and/or rates or use the web interface to make their adjustments. No PPSO action is required in PowerTrack for invoices in the Audit Exception Status". Remember, this applies only to the line items that caused the invoice to go into Audit Exception.

When TSPs match line items with incorrect rates, the TSP will not forfeit their right to bill the difference on a supplemental invoice. TSPs are urged, when billing a supplemental invoice, to place a note in the notes section of the line item so PPSOs are aware of why the line item was re-billed. Please make sure PPSOs are reviewing the notes when processing invoices. During the rebilling, TSPs will use the miscellaneous item codes (442A for International and Baggage and 429A for Domestic). For items that are cost at zero by CWA, TSPs should submit a supplemental invoice with the line item that was cost at zero with notes containing pertinent information. Before submitting the supplemental invoice, TSPs should ensure all necessary information is submitted to PowerTrack/CWA to ensure correct rating.

## TSP RESPONSIBILITIES:

TSPs are required to bill proper and correct invoices to CWA as identified in the Families First Phase I CONOPS. This will assist in the timely processing of invoices; however if the PPSO finds a discrepancy or requests additional supporting documents to support charges billed, the TSP is required to provide the information requested.

For invoices that go into Audit Exception Status, TSPs are required to comply with the Phase I CONOP procedures regarding Audit Exception invoice(s) which states, "If an audit exception invoice exists, the TSP will adjust their cost to match the PPSO data and once the cost has been updated and matched, the transaction will automatically be approved. TSPs using EDI 859 for invoice submission will have the option to resubmit a corrected 859 with updated quantities and/or rates or use the web interface to make their adjustments. No PPSO action is required in PowerTrack for invoices in the Audit Exception Status". Remember, this applies only to the line items that caused the invoice to go into Audit Exception.

SDDC understands that matching line items for payment will at times cause the TSP to match line items with incorrect rates. When this occurs, SDDC confirms that the TSP will not forfeit their right to bill the difference on a supplemental invoice. We urge and caution TSPs when billing a supplemental invoice to place a note in the notes section of the line item so PPSOs can be made aware of why the line item was re-billed. During the rebilling, TSPs will use the miscellaneous item codes (442A for International and Baggage and 429A for Domestic). For items that are cost at zero by CWA, TSPs should submit a supplemental invoice with the line item that was cost at zero with

notes containing pertinent information.  Before submitting the supplemental invoice, TSPs should ensure all necessary information is submitted to PowerTrack/CWA to ensure correct rating.

Exhibit 2

April 11, 2006

The below are clarifications regarding the recently published definitions, application, and personal property shipping office/transportation service provider (TSP) responsibilities of air fuel (100), bunker (BSC), war risk (WAR), port/terminal security handling (COF), and port congestion (CON) surcharges.

1. The definitions and applications were clarifications to the current International Personal Property Rate Solicitation. The clarification provided guidance as to how TSPs should have always billed and should continue to bill the listed surcharges. These clarifications will be incorporated into the next released rate solicitations. The March 1, 2006 effective date was applicable to date of publishing only, as SDDC has frequently been asked when a document was posted to our website.

2. Effective March 3, 2006, the war risk areas were redefined.

3. In alignment with Item 419 of the Domestic Solicitation, code 1 has been incorporated into billing codes BSC, COF, and CON.

4. SDDC has reviewed the feedback and invoices provided from industry and have incorporated codes T, J, and 5 into billing code COF and CON.

5. BSC and FAF are one and the same – a surcharge, sometimes added to ocean TSP rates, justified by higher fuel costs. When it is necessary for a TSP to bill more than one BSC and/or FAF charge per shipment, the TSP must provide supporting documentation, when requested. The supporting documentation must reflect the monetary amount(s) billed.

6. HQ SDDC solely authorizes alternate port usage, in the events of port congestion/ closure. Authorization is provided via a supplement to the solicitation and disseminated via a worldwide message posted to the SDDC website.

7. TSP's should only be invoicing for WAR according to the "**JWC HULL War, Strikes, Terrorism and Related Perils.**" SDDC will provide updates to this list, as they occur. Invoices submitted that fall outside of the aforementioned listing are erroneous. Repetitious erroneous billing will result in letters of warning or other action(s), as SDDC deems appropriate.

8. CON may be billed by TSP's due to delays entering the port, in addition to extra charges billed to control the congestion of vessels entering/departing the port.

9. If there have been charges denied in the past, that were valid and fall under our recent clarification, TSP's have the ability to rebill those line items. When doing so, request that TSP's add a note in CWA to explain the rebilling.

10. The practice of duplicate billing, whether domestic or intentional, is a direct violation of government billing policies. The PPSO is responsible for receiving and processing movement orders using the Personal Property Shipping system (CWA), and resolve any billing disputes with the TSP. If a PPSO finds that a TSP has double billed a single charge, the PPSO should place the charge in a denial status as required, and send the TSP one (1) Letter of Warning (LOW) for the first offence using procedures outlined in the DTR, Appendix O, B.2, b, 3. If duplicate billing continues, PPSO's will take immediate suspension action against the TSP using

procedures outlined in the DTR Appendix O, B.2, 4, c. All duplicate billing thereafter by the same TSP will be forwarded to SDDC for a formal investigation. If deemed appropriate, SDDC will convene a Carrier Review Board against the TSP to remove their company from participation in the DOD Personal Property Program in accordance with procedures outlined in SDDC Regulation 15-1 "Procedures for Disqualifying and Placing Carriers in Nonuse".

SDDC has recognized the need to provide a clearly defined description, as well as clarify the usage of the item codes Air Fuel Surcharge (100), Bunker Surcharge (BSC, FAF, BAF), War Risk (WAR), Port/Terminal Security Handling Surcharge (COF), and Port Congestion Surcharge (CON). The below definitions and application become effective March 1, 2006 and will be incorporated into the next Personal Property International (I-17) and Domestic (D-11) Rate Solicitations.

## DEFINITIONS:

**Air Fuel Surcharge (100)** – An extra charge that is charged to the Transportation Service Provider (TSP) by the aerial TSP. This surcharge is applicable to codes of service 6 and 8.

**Bunker Surcharge (BSC)** – An extra charge, also known as Bunker Adjustment Factor (BAF) or Fuel Adjustment Factor (FAF), sometimes added to ocean TSP rates. This surcharge is justified by higher fuel costs. This surcharge is applicable to codes of service a 1, 2, 3, 4, and 7.

**War Risk Surcharge (WAR)** – Insurance coverage for loss of goods resulting from any act of war or as a result of war "entering" the war risk area when billed by the ocean/air TSP. This charge is only applicable to areas deemed "war risk" areas, as provided for on the SDDC website, www.sddc.army.mil, Personal Property/POV, International, War Risk Areas. This surcharge is applicable to codes of service 1, 2, 3, 4, 6, 7, and 8.

**Port/Terminal Security Handling Surcharge (COF)** – An extra charge that is billed to the TSP for security of their cargo while at the port of embarkation/debarkation. This surcharge is applicable to codes of service 1, 2, 3, 4, 5, 6, 7, 8, T, and J.

**Port Congestion Surcharge (CON)** – An extra charge that is billed to the TSP for controlling the congestion of trucks/vessels entering/departing the port. This surcharge is applicable to codes 1, 2, 3, 4, 5, 7, T, and J.

## APPLICATION:

**Note 1:** Air fuel, bunker, and War Risk surcharges are not applicable on shipment codes of service T, 5, and J. These charges are all billed by the ocean/air TSP and this service is performed by the U.S. Government, in codes of service T, 5, and J.

**Note 2:** Surcharges, other than those identified above, will be considered on a case-by-case basis with reimbursement decision resting at the sole discretion of the Surface Deployment and Distribution Command. With the exception of fuel related surcharges and unless otherwise stated, all surcharges are meant to be temporary in nature in and until the TSP has been provided official notification to incorporate such additional fees into their single factor rate.

