# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| CARTWRIGHT INTERNATIONAL VAN LINES, INC. et al., <br>           Plaintiffs, <br><br> v. <br><br> LURITA ALEXIS DOAN, Administrator of General Services Administration, <br><br>           Defendant. | Case Number: 1:07-1454 (EGS) |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Plaintiffs seek an injunction barring the General Services Administration ("GSA") from collecting debts owed for overcharges billed to and paid by GSA for transportation services, and contend that GSA's collection of those debts violates the regulations setting forth procedures for post-payment audits and overcharges. Those claims should be dismissed for lack of subject matter jurisdiction or, in the alternative, transferred to the Court of Federal Claims. See Dkt. Entry 20. There is no Administrative Procedure Act ("APA") jurisdiction over matters for which an adequate alternative remedy exists in another forum. Further, the APA does not give this Court jurisdiction over claims that "in essence" seek monetary relief from the government. Smalls v. United States, 471 F.3d 186, 190 (D.C. Cir. 2006). Both of those limitations on APA jurisdiction bar Plaintiffs' claims. Moreover, Plaintiffs' pending case before the Civilian Board of Contract Appeals ("CBCA") also deprives this Court of jurisdiction, as they cannot be in two forums simultaneously. For all those reasons, Defendant moves that this case be dismissed for lack of jurisdiction or, alternatively, transferred.

**ARGUMENT**

I.    **THERE IS NO APA JURISDICTION OVER PLAINTIFFS' CLAIMS.**

Plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to review their claims. See Thompson v. Capitol Police Bd., 120 F. Supp. 2d 78, 81 (D.D.C. 2000). Here, that means that Plaintiffs must establish that the APA waives the United States' sovereign immunity. As explained in Defendant's motion to dismiss, Congress has placed express limitations on the APA's waiver of immunity, two of which are implicated in this case. First, there is no APA jurisdiction over claims for which there is some "other adequate remedy in a court." 5 U.S.C. § 704. Second, district courts lack APA jurisdiction over claims that seek "money damages." Id. § 702.

    A.    **The Court of Federal Claims Can Provide an Adequate Remedy.**

"[A] claimant with an alternative remedy in another court, such as the Court of Federal Claims, cannot seek review of agency action in a district court under the APA." Consolidated Edison Co. of New York v. United States Dep't of Energy, 247 F.3d 1378, 1385 (Fed. Cir.), cert. denied, 534 U.S. 1054 (2001) ("ConEd"). Accordingly, there is no APA jurisdiction over Plaintiffs' claims if the Court of Federal Claims is capable of providing an adequate remedy in a case brought in that forum. The Court of Federal Claims has that authority. Therefore, Plaintiffs cannot pursue their claims in this Court.

Although Plaintiffs bear the burden of establishing jurisdiction, they have identified no cases in which the Court of Federal Claims or the Federal Circuit held that it lacks jurisdiction to review challenges to GSA's enforcement of notices of overcharge issued to transportation service providers ("TSPs"). Nor have they identified any cases in which either court has held that it lacks

jurisdiction to interpret regulations or statutory provisions pertaining to overcharge notices, other debt collection actions, contract disputes, or other disputes within its Tucker Act jurisdiction. Instead, Plaintiffs' opposition memorandum relies on the unsupported allegation that the Court of Federal Claims only has jurisdiction to award money damages for breach of contract, and then attempts to distinguish the cases cited in Defendants' motion on the grounds that they allegedly involve breach of contract claims.

Plaintiffs' narrow characterization of the Court of Federal Claims' jurisdiction cannot be reconciled with the Tucker Act or Federal Circuit precedent. The relevant statutory provisions and cases are discussed in Defendant's motion to dismiss. See Mot. To Dismiss at 13-14. Three points merit emphasis in this reply. First, in Spectrum Leasing Corporation v. United States, the D.C. Circuit held that a purported APA claim in which the TSP alleged that GSA failed to comply with the procedural rules governing offsets "was founded upon a contract for purposes of the Tucker Act," because the carrier's right to receive payment of the invoices against which offsets were being applied arose under a contract for provision of services. 764 F.2d 891, 895 (D.C. Cir. 1985). The same is true here.[1]

Second, even if this case did not arise under a contract, there would still be Tucker Act jurisdiction. The plain language of the Tucker Act grants the Court of Federal Claims jurisdiction to review any claim "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491 (emphasis added); see, e.g., ConEd, 247 F.3d at 1380-85 (concluding Court of Federal Claims could provide adequate relief for claim

