IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Cartwright International Van Lines, Inc., et al., ) | ) |
| Plaintiffs ) | ) |
| v. ) | Civil Action No. 1:07-1454 (EGS) |
| Lurita Alexis Doan, Administrator of General Services, ) | ) |
| Defendant ) | ) |

## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs Cartwright International Van Lines, Inc. and Foremost Forwarders, Inc., by their undersigned attorneys, hereby move the Court, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, for a temporary restraining order pending a decision on defendant's motion to dismiss the complaint and plaintiffs' motion for a preliminary injunction. The temporary restraining order sought will restrain defendant and officers, agents, and employees of the General Services Administration and all persons acting in concert with them from continuing to collect by offset monies of the respective plaintiffs by actions not authorized by, and in direct conflict with, the terms of the GSA regulations which govern said offsets, which unlawful actions are the subject of the complaint, until

the issuance of the Court's decision on defendant's motion to dismiss and plaintiffs' motion for a preliminary injunction.

## GROUNDS FOR RELIEF

1. Prior to filing the complaint, the undersigned attorney for plaintiffs furnished representatives of the U.S. Attorney's office the pleadings to be filed with the Court which included a Motion for Temporary Restraining Order to bar defendant from continuing to offset monies from plaintiffs until a decision was issued by this Court on plaintiffs' Motion for Preliminary Injunction. Defendant agreed that it would not offset any monies from plaintiffs and two other similarly-situated carriers for 30 days from August 14 through September 13, 2007 and based on that agreement, plaintiffs' counsel did not file the motion for TRO. Defendant has extended the agreement not to offset monies from Cartwright and Foremost through November 29, 2007.

2. The TRO is necessary because, although these matters are still pending decision by the Court, counsel for defendant has now advised that defendant will resume the taking of plaintiffs' monies without compliance with the governing regulations.

3. Unless restrained by the TRO, GSA will resume offsetting monies from plaintiffs in violation of GSA regulations, viz. 41 C.F.R. §102-118.435(f), which requires GSA to state the basis for a claim of overcharge in the Notice of

2

Overcharge, and 41 C.F.R. §102-118.600, which grants a carrier the right to protest GSA's basis for the overcharge before GSA takes the amount of the alleged overcharge from plaintiffs' funds by offset.[1] GSA, unless restrained, will continuously violate its own regulations since GSA, by letter to the undersigned[2] and by advices given plaintiffs and other TSPs at a meeting on August 2, 2007, advised that it will make offsets of the alleged overcharges on the ground that carriers, including plaintiffs, should have billed under another solicitation item known as "waiting time", which is a different ground than is stated in all of the Notices of Overcharge issued against plaintiffs. (Complaint, para. 13). Each offset made for a reason not stated in the Notice of Overcharge is a clear violation of GSA regulation 102-118.435(f) and deprives each plaintiff of its right to protest the alleged overcharge before offset is made under GSA regulation 102-118.600.

  4. Unless a TRO is granted to prevent defendant from offsetting monies from plaintiffs without compliance with its governing regulations, plaintiffs will suffer irreparable harm.

  5. The potential harm to plaintiffs outweighs any injury to defendant which might flow from issuance of the temporary restraining order requested until the Court decides the pending motions. The harm to defendant is caused by GSA's

---

[1] Attached hereto for the convenience of the Court are excerpts of the cited regulations. (Att. 1).

[2] Attached is letter from GSA's Director of Transportation Audit, dated July 25, 2007. (Att. 2).

3

failure to comply with its own governing regulations, which harm can be completely eliminated by defendant's adhering to their clear terms. Further, plaintiffs have agreed to post an appropriate indemnity bond to cover any possible harm to defendant which could occur during the existence of the TRO pending the Court's decision on defendant's motion to dismiss and plaintiffs' motion for preliminary injunction.

6. Plaintiffs are filing this motion for TRO to restrain defendant from offsetting monies from plaintiffs until the Court issues its decision. At the conference held on November 7, 2007, the Judge requested defendant to voluntarily restrain from making offsets until December 31, 2007 to allow the Court time to issue its decision, which request defendant denied. Unless defendant is restrained from making offsets until the Court's decision is issued, plaintiffs' claims for relief from defendant's offsets in violation of its regulations will be mooted because offsets against plaintiffs will have been made before the Court issues its decision.

For the above reasons, plaintiffs respectfully request that their Motion for Temporary Restraining Order be granted.

## REQUEST FOR HEARING

Plaintiffs request an oral hearing on this Motion at the earliest time convenient to the Court.