**DOCUMENTATION:**

Personal Property Shipping Offices's (PPSOs) have the right to request supporting documentation for any charge billed. TSP's must provide supporting documentation, when requested by the PPSO to support charges billed.

**PPSO RESPONSIBILITES:**

PPSOs are requested to follow the guidance identified in the Families First Phase 1 Concept of Operations (CONOPS), Electronic Bill Payment, Phase I, Personal Property Statistical Sampling Methodology for Documentation Review. PPSOs are highly encouraged to process TSP invoices in a timely manner and request documentation only when necessary to determine proper billing or on a random basis per CONOPS guidance.

During the random sampling of invoices, if a PPSO detects continual incorrect billing issues applicable to a specific charge or TSP, the PPSO may increase their sampling of that particular charge or TSP. The PPSO should notify the TSP of the problem and request they correct and/or discontinue the irregular billing procedure. It is recommended when using this guide the PPSO, at a minimum, do a random sampling of ten percent of the shipments on a monthly basis.

When a TSP invoice charge is questionable or if the PPSO requires more information or documentation before processing the charge, the PPSO should first **dispute** the item, leave a note explaining what is needed to resolve the dispute and allow the TSP **five** working days to resolve the issue. Because the destination PPSO is not privy to view any invoices in PowerTrack, all disputes should be resolved in CWA prior to invoice transmission back to PowerTrack for payment.

For invoices that go into Audit Exception Status, TSPs will adjust their cost to match the PPSO data and once the cost has been updated and matched, the transaction will automatically be approved. TSPs using EDI 859 for invoice submission will have the option to resubmit a corrected 859 with updated quantities and/or rates or use the web interface to make their adjustments. No PPSO action is required in PowerTrack for invoices in the Audit Exception Status". Remember, this applies only to the line items that caused the invoice to go into Audit Exception.

When TSPs match line items with incorrect rates, the TSP will not forfeit their right to bill the difference on a supplemental invoice. TSPs are urged, when billing a supplemental invoice, to place a note in the notes section of the line item so PPSOs are aware of why the line item was re-billed. Please make sure PPSOs are reviewing the notes when processing invoices. During the rebilling, TSPs will use the miscellaneous item codes (442A for International and Baggage and 429A for Domestic). For items that are cost at zero by CWA, TSPs should submit a supplemental invoice with the line item that was cost at zero with notes containing pertinent information. Before submitting the supplemental invoice, TSPs should ensure all necessary information is submitted to PowerTrack/CWA to ensure correct rating.

| | |
|---|---|
| Poso (Sulawesi) | |
| | |
| | |
| **Middle east** | |
| Bahrain | |
| Iraq | |
| Isreal | |
| Lebanon | |
| Qatar | |
| Saudi Arabia | |
| | |
| **Philippines** | |
| Mindanao, southern coast of, between and including Polloc Harbour and Mati | |
| Sulu Archipelago including Jolo | |

Specific ports, places and coasts should be understood to include harbors, offshore installations, and adjacent waters up to 12 miles offshore unless otherwise agreed.



**James F.**
**Fitzgerald/FBA/CO/GSA/GOV**

04/11/2006 09:18 AM

To   Deborah J. Crockett/FBA/CO/GSA/GOV@GSA, Mary C. Bates/FBA/CO/GSA/GOV@GSA, Joyce A. Clark/FBAP/CO/GSA/GOV@GSA

cc

bcc

Subject  Fw: Clarification message


Surprise!


James F. Fitzgerald
Director, Audit Division (FBA)
703-605-9400
2200 Crystal Drive, Room 300
Arlington, VA 20406
www.gsa.gov/transaudits
----- Forwarded by James F. Fitzgerald/FBA/CO/GSA/GOV on 04/11/2006 09:18 AM -----



**THead73168@aol.com**

04/11/2006 09:07 AM

To   james.fitzgerald@gsa.gov

cc   Charles.White@hhgfaa.org, JackD@sddc.army.mil, Dennis.williams2@sddc.army.mil, Awohlstetter@aol.com, carl.crea@gsa.gov

Subject  Fwd: Clarification message


Hi Fitz,

**Re: Recent Over-charge Notices - Resulting from 02.24.06 SDDC Memorandum**

In your absence yesterday, I spoke with Carl Crea to advise GSA that the association has been in discussions with SDDC relative to their Feb. 24, '06 memorandum addressing various pass-throughs for surcharges on international shipments. We were informed yesterday that GSA has begun issuing some very large over-charge notices as a result of this memo.

I know you can't react until you see something in writing issued by SDDC counter-acting the previous message, however, **I did want to alert you that a new message is forthcoming that will restore the TSPs ability to bill most, if not all, of the surcharges for Codes J, T & 5.**

It is certainly your call and decision, however for the sake of all concerned - it would probably best to advise your auditors to hold off on issuing any more 'over-charge' notices - at least until you have had time to confirm status with SDDC and/or their issuance of the new re-clarifying message. Taking this step will greatly reduce any unnecessary work for everyone.

Please call if you have any questions or if I can be of further assistance. I leave on vacation later today, but can be reached on my cell (703 505 5436) or you can speak with Charles White (703 317-9950) in my office and Mr. Wohlstetter is up to speed on the issue as well since he has already been contacted by several TSPs receiving the over-charge notices.

Donna Jack and some of her staff are still on travel in Germany, however, Dennis Williams (703 428-2954) at SDDC is probably the best person to speak with should you choose to contact SDDC to confirm my information and learn the status of the new pending message.

Thanks,
Terry Head
HHGFAA
----- Message from "Charles L. White" <charles.white@HHGFAA.ORG> on Mon, 10 Apr 2006 14:15:48 -0400 -----

**To:** "Jack, Donna" <jackd@sddc.army.mil>

"Williams, Dennis" <dennis.williams2@sddc.army.mil>, "Collier, Gail"

**cc:** <collierg@sddc.army.mil>, "Varner, Mary Beth" <varnerm@sddc.army.mil>, thead73168@aol.com, "Alan Wohlstetter" <Awohlstetter@aol.com>

**Subject:** Clarification message

Donna,

Another issue has reared its ugly head regarding the Surcharge "clarification" messages. GSA has started to issue notices of overcharges to a number of TSPs (especially the baggage Carriers) as a result of the original February 24 Surcharge clarification message. One of the notices of overcharge is for over **$300,000.00!!!!!** The reason for the notices is the section of the Feb. 24 message that says that CON, COF & WAR do not apply to Code J, T & 5.

I believe that we will solve **some** of this problem with your new clarification message that is due to come out, BUT (there is always a "but") in the new message you "have incorporated codes T, J, and 5 into billing code COF.

After looking at the Notices of Overcharge I see a hole in the clarification. Many of the Port Agents have traditionally called their charges a - Congestion Surcharge (CON) or possibly even a War Risk Charge. I know that this billing reference (code) may not be what you want utilized going forward and we understand the reasoning for it but they had not previously received any direction on what to call the charges. These charges were recognized as billable pass-throughs up until the last few months. It is not fair to penalize and demand refunds from TSPs for what were recognized as viable charges.

In the section of the message titled **DEFINITIONS** the Port Congestion Surcharge (CON) definition states that this is "an extra charge that is billed to the TSP for controlling the congestion of trucks/vessels entering/departing the port." A PORT is a PORT – Aerial or Ocean, Commercial or Military. Codes T, J and 5 should be included in this definition. I believe that if you would add the **CON** code to the portion of the clarification message (#4) which incorporates codes T, J and 5 into billing code COF it would go along way toward solving this problem.

Finally we would ask that SDDC contact GSA and discuss why these Notices of Overcharge are unnecessary. We firmly believe that these are viable charges and are NOT overcharges to the government. There may have been a mistake in the naming conventions used on the charges but without direction from SDDC as to what to call these charges the TSPs and their service providers were left to their own devises to name these charges. They should not be penalized as a result.