---

[1] Plaintiffs' statement that "there is no existing contract" is perplexing. Opp. at 7. They have agreements with the government to provide services pursuant to government bills of lading (GBLs), and a right to receive payments pursuant to those GBLs.

challenging constitutionality of statute by granting monetary relief for payments due under that statute); Kanemoto v. Reno, 41 F.3d 641, 642-43 (Fed. Cir. 1994) (concluding Claims Court had jurisdiction to review 'APA' claim arising out of federal statute permitting reparations for World War II internees). The overcharges are collected pursuant to the Transportation Act, which is part of the Interstate Commerce Act ("ICA"). Both the Transportation Act and the ICA are statutes creating causes of action that may be heard in the Court of Federal Claims. See Inter-Coastal Xpress, Inc. v. United States, 296 F.3d 1357, 1361-62 (Fed. Cir. 2002); 49 U.S.C. § 14705 (establishing cause of action to recover charges for transportation including actions to recover overcharges).

Finally, the Court of Federal Claims has authority to issue collateral orders necessary to "provide an entire remedy and complete the relief awarded by the judgment." 28 U.S.C. § 1491(a)(2). That includes "the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." Id. In sum, the Court of Federal Claims can do far more than award damages in breach of contract cases.

Plaintiffs' characterization of the relief they seek as forward-looking does not alter the jurisdictional analysis. Plaintiffs claim to seek only prospective relief, and then suggest that the Court of Federal Claims can only hear claims that seek to remedy past conduct. In reality, this case involves past actions by GSA — namely its issuance of notices of overcharge and its July 27, 2007 letter to Plaintiffs announcing that it would begin to collect the overcharges through deductions and offsets. The overcharges arise on invoices that already have been submitted to and paid by GSA pursuant to Plaintiffs' transportation agreements with government entities. The

actual deductions will be applied against future invoices, but the same is true in any debt collection action involving offsets.

In any event, the Court of Federal Claims can render judgments that have the same practical effect as an injunction against future offsets, e.g., by awarding Plaintiffs a monetary judgment, and/or remanding to GSA with instructions. See 28 U.S.C. § 1491 (giving court remand authority). Indeed, that appears to be the relief that Plaintiffs seek in their pending CBCA claims. See Dkt. Entry 14 at Exh. 1, ¶ 7; id. at Exh. 2. The Federal Circuit has declined to adopt "a broad rule that the Court of Federal Claims cannot supply an adequate remedy in any case seeking injunctive relief." ConEd, 247 F.3d at 1383. The remedy that court provides need not be identical to the remedy available in a district court in order to be "adequate." A monetary award, paired with an analysis of the proper interpretation of the regulations and/or a remand with "instructions" often yields the same results as an injunction limiting the agency's prospective conduct, and would do so in this case. As the Federal Circuit noted in ConEd, a successful action in the Court of Federal Claims can limit the government's future conduct through application of res judicata, and as a practical matter, a judgment that past "exactions" were illegal would preclude the government from repeating that illegal conduct in the future. See 247 F.3d at 1385.

To the extent that Plaintiffs' arguments rest on the premise that the Court of Federal Claims cannot assert jurisdiction over their claims until after the deductions and offsets have been collected, they misperceive the APA's jurisdictional limitations. "[T]he question posed by APA Section 704 is whether the Claims Court offers adequate remedies, not whether [Plaintiffs] will be entitled to receive those remedies." Mitchell v. United States, 930 F.2d 893, 897 (Fed. Cir.

1991). Thus, if Plaintiffs have a potential remedy in the Court of Federal Claims, but it is not yet ripe, Section 704 bars their APA claims. See id.

**B.     Plaintiffs Seek Monetary Relief from the Government.**

Claims that "in essence" seek monetary relief from the government are governed by the Tucker Act, and lie within the jurisdiction of the Court of Federal Claims. See Smalls, 471 F.3d at 190. Federal district courts lack jurisdiction to hear such claims unless they seek $10,000 or less, in which case the Little Tucker Act gives the district court concurrent jurisdiction with the Court of Claims. See 28 U.S.C. § 1491, 1346(a)(2). To determine whether a case is "in essence" one for monetary relief, courts look to the remedy sought in the complaint. See Smalls, 471 F.3d at 190. When assessing the nature of the remedy, courts must "look to the complaint's substance, not merely its form." Kidwell v. Department of the Army, 56 F.3d 279, 284 (D.C. Cir. 1995). Otherwise a plaintiff could "circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." ConEd, 247 F.3d at 1385.