Respectfully submitted,

/a/Alan F. Wohlstetter
Alan F. Wohlstetter DC Bar No. 112797
Stanley I. Goldman DC Bar No. 109405
DENNING & WOHLSTETTER
888 Seventeenth Street, NW
Suite 700
Washington, DC 20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorneys for Plaintiffs
Cartwright International Van Lines, Inc.,
Foremost Forwarders, Inc.

Dated: November 30, 2007

"**§102-118.435  What procedures does GSA use to perform a postpayment audit?**

When GSA performs a postpayment audit, the GSA Audit Division has the delegated authority to implement the following procedures:

\* \* \*

(f) Issue a Notice of Overcharge stating that a TSP owes a debt to the agency. This notice states the amount paid, the basis for the proper charge for the document reference number, and cites applicable tariff or tender along with other data relied on to support the overcharge. A separate Notice of Overcharge is prepared and mailed for each bill...."

\* \* \*

"**§102-118.600  When a TSP disagrees with a Notice of Overcharge resulting from a postpayment audit, what are the appeal procedures?**

A TSP who disagrees with the Notice of Overcharge may submit a written request for reconsideration to the GSA Audit Division at...."

\* \* \*

"**§102-118.620  How will a TSP know if the GSA Audit Division disallows a claim?**

A GSA Audit Division will furnish a GSA Form 7932 Settlement Certificate, to the TSP explaining the disallowance."



GSA Federal Supply Service

JUL 25 2007

Alan F. Wohlstetter
Denning & Wohlstetter
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006

Dear Mr. Wohlstetter:

This letter is only in response to your letter dated January 23, 2007 in your capacity as the representative of the Household Goods Forwarders Association of America, Inc. (HHGFAA) concerning various Notices of Overcharge issued by GSA in connection with the pass-through of congestion expenses for Code J shipments. This letter is not in response to your January 23 letter to the extent your letter replied to any of the specific Notices that have been issued to various members of HHGFAA whom you listed in the signature block of your January 23 letter. Your January 23 letter responded to GSA's position that pass-through charges from the TSPs for port congestion, which were billed by port agents for the TSPs, were not properly filed with the appropriate regulatory body, and consequently, not allowable. You disagreed, and requested rescission of the subject Notices of Overcharge issued on that basis.

You have made various arguments to support your position including those summarized below.

(1) The legal assumption upon which the Notices of Overcharge are based is incorrect -- there is no legal requirement for port agents to issue tariffs.

(2) SDDC erroneously assumed that the surcharges (including port congestion surcharges) listed in Items 432 Application of Transportation SFR – HHG and 433 Application of Transportation SFR – UB are required to be filed with a regulatory body.

(3) The Notices of Overcharge result in services rendered without payment since the Government requested the services from transportation service providers (TSPs) who contracted with port agents who performed and were paid by the TSPs.

(4) In International Personal Property Rate Solicitation (IPPRS) 13, Items 432 and 433 were amended to compensate the TSPs for charges billed by

U.S. General Services Administration
1901 S. Bell Street
Arlington, VA 20406-0003
www.gsa.gov

port agents for excessive delays caused by increased security measures as a result of September 11, 2001 (9/11).

GSA has reviewed your arguments. GSA is not convinced that the provisions of IPPRS 13, Items 432 and 433, can be interpreted and applied under the circumstances in the manner that you have described. The provisions are unambiguous and GSA applies them significantly differently from the way that you have.

IPPRS 13, Items 432 and 433

The Port Congestion Surcharge (CON) has been defined by SDDC as "an extra charge that is billed to the TSP for controlling congestion of trucks/vessels entering/departing the port." Since only the port has control over congestion at its own port, only the port can levy a fee for controlling congestion at the port. Only fees levied by the port are applied to control congestion at the port. Such fees may be imposed by commercial ports (ocean or air). Such fees are not imposed by ports on military installations. Fees denoted as for congestion at the port imposed by "port agents" who are subcontractors to the TSPs are not applied to control congestion at the port. Thus, they are not CON (fees for controlling congestion at the port) in accordance with the provisions of Items 432 and 433.

The Notices of Overcharge were issued against the TSPs for congestion surcharges billed by the "port agents" to the TSPs. These "port agents" are, in fact, the agents or subcontractors of the TSPs; they are not the agents of, and do not represent, the port. Such surcharges from "port agents" who are subcontractors of the TSPs are inappropriate under Items 432 and 433. In addition, these surcharges have been applied to shipments entering/departing ports on military installations where such fees are not levied by the military port. Thus, it is clear that the "port agents" are subcontractors to the TSPs and are not representatives of the port, and these charges are deemed inappropriate.