Terry attempted to contact Jim Fitzgerald at GSA to let him know that we are working the issue with SDDC and that a new Surcharge message should be forthcoming. I believe he spoke with Carl Crea since Mr. Fitzgerald was out of the office today. Nonetheless, we believe it's best that GSA gets word from SDDC directly on this issue.

We anxiously await your reply.

Charles White
Director of Government & Military Relations
HHGFAA



|  | James F.<br>Fitzgerald/FBA/CO/GSA/GOV | To | Mary C. Bates/FBA/CO/GSA/GOV@GSA, Joyce A.<br>Clark/FBAP/CO/GSA/GOV@GSA, Carl A.<br>Crea/FBAA/CO/GSA/GOV@GSA, Connie D. |
|  | 04/27/2006 07:04 AM | cc | |
|  | | bcc | |
|  | | Subject | Fw: OverCharge Notices |

James F. Fitzgerald
Director, Audit Division (FBA)
703-605-9400
2200 Crystal Drive, Room 300
Arlington, VA 20406
www:gsa.gov/transaudits
----- Forwarded by James F. Fitzgerald/FBA/CO/GSA/GOV on 04/27/2006 07:04 AM -----



|  | THead73168@aol.com | To | james.fitzgerald@gsa.gov |
|  | 04/26/2006 11:24 AM | cc | hutchinsonc@sddc.army.mil, jackd@sddc.army.mil,<br>dennis.williams2@sddc.army.mil, THead73168@aol.com,<br>groger@suddath.com, Michael@swintl.com,<br>Mario_Rizzo@pashanet.com, georgia@dellforwarding.com,<br>Jan_Moore@binlinc.com, doug@sterlinginternational.com,<br>Awohlstetter@aol.com, jeff.coleman@covan.com,<br>miker@avlgroup.com, jackieagner@stonepath.com,<br>charles.white@hhgfaa.org |
|  | | Subject | OverCharge Notices |

Attn: Jim Fitzgerald - GSA Audits
cc: C. Hutchinson, D. Jack, D. Williams (SDDC-HQ)
HHGFAA EXECOM, Charles White, Alan Wohlstetter

## Re: Overcharge Notices - War Risk (Security) Surcharges

Hello Jim,
I am responding pursuant to your email of April 25, 2006:

*"Terry,*
*Based on the (new) SDDC message our overcharges are all correct. Please correct*
*me if I am wrong but the only overcharges GSA is issuing is for War Risk on*
*T, 5, and J shipments."*
*James F. Fitzgerald*
*Director, Audit Division (FBA)*

I believe you may be incorrect in your statement, as <u>it appears from the information and documentation</u>
<u>that I have seen, that the GSA is indeed issuing overcharge notices for more than just WAR RISK</u>
<u>surcharges.</u>  Please refer to the documentation I have attached which clearly references War Risk,
Security Fees and Congestion Surcharges as part of the

As you are now aware, SDDC has issued a new clarification memorandum which restores the TSPs ability
to bill these charges as a pass-through.  Unfortunately, <u>there appears to be an unresolved issue relating to</u>
<u>the War Risk surcharges.</u>

This appears to be more of an issue of "nomenclature" and, in the opinion of the Industry and the Association, not a question of - is the pass-through of this third-party charge authorized - but what it should be called and/or how it should be coded when billed to the Government.

As background I am providing some historical information recently supplied to us by one of the Industry's billing services:

**Subject:** *WAR Item Code*
*Chuck,*
*In light of the NOC's we have been receiving on the WAR item codes, I wanted to give you a history of our usage of that item code. When we first started billing the port security charges (post 9/11), we had to make a decision about which item code to use. At the time, COF (the current item code for security charges) did not exist. In fact, until a couple of months ago, our only viable options for item codes for port security charges were WAR or CON, which is used for port congestion charges. We decided to use the WAR item code, since to us it seemed to be a closer match to the item of security charges.*
*We used WAR for billing security charges many years without problems, until Phase I of Families First rolled out. Then, PPSOs who were charged with approving the items started to question these "WAR" charges, not understanding that we were actually billing security charges. At that time other TSPs switched to using CON for billing security charges, since they learned those would receive less scrutiny from PPSOs. However, we still felt WAR was a more accurate description than CON, and so we continued to use it for billing security charges, until SDDC announced that they had implemented the COF item code for security charges. Once that announcement was made, we started to use COF for security charges, and reserved WAR for true war-risk surcharges. If only SDDC had implemented the COF item code earlier, it would have alleviated many of the problems.*
*Hope this helps you understand the history behind this.*
*****************

I would hope that GSA will communicate with SDDC to reach an agreement and issue further guidance for TSPs and TMOs, as well as, the GSA auditors which clarify that these surcharges are authorized. A TSP should not be penalized retroactively for following established and historically accepted policy and procedures.

HHGFAA is copying this message to the SDDC points of contact and will be contacting them to provide additional information as necessary.

Please call or email if you have questions and/or need additional information to take the necessary and appropriate action in this regard.

Terry Head, President
HHGFAA

Overcharge Notices Apr. 06.pdf

American World Forwarders, Inc.
8080 Ward Parkway
Suite 402
Kansas City, MO  64114-2020

Dear Sirs:

This responds to your protest of Notice of Overcharge AMNW0001. The overcharge was based on the letter dated February 24, 2006 from the Surface Deployment and Distribution Command (SDDC). You reference a further clarification by SDDC allowing charges for port congestion (CON) and/or security handling (COF). War Risk (WAR) charges are not allowed under this determination.

GSA will treat the overcharges related to this issue in accordance with the second clarification. Depending upon the basis for your protest the following procedures apply:

1. Charges that you contend are for CON and COF must be supported by the third party billings.  GSA will rescind Notices of Overcharges related to properly documented protests.

2. CON and COF charges that you contend were improperly billed as WAR must be properly documented and submitted to DFAS-IN for payment.

3. Charges billed as WAR as the basis for the Notice of Overcharge, are invalid as indicated by SDDC, and should be paid to GSA.

Documentation required by the provision of paragraph 1, should be sent to the Accounts Branch, Attention Mr. Carl Crea, Chief. If you wish to contact Mr. Crea about this or any other issue, he can be reached at (703) 605-9435 or by e-mail at carl.crea@gsa.gov. Payment for the WAR portion of the overcharge should be made in the normal manner. If you wish to set up a repayment plan, you may contact Ms. Cassandra Reed, Chief, Collections Branch. Ms. Reed can be reached at (703) 605-9405 or by e-mail at cassandra.reed@gsa.gov.

Sincerely,

James F. Fitzgerald
Director
Audit Division

# American World Forwa Exhibit 6

**8080 Ward Parkway # 402 • Kansas City,**
**(816) 942-4800 Ext. 302 • Fax: (816)**
**Email: frank@amnw.com**



**April 26, 2006**

Mr. James F. Fitzgerald
Director Audit Division (FBA)
General Services Administration
2200 Crystal Drive, Room 300
Arlington, VA 20406

    Dear Mr. Fitzgerald:

    This is in response to the Notice of Overcharge issued on April 03, 2006 against American World Forwarders, Inc. in the amount of $32,338.91. As shown by the underlying support, these charges were incurred either as a result of port congestion and/or security handling matters, CON or COF.

    As you are aware, SDDC has just released a clarification message, dated April 11, 2006, now on SDDC's Web site, which I understand has been furnished to you by the Household Goods Forwarders Association of America. The document recognizes the point made by the HHGFAA and Alan Wohlstetter, General Counsel of the Association, who is also our attorney, that port congestion results from trucks as well as vessels. You will note that the SDDC clarification reflects this in its definition of CON and further makes clear that these surcharges are applicable to Codes 5.T and J. On this basis, we ask that the Notice of Overcharge be withdrawn.