It is clear from the face of the complaint that the "thrust of the suit is to obtain money from the United States." Id. Plaintiffs' assertion that they seek declaratory and injunctive relief "which will not result in any monetary benefit to" them cannot be reconciled with the complaint. Opp. at 9 (Dkt. Entry 21). The complaint does not simply ask the Court to declare that GSA has violated its regulations. Instead, Plaintiffs describe it as "a complaint for declaratory and injunctive relief . . . requesting the Court to enjoin defendant from collecting thousands of dollars by offset from monies indisputedly [sic] due and paid to plaintiffs for transportation services rendered to the government at its request." Compl. ¶ 1. Plaintiffs then "respectfully ask the

Court to enjoin defendant from collecting monies by offset from plaintiffs," id. ¶ 3.  Plaintiffs continue this theme in the prayer for relief, "respectfully ask[ing] this Court to enjoin defendants from continuing to deduct monies from plaintiffs pursuant to Notices of overcharge."  Id. at 9 (Prayer for Relief).  Although Plaintiffs repeatedly demand an injunction barring GSA from continuing to collect offsets, the prayer for relief is strikingly silent concerning the declaratory relief Plaintiffs also purport to request.

Accordingly, this is a case which "in essence seeks more than $10,000 in monetary relief from the Government." Kidwell v. Department of Army, Bd. for Correction of Military Records, 56 F.3d 279, 284 (D.C. Cir. 1995).  While Plaintiffs accuse GSA of violating its regulations, the remedy they seek is monetary in nature.  If granted, the injunctions would allow Plaintiffs to avoid having $1,908,917.00 deducted from the payments owed to Plaintiffs under several government contracts, and would require GSA to pay that $1,908,917.00 to them.  See Compl. ¶ 1 (listing dollar amounts of offsets already deducted and future offsets).  The financial implications of such relief are obvious.[2]  See id. ¶ 2 (discussing the "financial impact" of GSA's "unlawful deductions").

The clear and direct link between those monetary benefits and the requested injunctive relief make this case fundamentally different from the cases Plaintiffs cite to support their assertion that this Court has jurisdiction.  The cases on which Plaintiffs rely stand for the proposition that "[a] complaint is not in essence one for monetary damages if the only remedy requested is non-monetary relief that has considerable value independent of any future potential

---

[2] Indeed, in their motion for a preliminary injunction, Plaintiffs have claimed that the financial hardship they will suffer absent the injunction would be so great that it would drive them out of business, and constitute irreparable harm.  See Dkt. Entry 3.

for monetary relief." Smalls v. United States, 471 F.3d 186, 190 (D.C. Cir. 2006) (internal quotation marks omitted); see also Tootle v. Secretary of the Navy, 446 F.3d 167, 176 (D.C. Cir. 2006) (noting that if Tootle prevailed "he undeniably will obtain a win of significant non-monetary value"); Kidwell, 56 F.3d at 284-85. The Kidwell and Small plaintiffs sought to correct their military records, and Tootle challenged a military board's determination that he was "fit for duty" and therefore ineligible for medical retirement. See Smalls, 471 F.3d at 190; Tootle, 446 F.3d at 29; Kidwell, 56 F.3d at 281. In those cases, the request for monetary relief could not be found within the "four corners of the complaint." Smalls, 471 F.3d at 190. Any monetary recovery would be an incidental benefit resulting from future proceedings that might be held after the district court ruled, and not from the order the district court itself issued. See id.; Tootle, 446 F.3d at 175 ("any monetary recovery Tootle might be entitled to in the future would be entirely separate from the District Court's decision regarding whether the Government acted arbitrarily and capriciously").

Here, Plaintiffs have asked the Court to enjoin GSA from collecting money. See Compl. ¶¶ 1, 3, 9. To the extent they also seek declaratory relief concerning GSA's compliance with the procedural rules governing its collection of debts for overcharges, that is "negligible in comparison with the potential monetary recovery." Smalls, 471 F.3d at 190 (quoting Tootle, 446 F.3d at 176). Accordingly, their reliance on Smalls, Tootle, and Kidwell is misplaced.