Compensation for Services Rendered

You have described the service provided by the ITGBLTSP port agents that warrants compensation as delays at military installations resulting from increased security measures as a consequence of "9/11." Such delays, additional waiting time due to the increased security, is not Port Congestion Surcharge (CON) as defined by SDDC. Such additional waiting time has already been provided for. The IPPRS 13 provides for excessive delays as defined by Item 503 Waiting Time. For international shipments, the TSP will expend 3 hours waiting time for direct deliveries and 1 hour for from SIT or attempted pickups, the free waiting time, before the TSP will have excessive delays which potentially meets the definition of Item 503 Waiting Time. The TSP must notify the PPSO of the potential delay, and notify the PPSO prior to expiration of the free waiting time

Att. 2
p. 3 of 3

and obtain further instructions. Paid waiting time, the additional waiting time, begins only upon the expiration of the free waiting time and requires the prior approval of the PPSO of the potential delay. These instructions have also been posted on SDDC's website as a policy regarding delays due to installations security requirements.

Additionally, the Defense Transportation Regulation (DTR) requires TSPs to immediately notify the local transportation officer and HQ MTMC via email of any incidents that "produce significant loss, damage, or delay resulting from strikes, port congestion, fires, pilferage, vandalism and similar incidents." See DTR, IV-B-9. These procedures illustrate the importance to SDDC of delays including those caused by port congestion. These reporting requirements are separate and apart from the prior notification and approval required for Item 503 Waiting Time.

GSA concludes that ITGBL TSPs are not entitled to separately bill for waiting time due to increase security at the port incurred by the TSPs' port agent under the provisions of IPPRS13, Items 432 and 433 (as amended). A certain amount of free waiting time is included in the Transportation SFR for items 432 and 433. The appropriate charge for delays at the ports resulting in excessive waiting time is provided for in IPPRS 13, Item 503 (as amended) where prior notification and approval of the PPSO is prescribed. GSA therefore denies your request for rescission of the subject Notices of Overcharge.

Accordingly, GSA will immediately resume the issuance of Notices of Overcharge for the pass-through of congestion surcharges for Code J shipments from the TSPs' "port agents," as well as the collection of the debt due the Government from the TSPs for these transportation overcharges as permitted by regulations, including administrative offset. Such Notices of Overcharge may be successfully rebutted by presenting documentation supporting waiting time in accordance with IPPRS 13, Item 503 (as amended). If a TSP is unable to pay the debt due to the Government immediately, GSA is willing to consider alternate arrangements for payment.

Sincerely,

*[signature: James F. Fitzgerald]*

James F. Fitzgerald
Director

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Cartwright International Van Lines, Inc., et al., <br><br> Plaintiffs <br><br> v. <br><br> Lurita Alexis Doan, Administrator of General Services, <br><br> Defendant | Civil Action No. 1:07-1454 (EGS) |

## TEMPORARY RESTRAINING ORDER

The Court finds that without a temporary restraining order plaintiff will suffer immediate and irreparable injury and harm because defendant, unless restrained, will continue to take monies from plaintiffs by offset in violation of its own regulations governing offsets, which offsets may exceed $2.5 million in the case of plaintiff Foremost Forwarders, Inc., which will likely cause Foremost involuntarily to cease operations before this Court can issue a decision on the plaintiffs' motion for a preliminary injunction. The Court finds that the grant of this restraining order will not adversely affect defendant or harm the public interest. Therefore:

IT IS ORDERED that defendant and the officers, employees and agents of the General Services Administration Transportation Audit Division and all persons acting in

concert with them are hereby restrained from asserting further offsets against plaintiffs until a decision is issued on plaintiffs' motion for preliminary injunction.

IT IS FURTHER ORDERED that this restraining order will remain in effect until December ____, 2007, unless extended or earlier terminated by this Court.