    In the past, we have also received Notices of Overcharge covering our assessment of unpacking charges on baggage shipments. As you may know, at the last Military/Industry Symposium, SDDC agreed that unpacking of baggage shipments will be made a pre-approved item thereby eliminating any need for authorization of this service by the Transportation Officer. In other words, the request of the military member will suffice for payment of this service. Although nothing has yet been issued by SDDC on this subject, I would ask, to avoid unnecessary administrative burdens, that you defer any further action on this type of overcharge until SDDC has advised of its final action on this matter.

    Should anything further be required, please let me know.

        Sincerely,

        AMERICAN WORLD FORWARDERS, INC.

By_____
         Frank Standley

# INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-13

## CANCELS AND SUPERCEDES RATE SOLICITATION I-12



DESCRIBING SPECIFICATIONS AND
SERVICES FOR SHIPMENTS OF
DEPARTMENT OF DEFENSE (DOD)
SPONSORED PERSONAL PROPERTY
MOVING WORLDWIDE

## HEADQUARTERS
## MILITARY TRAFFIC MANAGEMENT COMMAND
## DCSPPP, MTPP-HR

## EFFECTIVE: 1 OCT 2001

ORIGINAL PAGE 4-24

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-13

Item 433  [LHS]                *Application of Transportation SFR  -  UB*

The transportation SFR, per gross hundredweight, filed with HQMTMC, including shipments between or within overseas (intertheater/intratheater) command applies from origin area to destination area, on UB shipments controlled by and moving on PPGBL. The SFR includes pickup at any point within the origin area and delivery to any point within the destination area.

a.  Transportation SFR INCLUDE THE FOLLOWING SERVICES:

(1) Packing, including use of packing containers and materials from origin to destination.

(2) Servicing and unservicing of appliances.

(3) All land, water, and air transportation, except:

(a) Additional land transportation charges for shipments picked up or delivered from or to SIT.

(b) Port handling and stevedoring services within the military ocean terminal and Government-arranged ocean movement.

(c) Terminal services within the AMC terminal and Government-arranged air movement.

(d) Bunker fuel charges (BSC), air fuel surcharges (100), port congestion surcharges (CON), and/or war risk surcharges (WAR), where applicable, and when actually billed to the ITGBL carrier by the ocean freight carrier pursuant to regularly filed tariff(s) with the Federal Maritime Commission. Such charges will be separately stated on the GBL and supported by ocean or air carrier invoices for the actual amount.

(4) Arranging customs clearance and other related services that pertain to and influence the movement of personal property, in compliance with all DOD, foreign, and domestic regulations. All export and import service charges. Movement of shipments in bond, to the U.S. Customs House. The responsible destination PPSO will be notified in advance when a shipment is to move in bond.

(5) Placement of UB external shipping container/crate into member's residence, cutting of bands, and opening of external container/crate. If shipping container is too large for placement into residence (carrier convenience), property must be removed and placed into residence as part of SFR.

(6) Ferry, tunnel, and bridge charges/tolls.

(7) For baggage shipments in excess of 250 pounds, carrier will notify the destination transportation officer in advance of delivery.

(8) For shipment weighing 250 or less, carrier will notify the destination transportation officer no later than 48 hours following delivery.

(9) At CONUS destinations where carrier is not represented by a UB agent, provide the PPSO the name, address, and telephone number of a point of contact who will make arrangements to accomplish those destination services that may be required by the local PPSO.

# INTERNATIONAL PERSONAL PROPERTY
# RATE SOLICITATION I-14

DESCRIBING SPECIFICATIONS AND SERVICES FOR SHIPMENT OF
DEPARTMENT OF DEFENSE (DOD) SPONSORED PERSONAL PROPERTY MOVING WORLDWIDE

CANCELS AND SUPERCEDES RATE SOLICITATION I-13

# HEADQUARTERS, MILITARY TRAFFIC MANAGEMENT COMMAND
# DCS FOR PASSENGER AND PERSONAL PROPERTY
# PERSONAL PROPERTY DIVISION-MTPP-PP-R
# 200 STOVALL STREET, HOFFMAN II
# ALEXANDRIA VA 22332

**EFFECTIVE 1 OCTOBER 2003**

ORIGINAL PAGE 4-23

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-14

(8) Elevator, stair and excessive distance carry, piano/organ carry and/or heavy or bulky item charge (exception: see paragraph b.(5) below).

(9) Ferry, tunnel and bridge charges/tolls.

(10) Prelodge costs, i.e., those costs incurred as a result of the advance notification and document delivery of shipments to military ocean terminals (Code 5).

b. Transportation SFR WILL NOT INCLUDE:

(1) Storage, waiting time and/or handling charges (includes excess linehaul costs associated with movement of shipment in bond to the U.S Customs House nearest the ultimate consignee), caused by failure of the origin transportation officer to furnish acceptable custom documents or by refusal of customs officials to clear shipments. These charges will be billed at rates provided in this solicitation when performed by the carrier. When services are performed by a third party, billing will be at the actual cost charged to the carrier and supported by third party invoices. The billing will reference applicable rate schedules and/or tariffs when charges are assessed in accordance with such publications. Charges for excess linehaul costs, associated with movement in bond, are those expenses over the carrier's normal linehaul operating expenses. Such expenses will be supported by an invoice for the actual charges, along with a copy of the freight agreement or other supporting documentation, to justify the excess cost.

(2) Any Government or public authority ordered charges for inspection, disinfestation, decontamination, fumigation, demurrage or other charges occasioned by such orders not the fault of the carrier.

(3) Servicing of articles requiring services of third parties.

(4) When an article cannot be picked up or delivered from a residence by the conventional method (doorways, stairs, elevator to floor) or the structural nature of the residence must be changed to accommodate a pickup or delivery (removal of windows, doors, etc.), the carrier, upon approval of the PPSO will be authorized third party service. This exception is directed at the pickups and deliveries from high rise apartment buildings and is not intended to be used for minor hoisting and lowering, such as first floor balconies in apartments and single family dwellings.

(5) (a) Shipments picked up or delivered to a mini warehouse, which involve a carry in excess of 75 feet between the carrier vehicle and the outside entrance door of the actual storage area, the PPSO can authorize an excessive distance carry charge.

(b) Shipments picked up or delivered to a residence, with construction or other safety factors that prevents the carrier (through no fault of their own) from normal carry access within 75 feet, the PPSO can authorize an excessive distance carry charge. Approval must be granted prior to service being performed.

(c) Item 534 lists the schedule of charges.

Item 433 [LHS]                    *Application of Transportation SFR - UB*

The transportation SFR, per gross hundredweight, filed with HQMTMC, including shipments between or within overseas (intertheater/intratheater) command applies from origin area to destination area, on UB shipments controlled by and moving on PPGBL. The SFR includes pickup at any point within the origin area and delivery to any point within the destination area

ORIGINAL PAGE 4-24

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-14

a.  Transportation SFR INCLUDE THE FOLLOWING SERVICES:

(1) Packing, including use of packing containers and materials from origin to destination.

(2) Servicing and unservicing of appliances.

(3) All land, water, and air transportation, except:

(a) Additional land transportation charges for shipments picked up or delivered from or to SIT.

(b) Port handling and stevedoring services within the military ocean terminal and Government-arranged ocean movement.

(c) Terminal services within the AMC terminal and Government-arranged air movement.

(d) Bunker fuel charges (BSC), air fuel surcharges (100), port security/congestion surcharges (CON), and/or war risk surcharges (WAR), where applicable, and when actually billed to the ITGBL carrier by the ocean freight carrier, air carrier or port agent pursuant to regularly filed tariff(s) with the Regulatory Bodies or Commissions. Such charges will be separately stated on the GBL and supported by ocean, air carrier or port agent invoices for the actual amount.

(4) Arranging customs clearance and other related services that pertain to and influence the movement of personal property, in compliance with all DOD, foreign, and domestic regulations. All export and import service charges. Movement of shipments in bond, to the U.S. Customs House. The responsible destination PPSO will be notified in advance when a shipment is to move in bond.