Plaintiffs' efforts to distinguish Spectrum Leasing Corporation are equally unpersuasive. Spectrum Leasing filed an APA claim against the government, arguing that GSA had violated the Debt Collection Act by failing to follow the procedural rules governing the collection of debts through administrative offsets. See 764 F.2d at 892. Spectrum Leasing sought an injunction

compelling the government to stop withholding payments through offsets, and declaring that it was "entitled to immediate payment of all . . . payments illegally withheld by means of administrative setoff." Id. at 894. The Court concluded that this was a Tucker Act claim within the exclusive jurisdiction of the Court of Claims. See id. at 895. As Plaintiffs admit, the D.C. Circuit held that the relief Spectrum Leasing requested would result in the payment of money. See Opp. at 10. However, their assertion that the injunction they seek will not result in the payment of money cannot be reconciled with the D.C. Circuit's ruling. The D.C. Circuit concluded that any right Spectrum had to receive payments due on the invoices against which the offsets were being applied arose from the government's contractual obligation to pay those invoices,[3] and not the Debt Collection Act, thereby placing the case within the scope of the Tucker Act. See Spectrum Leasing Corp., 764 F.2d at 894. The same is true here.

    Defendant acknowledges that Plaintiffs have withdrawn some of the monetary claims that were in the original complaint. The original complaint sought a refund of previously collected deductions and offsets in addition to an order enjoining any further deductions, whereas the amended complaint focuses on the latter. However, the injunction Plaintiffs seek remains financial in nature. If granted, it will require the government to pay the invoices against which deductions otherwise would be applied. See 31 U.S.C. § 3726. In that respect, this case is very much like Spectrum Leasing.

---

    [3] In Spectrum, the contract from which the original debt arose appears to have been the same as the contract against which the offsets were applied. Here, multiple contracts and government bills of lading (GBLs) are at issue.

## II. PLAINTIFFS' CBCA CASES DUPLICATE THE ISSUES RAISED HERE.

The fact that Plaintiffs have commenced parallel proceedings before the CBCA provides an additional basis for dismissing this case. <u>See</u> Mot. to Dismiss or Transfer at 20-22. Plaintiffs attempt to distinguish the CBCA cases from this litigation by claiming that the CBCA cases only require interpretation of the solicitation, whereas this case requires the Court to interpret regulations. Plaintiffs also claim that the CBCA claims involve money that already has been deducted or offset, whereas this case involves money that will be offset in the future. However, those alleged differences are purely superficial. This Court has copies of the CBCA pleadings. <u>See</u> Dkt. Entry 14. Plaintiffs' claims expressly seek review of the deductions that have been taken <u>and</u> the issuance of "Notices of Overcharges, <u>which have not yet been deducted to date</u>." <u>Id.</u> at Exhs. 1, 2 (emphasis added). The claims ask the CBCA to direct GSA "to cancel the outstanding Notices of Overcharge . . . <u>and not deduct any additional monies for GBLs subject to those Notices of Overcharge</u>. <u>Id.</u> at Exhs. 1, 2 (emphasis added). That belies Plaintiffs' assertion that the CBCA case involves only <u>past</u> deductions and offsets. In a related CBCA case, plaintiffs' counsel has raised a "jurisdictional" argument based on the same regulatory interpretation they advance in this Court. <u>See</u> <u>id.</u> at Exh. 3. Thus even if Plaintiffs could not directly present those regulatory interpretation arguments to the CBCA,[4] they can achieve the same result by raising this threshold "jurisdictional" argument.

Plaintiffs' assertion that the election doctrine applies only to Contract Disputes Act claims ignores the text of the applicable regulations. Like the CDA provisions enforced through the

---

[4] Defendants read the applicable regulations as permitting the CBCA to review <u>all</u> of the facts and legal issues surrounding the overcharge notices being appealed.

election doctrine, the regulations governing Plaintiffs' claims provide that a carrier "may request a review by the GSA Board of Contract Appeals <u>or</u> file a Claim with the United States Court of Federal Claims." 41 C.F.R. § 102-118.650 (emphasis added). The plain language of those regulations precludes Plaintiffs from seeking simultaneous relief in both forums.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this case be DISMISSED for lack of jurisdiction or TRANSFERRED to the Court of Federal Claims.

Dated: November 21, 2007                    Respectfully submitted,

    /s/ Jeffrey Taylor by DCH
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

    /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.

    /s/ Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**Of Counsel:**

Raymond J.M. Wong
Aaron Pound
GENERAL SERVICES ADMINISTRATION,
Office of General Counsel