_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Cartwright International Van Lines, Inc., et al., <br><br> Plaintiffs <br><br> v. <br><br> Lurita Alexis Doan, Administrator of General Services, <br><br> Defendant | Civil Action No. 1:07-1454 (EGS) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs have moved for a temporary restraining order to restrain defendant and officers, agents and employees of the General Services Administration (GSA) and all persons acting in concert with them from collecting by offset monies from plaintiffs by actions not authorized by, and in direct conflict with, the terms of the GSA regulations which govern offsets. The Temporary Restraining Order is necessary and warranted for following reasons:

1.  The requested TRO is necessary because defendant's counsel has advised that defendant has terminated its agreement with undersigned plaintiffs' counsel not to offset monies from plaintiffs as of November 29, 2007. Unless the requested TRO is granted, defendant will commence the offsetting of monies from plaintiffs beginning November 30, 2007 without following the governing regulations. This will deprive plaintiffs of their rights to notice of the basis alleged

by defendant for the offset, granted by GSA regulation 41 C.F.R. §102-118.435(f) and the right to protest to the Notice of Overcharge before offset, granted by GSA regulation 41 C.F.R. §102-118.600.

2. Plaintiff Foremost Forwarders, Inc. will suffer immediate and irreparable harm unless defendant is restrained from offsetting $2,593.171 from Foremost which amount is presently subject to issuance of Notices of Overcharge and offset by GSA before a decision by this Court on Plaintiffs' Motion for Preliminary Injunction. As stated by Kenneth J. Sullivan, Foremost's President, in his Second Declaration:

> "...If GSA is permitted to offset the surcharges billed and previously paid by the government under Item 433 to compensate plaintiffs' port agents for delays encountered at military airports, Foremost's total current liabilities would increase to $4,403.412 which would result in a short fall of $573,870 in the required current ratio. This would not only undercut Foremost's ability to service military shipments, as I have previously stated, but would subject Foremost to disqualification by SDDC for failing to meet the required financial ratios. This, in turn, would result in a complete stoppage of Foremost's revenues which would put my company out of business." (p. 3).

3. The immediate and irreparable harm to plaintiffs outweighs any alleged harm to the government which would be caused by GSA's wrongful failure to follow the specific terms of its Transportation Audit Regulations, which failure deprives plaintiffs of their rights under GSA regulation 41 C.F.R. §102-118.600 to protest before offset, the alleged ground on which GSA is now offsetting monies, which differs from the ground alleged in the Notices of Overcharge. The government can

protect itself against any harm by simply following the specific terms of its own regulations and giving plaintiffs the opportunity to file a response to GSA's Notice of Overcharge before the offset is made. Further plaintiffs are willing to post an appropriate bond to protect the government during the pendency of the TRO and the preliminary injunction.

4. Unless the TRO is issued to restrain defendant from offsetting monies from plaintiffs until this Court has issued its decision, plaintiffs' request for relief from defendant's offsets made in violation of its own regulations will be mooted. The grant of this motion for a TRO will preserve the status quo pending the issuance of the Court's decision.

For the above reasons, plaintiffs respectfully ask the Court to issue the requested Temporary Restraining Order.

                      Respectfully submitted,

                      /s/Alan F. Wohlstetter
                      Alan F. Wohlstetter DC Bar No. 112797
                      Stanley I. Goldman DC Bar No. 109405
                      DENNING & WOHLSTETTER
                      888 Seventeenth Street, NW
                      Suite 700
                      Washington, DC 20006
                      Tel: (202) 833-8884
                      Fax: (202) 833-8886
                      Attorneys for Plaintiffs
                      Cartwright International Van Lines, Inc.,
                      Foremost Forwarders, Inc.

Dated: November 30, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Cartwright International Van Lines, Inc., et al., )<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>Lurita Alexis Doan, Administrator of General )<br>Services, )<br>)<br>Defendant ) | No. 1:07-1454 (EGS) |

CERTIFICATE OF COUNSEL PURSUANT TO LOCAL RULE 65.1

I, Alan F. Wohlstetter, attorney for plaintiffs, hereby certify that on November 30, 2007, the following person was served, by electronic mail, copies of the Motion for Temporary Restraining Order and the Memorandum of Points and Authorities in Support of the Temporary Restraining Order:

>Robin M. Merriweather, Esq.
>Assistant United States Attorney
>555 Fourth Street, NW
>Washington, DC 20530
>Email: Robin.Meriweather2@usdoj.gov

        Respectfully submitted,

        /s/Alan F. Wohlstetter
        Alan F. Wohlstetter DC Bar No. 112797
        Stanley I. Goldman DC Bar No. 109405
        DENNING & WOHLSTETTER
        888 Seventeenth Street, NW
        Suite 700
        Washington, DC  20006
        Tel: (202) 833-8884
        Fax: (202) 833-8886
        Email: awohlstetter@aol.com
        Attorneys for Plaintiffs
        Cartwright International Van Lines, Inc.,
        Foremost Forwarders, Inc.

Dated: November 30, 2007