(5) Placement of UB external shipping container/crate into member's residence, cutting of bands, and opening of external container/crate. If shipping container is too large for placement into residence (carrier convenience), property must be removed and placed into residence as part of SFR.

(6) Ferry, tunnel, and bridge charges/tolls.

(7) For baggage shipments in excess of 250 pounds, carrier will notify the destination transportation officer in advance of delivery.

(8) For shipment weighing 250 or less, carrier will notify the destination transportation officer no later than 48 hours following delivery.

(9) At CONUS destinations where carrier is not represented by a UB agent, provide the PPSO the name, address, and telephone number of a point of contact who will make arrangements to accomplish those destination services that may be required by the local PPSO.

(10) Advise the destination PPSO by electrical transmission in advance of the RDD with the reason for delay and specify the date the shipment will be available for delivery in the event a shipment cannot be delivered by the RDD.

b.  Transportation SFR WILL NOT INCLUDE:

(1) Storage, waiting time, and/or handling charges (includes excess linehaul costs associated with movement of shipment, in bond, to the U.S Customs House nearest the ultimate consignee), caused by failure of the origin transportation officer to furnish acceptable custom documents or by refusal of customs officials to clear shipments. These charges will be billed at rates provided in this solicitation when performed by the

# INTERNATIONAL PERSONAL PROPERTY
# RATE SOLICITATION I-15

DESCRIBINING SPECIFICATIONS AND SERVICES FOR SHIPMENT OF
DEPARTMENT OF DEFENSE (DOD) SPONSORED PERSONAL PROPERTY
MOVING WORLDWIDE

## CANCELS AND SUPERCEDES RATE SOLICITATION I-14

ORIGINAL PAGE 4-23

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-15

Item 432 [LHS]                    *Application of Transportation SFR – HHG*

  a.  Transportation SFR INCLUDE THE FOLLOWING SERVICES:

(1) Packing, including use of packing containers and materials from origin to destination and unpacking. When Government-owned containers are utilized or when packing is not required, reductions to the SFR will be annotated on the PPGBL. Shipping containers and packing materials furnished by the Transportation Service Provider will remain the property of the Transportation Service Provider.

(2) For all shipments from Germany to CONUS, Transportation Service Providers are responsible for providing the following services:

(a) Identifying clearly all outdoor articles consecutively on the last page of the HHG descriptive inventory.

(b) Packing all outdoor articles in the same container and as close to the front door as possible.

(c) Stenciling "OHA" on the exterior of all containers which include outdoor articles.

(3) Servicing and unservicing of appliances, except third party service.

(4) All land, water and air transportation, EXCEPT:

(a) Additional land transportation charges for shipments picked up or delivered from or to SIT.

(b) Port handling and stevedoring services within the military ocean terminal or within the commercial ocean terminal, when used in lieu of the military ocean terminal, and Government-arranged ocean movement (Code 5).

(c) Terminal services within the AMC terminal and Government-arranged air movement (Code T).

(d) Bunker fuel charges (BSC), air fuel surcharges (100), port security/congestion surcharges (CON), and/or war risk surcharges (WAR), where applicable, and when actually billed to the ITGBL Transportation Service Provider by ocean freight Transportation Service Provider, air Transportation Service Provider or port agent pursuant to regularly filed tariff(s) with the Regulatory Bodies or Commissions. Such charges will be separately stated on the GBL and supported by prorated ocean, air Transportation Service Provider or port agent invoices for the actual amount. (See Item 513 for application of the Fuel Surcharge for CONUS linehaul, including Alaska and Hawaii).

(e) Over-ocean charges negotiated by SDDC Operations Center (Code 3).

(5) Customs Clearance:

(a) Transportation Service Provider will arrange all customs clearance and other related services that pertain to and influence the movement of personal property (gun control, quarantine, pest infestation, etc.) and will comply with all DOD, foreign, and domestic regulations.

(b) Export and import documentation services involving customs clearances. Movement of shipment, arriving in CONUS, in bond to the U.S. Customs House nearest the ultimate consignee. The responsible destination PPSO will be notified in advance when a shipment is to move in bond.

ORIGINAL PAGE 4-24

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-15

(6) Removal and placement of each article in the residence/warehouse or other building.

(7) Hoisting or lowering of article.

(8) Elevator, stair and excessive distance carry, piano/organ carry and/or heavy or bulky item charge (exception: see paragraph b.(5) below).

(9) Ferry, tunnel and bridge charges/tolls.

(10) Prelodge costs, i.e., those costs incurred as a result of the advance notification and document delivery of shipments to military ocean terminals (Code 5).

b. Transportation SFR WILL NOT INCLUDE:

(1) Storage, waiting time and/or handling charges (includes excess linehaul costs associated with movement of shipment in bond to the U.S Customs House nearest the ultimate consignee), caused by failure of the origin transportation officer to furnish acceptable custom documents or by refusal of customs officials to clear shipments. These charges will be billed at rates provided in this solicitation when performed by the Transportation Service Provider. When services are performed by a third party, billing will be at the actual cost charged to the Transportation Service Provider and supported by third party invoices. The billing will reference applicable rate schedules and/or tariffs when charges are assessed in accordance with such publications. Charges for excess linehaul costs, associated with movement in bond, are those expenses over the Transportation Service Provider's normal linehaul operating expenses. Such expenses will be supported by an invoice for the actual charges, along with a copy of the freight agreement or other supporting documentation, to justify the excess cost.

(2) Any Government or public authority ordered charges for inspection, disinfestation, decontamination, fumigation, demurrage or other charges occasioned by such orders not the fault of the Transportation Service Provider.

(3) Servicing of articles requiring services of third parties.

(4) When an article cannot be picked up or delivered from a residence by the conventional method (doorways, stairs, elevator to floor) or the structural nature of the residence must be changed to accommodate a pickup or delivery (removal of windows, doors, etc.), the Transportation Service Provider, upon approval of the PPSO will be authorized third party service or billed under labor if performed by a local agent. This exception is directed at the pickups and deliveries from high rise apartment buildings and is not intended to be used for minor hoisting and lowering, such as first floor balconies in apartments and single family dwellings.

(5) (a) Shipments picked up or delivered to a mini warehouse, which involve a carry in excess of 75 feet between the Transportation Service Provider vehicle and the outside entrance door of the actual storage area, the PPSO can authorize an excessive distance carry charge.

(b) Shipments picked up or delivered to a residence, with construction or other safety factors that prevents the Transportation Service Provider (through no fault of their own) from normal carry access within 75 feet, the PPSO can authorize an excessive distance carry charge. Approval must be granted prior to service being performed.

(c) Item 534 lists the schedule of charges.

ORIGINAL PAGE 4-25

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-15

Item 433  [LHS]                     *Application of Transportation SFR  -  UB*

The transportation SFR, per gross hundredweight, filed with SDDC, including shipments between or within overseas (intertheater/intratheater) command applies from origin area to destination area, on UB shipments controlled by and moving on PPGBL. The SFR includes pickup at any point within the origin area and delivery to any point within the destination area

   a.  Transportation SFR INCLUDE THE FOLLOWING SERVICES:

      (1) Packing, including use of packing containers and materials from origin to destination.

      (2) Servicing and unservicing of appliances.

      (3) All land, water, and air transportation, except:

      (a) Additional land transportation charges for shipments picked up or delivered from or to SIT.

      (b) Port handling and stevedoring services within the military ocean terminal and Government-arranged ocean movement.

      (c) Terminal services within the AMC terminal and Government-arranged air movement.

      (d) Bunker fuel charges (BSC), air fuel surcharges (100), port security/congestion surcharges (CON), and/or war risk surcharges (WAR), where applicable, and when actually billed to the ITGBL Transportation Service Provider by the ocean freight Transportation Service Provider, air Transportation Service Provider or port agent pursuant to regularly filed tariff(s) with the Regulatory Bodies or Commissions. Such charges will be separately stated on the GBL and supported by ocean, air Transportation Service Provider or port agent invoices for the actual amount.

      (4) Arranging customs clearance and other related services that pertain to and influence the movement of personal property, in compliance with all DOD, foreign, and domestic regulations. All export and import service charges. Movement of shipments in bond, to the U.S. Customs House. The responsible destination PPSO will be notified in advance when a shipment is to move in bond.

      (5) Placement of UB external shipping container/crate into member's residence, cutting of bands, and opening of external container/crate. If shipping container is too large for placement into residence (Transportation Service Provider convenience), property must be removed and placed into residence as part of SFR.

      (6) Ferry, tunnel, and bridge charges/tolls.

      (7) For baggage shipments in excess of 250 pounds, Transportation Service Provider will notify the destination transportation officer in advance of delivery.

      (8) For shipment weighing 250 or less, Transportation Service Provider will notify the destination transportation officer no later than 48 hours following delivery.

      (9) At CONUS destinations where Transportation Service Provider is not represented by a UB agent, provide the PPSO the name, address, and telephone number of a point of contact who will make arrangements to accomplish those destination services that may be required by the local PPSO.

ORIGINAL PAGE 4-26

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-15

(10) Advise the destination PPSO by electrical transmission in advance of the RDD with the reason for delay and specify the date the shipment will be available for delivery in the event a shipment cannot be delivered by the RDD.

b.  Transportation SFR WILL NOT INCLUDE:

(1) Storage, waiting time, and/or handling charges (includes excess linehaul costs associated with movement of shipment, in bond, to the U.S Customs House nearest the ultimate consignee), caused by failure of the origin transportation officer to furnish acceptable custom documents or by refusal of customs officials to clear shipments.  These charges will be billed at rates provided in this solicitation when performed by the Transportation Service Provider.  When services are performed by a third party, billing will be at the actual cost charged to the Transportation Service Provider and must be supported by third party invoices.  The billing will reference applicable rate schedules and/or tariffs when charges are assessed in accordance with such publications.  Charges for excess linehaul costs, associated with movement in bond, are those expenses over the Transportation Service Provider's normal linehaul operating expenses.  Such expenses will be supported by an invoice for the actual charges, along with a copy of the freight agreement or other supporting documentation, to justify the excess cost.

(2) Any Government or public authority ordered charges for disinfestation, decontamination, fumigation, demurrage or other charges occasioned by such orders not the fault of the Transportation Service Provider.

(3) Servicing of articles requiring service of third parties, when ordered or authorized in writing by the PPSO.

(4) Unpacking services, when requested and approved by the PPSO.

Item 434            ***Terms and Conditions for Code J Shipments***

These terms and conditions apply specifically to the handling and ITGBL management of Code J UB shipments moving between overseas areas and CONUS.

a.  ITGBL Transportation Service Providers participating in Code J service agree to:

(1) Comply with requirements and procedures of AMC in reporting, documenting and handling military shipments.  This includes palletizing shipments, preparation of the Transportation Control Movement Document (TCMD), DD Form 1384, for each pallet or individual shipment, delivery of pallet loads or individual shipments to the AMC air terminal, and the receipt of pallet loads or individual shipments from CONUS or overseas AMC air terminal.

(2) Accept 100 percent of the Code J traffic tendered.

(3) Assume on a door-to-door basis, full responsibility for shipments and liability to the limits prescribed in Item 410, Limitation of Transportation Service Provider Liability.

(4) Pick up cargo from AMC no later than one workday from time of notification and forward these shipments to their ultimate destination.

(5) Configure all Code J pallets for DC-8 or DC-10 aircraft.

# INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-16

## THIS SOLICITATION CANCELS AND SUPERCEDES RATE SOLICITATION I-15

*DESCRIBING SPECIFICATIONS AND SERVICES FOR SHIPMENT OF DEPARTMENT OF DEFENSE (DoD) SPONSORED PERSONAL PROPERTY MOVING WORLDWIDE*

*EFFECTIVE – 01 OCTOBER 2005*

Department of the Army
Surface Deployment and Distribution Command
200 Stovall Street
Alexandria Va.  22332-5000
Unclassified

ORIGINAL PAGE 4-22

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-16

Item 432  [LHS]                 *Application of Transportation SFR  -  HHG*

a.  Transportation SFR INCLUDE THE FOLLOWING SERVICES:

(1) Packing, including use of packing containers and materials from origin to destination and unpacking. When Government-owned containers are utilized or when packing is not required, reductions to the SFR will be annotated on the PPGBL. Shipping containers and packing materials furnished by the Transportation Service Provider will remain the property of the Transportation Service Provider.

(2) For all shipments from Germany to CONUS, Transportation Service Providers are responsible for providing the following services:

(a) Identifying clearly all outdoor articles consecutively on the last page of the HHG descriptive inventory.

(b) Packing all outdoor articles in the same container and as close to the front door as possible.

(c) Stenciling "OHA" on the exterior of all containers which include outdoor articles.

(3) Servicing and unservicing of appliances, except third party service.

(4) All land, water and air transportation, EXCEPT:

(a) Additional land transportation charges for shipments picked up or delivered from or to SIT.

(b) Port handling and stevedoring services within the military ocean terminal or within the commercial ocean terminal, when used in lieu of the military ocean terminal, and Government-arranged ocean movement (Code 5).

(c) Terminal services within the AMC terminal and Government-arranged air movement (Code T).

(d) Bunker fuel charges (BSC), air fuel surcharges (100), port security/congestion surcharges (CON), and/or war risk surcharges (WAR), where applicable, and when actually billed to the ITGBL Transportation Service Provider by ocean freight Transportation Service Provider, air Transportation Service Provider or port agent pursuant to regularly filed tariff(s) with the Regulatory Bodies or Commissions. Such charges will be separately stated on the GBL and supported by prorated ocean, air Transportation Service Provider or port agent invoices for the actual amount. (See Item 513 for application of the Fuel Surcharge for CONUS linehaul, including Alaska and Hawaii).

(e) Over-ocean charges negotiated by SDDC Operations Center  (Code 3).

(5) Customs Clearance:

(a) Transportation Service Provider will arrange all customs clearance and other related services that pertain to and influence the movement of personal property (gun control, quarantine, pest infestation, etc.) and will comply with all DOD, foreign, and domestic regulations.

(b) Export and import documentation services involving customs clearances. Movement of shipment, arriving in CONUS, in bond to the U.S. Customs House nearest the ultimate consignee. The responsible destination PPSO will be notified in advance when a shipment is to move in bond.

ORIGINAL PAGE 4-23

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-16

(6) Removal and placement of each article in the residence/warehouse or other building.

(7) Hoisting or lowering of article.

(8) Elevator, stair and excessive distance carry, piano/organ carry and/or heavy or bulky item charge (exception: see paragraph b.(5) below).

(9) Ferry, tunnel and bridge charges/tolls.

(10) Prelodge costs, i.e., those costs incurred as a result of the advance notification and document delivery of shipments to military ocean terminals (Code 5).

b. Transportation SFR WILL NOT INCLUDE:

(1) Storage, waiting time and/or handling charges (includes excess linehaul costs associated with movement of shipment in bond to the U.S Customs House nearest the ultimate consignee), caused by failure of the origin transportation officer to furnish acceptable custom documents or by refusal of customs officials to clear shipments. These charges will be billed at rates provided in this solicitation when performed by the Transportation Service Provider. When services are performed by a third party, billing will be at the actual cost charged to the Transportation Service Provider and supported by third party invoices. The billing will reference applicable rate schedules and/or tariffs when charges are assessed in accordance with such publications. Charges for excess linehaul costs, associated with movement in bond, are those expenses over the Transportation Service Provider's normal linehaul operating expenses. Such expenses will be supported by an invoice for the actual charges, along with a copy of the freight agreement or other supporting documentation, to justify the excess cost.

(2) Any Government or public authority ordered charges for inspection, disinfestation, decontamination, fumigation, demurrage or other charges occasioned by such orders not the fault of the Transportation Service Provider.

(3) Servicing of articles requiring services of third parties.

(4) When an article cannot be picked up or delivered from a residence by the conventional method (doorways, stairs, elevator to floor) or the structural nature of the residence must be changed to accommodate a pickup or delivery (removal of windows, doors, etc.), the Transportation Service Provider, upon approval of the PPSO will be authorized third party service or billed under labor if performed by a local agent. This exception is directed at the pickups and deliveries from high rise apartment buildings and is not intended to be used for minor hoisting and lowering, such as first floor balconies in apartments and single family dwellings.

(5) (a) Shipments picked up or delivered to a mini warehouse, which involve a carry in excess of 75 feet between the Transportation Service Provider vehicle and the outside entrance door of the actual storage area, the PPSO can authorize an excessive distance carry charge.

(b) Shipments picked up or delivered to a residence, with construction or other safety factors that prevents the Transportation Service Provider (through no fault of their own) from normal carry access within 75 feet, the PPSO can authorize an excessive distance carry charge. Approval must be granted prior to service being performed.

(c) Item 534 lists the schedule of charges.

ORIGINAL PAGE 4-24

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-16

Item 433  [LHS]                    *Application of Transportation SFR  -  UB*

The transportation SFR, per gross hundredweight, filed with SDDC, including shipments between or within overseas (intertheater/intratheater) command applies from origin area to destination area, on UB shipments controlled by and moving on PPGBL. The SFR includes pickup at any point within the origin area and delivery to any point within the destination area

   a.  Transportation SFR INCLUDE THE FOLLOWING SERVICES:

      (1) Packing, including use of packing containers and materials from origin to destination.

      (2) Servicing and unservicing of appliances.

      (3) All land, water, and air transportation, except:

      (a) Additional land transportation charges for shipments picked up or delivered from or to SIT.

      (b) Port handling and stevedoring services within the military ocean terminal and Government-arranged ocean movement.

      (c) Terminal services within the AMC terminal and Government-arranged air movement.

      (d) Bunker fuel charges (BSC), air fuel surcharges (100), port security/congestion surcharges (CON), and/or war risk surcharges (WAR), where applicable, and when actually billed to the ITGBL Transportation Service Provider by the ocean freight Transportation Service Provider, air Transportation Service Provider or port agent pursuant to regularly filed tariff(s) with the Regulatory Bodies or Commissions. Such charges will be separately stated on the GBL and supported by ocean, air Transportation Service Provider or port agent invoices for the actual amount.

      (4) Arranging customs clearance and other related services that pertain to and influence the movement of personal property, in compliance with all DOD, foreign, and domestic regulations. All export and import service charges. Movement of shipments in bond, to the U.S. Customs House. The responsible destination PPSO will be notified in advance when a shipment is to move in bond.

      (5) Placement of UB external shipping container/crate into member's residence, cutting of bands, and opening of external container/crate. If shipping container is too large for placement into residence (Transportation Service Provider convenience), property must be removed and placed into residence as part of SFR.

      (6) Ferry, tunnel, and bridge charges/tolls.

      (7) For baggage shipments in excess of 250 pounds, Transportation Service Provider will notify the destination transportation officer in advance of delivery.

      (8) For shipment weighing 250 or less, Transportation Service Provider will notify the destination transportation officer no later than 48 hours following delivery.

      (9) At CONUS destinations where Transportation Service Provider is not represented by a UB agent, provide the PPSO the name, address, and telephone number of a point of contact who will make arrangements to accomplish those destination services that may be required by the local PPSO.

ORIGINAL PAGE 4-25

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-16

(10) Advise the destination PPSO by electrical transmission in advance of the RDD with the reason for delay and specify the date the shipment will be available for delivery in the event a shipment cannot be delivered by the RDD.

b. Transportation SFR WILL NOT INCLUDE:

(1) Storage, waiting time, and/or handling charges (includes excess linehaul costs associated with movement of shipment, in bond, to the U.S Customs House nearest the ultimate consignee), caused by failure of the origin transportation officer to furnish acceptable custom documents or by refusal of customs officials to clear shipments. These charges will be billed at rates provided in this solicitation when performed by the Transportation Service Provider. When services are performed by a third party, billing will be at the actual cost charged to the Transportation Service Provider and must be supported by third party invoices. The billing will reference applicable rate schedules and/or tariffs when charges are assessed in accordance with such publications. Charges for excess linehaul costs, associated with movement in bond, are those expenses over the Transportation Service Provider's normal linehaul operating expenses. Such expenses will be supported by an invoice for the actual charges, along with a copy of the freight agreement or other supporting documentation, to justify the excess cost.

(2) Any Government or public authority ordered charges for disinfestation, decontamination, fumigation, demurrage or other charges occasioned by such orders not the fault of the Transportation Service Provider.

(3) Servicing of articles requiring service of third parties, when ordered or authorized in writing by the PPSO.

(4) Unpacking services, when requested and approved by the PPSO.

Item 434                          *Terms and Conditions for Code J Shipments*

These terms and conditions apply specifically to the handling and ITGBL management of Code J UB shipments moving between overseas areas and CONUS.

a. ITGBL Transportation Service Providers participating in Code J service agree to:

(1) Comply with requirements and procedures of AMC in reporting, documenting and handling military shipments. This includes palletizing shipments, preparation of the Transportation Control Movement Document (TCMD), DD Form 1384, for each pallet or individual shipment, delivery of pallet loads or individual shipments to the AMC air terminal, and the receipt of pallet loads or individual shipments from CONUS or overseas AMC air terminal.

(2) Accept 100 percent of the Code J traffic tendered.

(3) Assume on a door-to-door basis, full responsibility for shipments and liability to the limits prescribed in Item 410, Limitation of Transportation Service Provider Liability.

(4) Pick up cargo from AMC no later than one workday from time of notification and forward these shipments to their ultimate destination.

(5) Configure all Code J pallets for DC-8 or DC-10 aircraft.

# INTERNATIONAL PERSONAL PROPERTY
# RATE SOLICITATION I-19



THIS SOLICITATION CANCELS AND
SUPERCEDES RATE SOLICITATION I-18

*DESCRIBING SPECIFICATIONS AND SERVICES FOR SHIPMENT OF DEPARTMENT OF DEFENSE (DoD)
SPONSORED PERSONAL PROPERTY MOVING WORLDWIDE*

EFFECTIVE – 01 OCTOBER 2007

Department of the Army
Surface Deployment and Distribution Command
200 Stovall Street
Alexandria Va.  22332-5000
Unclassified

ORIGINAL PAGE 4-33

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-19

Item 433  [LHS]            *Application of Transportation SFR  -  UB*

The transportation SFR, per gross hundredweight, filed with SDDC, including shipments between or within overseas (intertheater/intratheater) command applies from origin area to destination area, on UB shipments controlled by and moving on PPGBL. The SFR includes pickup at any point within the origin area and delivery to any point within the destination area

a.  Transportation SFR INCLUDES THE FOLLOWING SERVICES:

(1) Packing, including use of packing containers and materials from origin to destination.

(2) Servicing and unservicing of appliances.

(3) All land, water, and air transportation, except:

(a) Additional land transportation charges for shipments picked up or delivered from or to SIT.

(b) Port handling and stevedoring services within the military ocean terminal and Government-arranged ocean movement.

(c) Terminal services within the AMC terminal and Government-arranged air movement.

(d) Bunker fuel charges (BSC), air fuel surcharges (100), port security surcharges (COF), port congestion surcharges (CON), and/or war risk surcharges (WAR), where applicable, and when actually billed to the ITGBL Transportation Service Provider by the ocean freight Transportation Service Provider, air Transportation Service Provider or port agent pursuant to regularly filed tariff(s) with the Regulatory Bodies or Commissions. Such charges will be separately stated on the GBL and supported by ocean, air Transportation Service Provider or port agent invoices for the actual amount.

(4) Arranging customs clearance and other related services that pertain to and influence the movement of personal property, in compliance with all DOD, foreign, and domestic regulations. All export and import service charges. Movement of shipments in bond, to the U.S. Customs House. The responsible destination PPSO will be notified in advance when a shipment is to move in bond.

(5) Placement of UB external shipping container/crate into member's residence, cutting of bands, and opening of external container/crate. If shipping container is too large for placement into residence, property must be removed and placed into residence as part of SFR.

(6) Ferry, tunnel, and bridge charges/tolls.

(7) For baggage shipments in excess of 250 pounds, Transportation Service Provider will notify the destination transportation officer in advance of delivery.

(8) For shipment weighing 250 or less, Transportation Service Provider will notify the destination transportation officer no later than 48 hours following delivery.

(9) At CONUS destinations where Transportation Service Provider is not represented by a UB agent, provide the PPSO the name, address, and telephone number of a point of contact who will make arrangements to accomplish those destination services that may be required by the local PPSO.



**Surface Deployment and Distribution Command (SDDC)**



Doing Business with SDDC
Families First
Contact the Webmaster
Access ETA System

Global Cargo Distribution
Passenger
Personal
Property / POV
Transportation Groups

| Home | Press Releases | What's New | Jobs | Contact Us | Search: | Go |

Waiting Time Issue

**Site Path:Personal Property>Messages>International>Waiting Time Issue (35016)**

Quick Links
News Center

Printable Format(s):Word  Printer Friendly

SUBJECT: Policy Regarding Delays Incurred Entering Military Installations

1. This message provides policy regarding delays incurred by the carrier due to the installations security requirements.

2. DOMESTIC SHIPMENTS

a. When a carrier is delayed at the gate of an installation, through no fault of its own, the carrier shall expend the applicable free waiting time allowed (2 hours for shipments moving over a distance of 200 miles or over and 1 hour for shipments moving over a distance of less than 200 miles between point of pickup and point of delivery) under the Domestic Personal Property Rate Solicitation (DPPRS). The carrier must immediately notify the responsible personal property shipping office (PPSO) of the potential delay upon arriving at the gate or at the line for entry to the installation. Prior to expiration of the applicable free waiting time, the carrier must contact the PPSO to obtain further instructions:

(1)  A carrier instructed to continue delivery of the shipment shall be paid waiting time only when the applicable waiting time has expired. For example, a carrier delivering a shipment with a pickup point and delivery point of over 200 miles who is delayed at the gate for 3 hours, through no fault of its own, is entitled to payment of 1 hour waiting time under the procedures contained in Item 406 of the DPPRS. Paid waiting time will begin once the carrier has notified the PPSO and the free waiting time has elapsed.

(2)  A carrier instructed to return the shipment to the storage facility shall be paid

for attempted delivery only, under the procedures contained in Item 408 of the DPPRS.

## 3. INTERNATIONAL SHIPMENTS

a. When a carrier is delayed at the gate of an installation, through no fault of its own, the carrier shall expend the applicable free waiting time allowed (3 hours for direct deliveries and 1 hour for shipments from SIT or attempted pickups) under the International Personal Property Rate Solicitation (IPPRS). The carrier must immediately notify the PPSO of the potential delay upon arriving at the gate or at the line for entry to the installation. Prior to expiration of the applicable free waiting time, the carrier must contact the responsible PPSO to obtain further instructions:

(1) A carrier instructed to continue delivery of the shipment or to proceed in
picking up a shipment shall be paid waiting time only when the applicable waiting time has expired. For example, a carrier delivering a shipment from SIT who is delayed at the gate for 2 hours, through no fault of its own, is entitled to payment of 1 hour waiting time under the procedures contained in Item 503 of the IPPRS. Paid waiting time will begin once the carrier has notified the PPSO and the free waiting time has elapsed.

(2) A carrier instructed not to continue with a shipment pickup shall be paid for
attempted pickup only, under the procedures contained in Item 511 of the IPPRS.

(3) A carrier instructed to return the shipment to the storage facility shall be paid
for attempted delivery only, under the procedures contained in Item 510 of the IPPRS.

4. Billing will be accomplished via normal procedures using DD Form 619/619-1,
whichever is appropriate. Should a payment dispute arise between the PPSO and the carrier, the carrier may appeal to the respective military service headquarters.

5. This message has coordination and concurrence from the military services.

6. Point of contact is Mr. Alex Moreno, MTPP-HR, DSN 328-3281 or (703) 428-3281.

Point(s) of Contact: Personal Property
Disclaimer Security Notice

# INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-13

## CANCELS AND SUPERCEDES RATE SOLICITATION I-12



DESCRIBING SPECIFICATIONS AND
SERVICES FOR SHIPMENTS OF
DEPARTMENT OF DEFENSE (DOD)
SPONSORED PERSONAL PROPERTY
MOVING WORLDWIDE

### HEADQUARTERS
### MILITARY TRAFFIC MANAGEMENT COMMAND
### DCSPPP, MTPP-HR

## EFFECTIVE: 1 OCT 2001

ORIGINAL PAGE 5-36

INTERNATIONAL PERSONAL PROPERTY RATE SOLICITATION I-13

Item 503 [WTG]                                  *Waiting Time*

(503A) - Waiting time - vehicle hours
(503B) - Waiting time - labor - regular
(503C) - Waiting time - labor - overtime
(503D) - Waiting time - labor - Sunday/holiday - Alaska only

Billing Note:  Use the applicable labor rates contained in Item 502 when billing regular labor services under subitem 503B, overtime labor services under 503C, or Sunday/holiday labor services (Alaska only) under subitem 503D.

   a.  This item will not apply when waiting time is the fault of the carrier.

   b.  Loading and unloading or pickup and delivery will be performed during regular working hours.  (See definition in Chapter II).  Waiting time charges will be applicable only between these hours at rate of $21.50 (503A)  per hour per vehicle less free waiting time.

   c.  Free waiting time is allowed as follows:  3 hours for direct deliveries, 1 hour for deliveries from SIT, and 1 hour for attempted pickup of HHG only.

   d.  Additional waiting time, after expiration of the free waiting time, requires prior approval of the PPSO and is subject to the convenience of the carrier.

   e.  Charges based on time are computed by multiplying the hourly rate by the time involved.  When fractions of an hour are used, the charges will be as follows:  15 minutes or less, one quarter of an hour; 16 to 30 minutes, one-half hour; 31 to 45 minutes, three quarters of an hour; and in excess of 45 minutes, one hour.

   f.  Labor charges for the vehicle driver and helper(s) will be at the hourly labor rate in Item 502.


Item 504 [OAC]                          *Overtime Loading and Unloading*

(504A) - Overtime loading and unloading - HHG shipments
(504B) - Overtime loading and unloading - UB shipments

   a.  Except as otherwise provided for and subject to applicable notes below, an additional charge of $1.70 (504A) per net CWT will apply for each overtime loading or each overtime unloading when this service is performed other than during regular working hours and authorized and confirmed, in writing, by the PPSO.

   b.  Overtime loading and unloading charges apply when the service is (1) performed other than during regular working hours when this service is made necessary by landlord requirements, (2) required by prevailing laws or ordinances, or (3) rendered at the specific request of the PPSO or its agent, made in writing, and the shipper or its agent is notified of the additional charge specified in this item for this service before the loading and/or unloading begins.  (See notes below.)

NOTE 1:  Overtime loading and unloading charges will be based on the net hundredweight of the shipments subject to a minimum of 500 pounds.

NOTE 2:  Overtime loading and unloading charges will not apply when service is performed for carrier's convenience or when shipments are delivered to a warehouse at destination.