IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Cartwright International Van Lines, Inc., et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Action No. 1:07-1454 |
| ) | (EGS) |
| Lurita Alexis Doan, Administrator of General ) | |
| Services, ) | |
| ) | |
| Defendant ) | |

PLAINTIFFS' REPLY TO DEFENDANT'S MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER

Plaintiffs Cartwright Van Lines, Inc. and Foremost Forwarders, Inc., by their undersigned attorneys, hereby reply to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order. Defendant contends plaintiffs have not met the governing requirements for a temporary restraining order. For reasons stated below, we maintain that plaintiffs have demonstrated that the issuance of the temporary restraining order is warranted and should be granted.

The standard for a issuance of temporary restraining order is stated in Natural Resources Defense Council v. E.P.A., 806 F. Supp. 275, 277 (D.D.C. 1992), as follows:

> "A temporary restraining order or preliminary injunction may be granted only when the plaintiff demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry of a temporary restraining order. <u>Washington Metropolitan Area Transit Commission</u> v. <u>Holiday Tours, Inc.</u>, 559 F.2d 841, 843 (D.C. Cir. 1977); accord, <u>Virginia Petroleum Jobbers Ass'n</u> v. <u>Federal Power Commission</u>, 259 F.2d 921, 925 (D.C. Cir. 1958). The test is not a wooden one, for as our Court of Appeals has noted, relief may be granted "with either a high probability of success and some injury, or vice versa." <u>Cuomo</u> v. <u>United States Nuclear Regulatory Commission</u>, 772 F.2d, 972, 974 (D.C. Cir. 1985) (per curiam) (emphasis in original). See also Holiday Tours, 559 F. 2d at 843.

As stated by the Court in the above decision, injunctive relief is warranted upon proof of "a high probability of success and some injury". As the Court stated in <u>CityFed Financial</u> v. <u>Office of Thrift Supervision</u>, 58 F.3d 738, 746 (D.C. Cir.1995):

> "In deciding whether to grant an injunction the district court must balance the strengths of the requesting party's arguments in each of the four required areas. If the arguments for one fact are particularly strong, an injunction may issue even if the arguments in other areas are rather weak. <u>An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a slight showing of irreparable injury</u>…" (58 F.3d 747) (Citations omitted). (Emphasis supplied).

See also <u>Washington Metropolitan Area Transit Authority</u> v. <u>Holiday Tours, Inc.</u>, 559 F.2d 841, 843 (D.C. Cir.1977).

I. PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF PREVAILING ON THE MERITS.

Defendants contends that plaintiffs are not likely to prevail on the merits alleging that (1) the Court lacks jurisdiction and (2) defendant complied with its regulations in offsetting monies from defendants.

We have fully stated the reasons that this Court has jurisdiction in our Memorandum, dated November 16, 2007, on which we rely for our response to defendant's argument.

On the merits, we have established that defendant has violated and is continuing to violate its Transportation Payment and Audit Regulations by offsetting monies for reasons not stated in its Notices of Overcharge as required by GSA regulation 41 C.F.R. §102-118.435(f) and which unstated reasons plaintiffs were not given the opportunity to protest, although that right is granted by GSA regulation 41 C.F.R. §102-118.600.

Specifically, the sole reason stated by defendant in its Notices of Overcharge is the allegation that the Item 433 surcharge is not applicable to Code J shipments. See Notices of Overcharge issued to Cartwright and Foremost. (Att. 1 and 2). Plaintiffs protested that SDDC specifically made Item 433 applicable to Code J shipments (Att. 3 and 4).[1] GSA never responded to these protests and has abandoned inapplicability to Code J as a basis for causing the overcharges.

---

[1] Defendant incorrectly states that Foremost did not protest. (Defendants Memorandum, p. 17).

3

Defendant now admits that the basis for the offsets is that defendant's billings should have been for "waiting time", (Defendant's Memorandum, p. 14).[2] Defendant attempts to justify the offsets by claiming that it was plaintiffs who changed their theory of billing, having initially billed under WAR rather than under CON or COF of Item 433. Defendant urges the fact that plaintiffs billed under WAR vitiates the merits of plaintiffs' claim. (Defendant's Memorandum, p. 14). As set forth in the attached Declaration of Terry R. Head (Att. 5), the Director of the Transportation Audit Division of GSA, James F. Fitzgerald, specifically advised Mr. Head, who in turn advised his carrier members including plaintiffs, that they did not have to rebill under Item 433 and that their billings would be considered for payment as CON or COF surcharges although billed as WAR.[3]

We maintain that plaintiffs have established a strong likelihood of prevailing on the merits because GSA's offsets were made in clear violation of the governing regulations and therefore should not be sustained.

II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM.

Plaintiffs have established that unless GSA is enjoined from making offsets in violation of its regulations that they will suffer significant harm. As shown in our

---

[2] Defendant wrongfully contends that "waiting time" was advanced by plaintiffs as a basis for the surcharges (Defendant's Memorandum, p. 14). This is incorrect. Defendant's "waiting time" theory was asserted by GSA's Director of Audits in his letter to undersigned counsel dated July 25, 2007. Plaintiffs' request to respond to this new contention before offset was denied. (Att. 6).

[3] Cartwright did rebill under CON or COF as shown by its letter, dated April 28, 2006 to James Fitzgerald, GSA Director of the Audit Division. (Att. 3). No Notices of Overcharge were issued for these rebillings.

4

Memorandum in Response to Defendant's Opposition to the Preliminary Injunction dated August 31, 2007, Foremost is at risk of being forced out of the SDDC procurement because one hundred percent of its revenue is derived from service to the military. Offsets, if made, will result in a shortfall of $573,870 which will subject Foremost to disqualification by SDDC for failure to meet its current operating ratio requirement of 1:1, cash, accounts receivable and prepaid transportation expenses divided by current liabilities.

The offset of substantial monies from Cartwright before a decision on the merits by this Court will severely impair its ability to provide service to the military.

On balance, the harm to the government can be eliminated by GSA's following its own regulations before making offsets and also by accepting plaintiffs' offer to post surety bonds.

### III. THE HARM THAT PLAINTIFFS WILL SUFFER IF INJUNCTIVE RELIEF IS NOT GRANTED OUTWEIGHS ANY HARM TO DEFENDANT.

We maintain that the balance of the harm favors plaintiffs because the alleged harm to defendant can be eliminated if GSA follows its own regulations by setting forth the reason for the proposed overcharge in the Notice of Overcharge and according plaintiffs the right to protest the reasons for the offsets before the offsets are made. Further, plaintiffs have offered to post surety bonds in form acceptable to GSA accompanied by an agreement to waive the statute of limitations on collection of overcharges.

5

IV.  THE PUBLIC INTEREST FAVORS ISSUANCE OF THE INJUNCTIVE RELIEF.

The public interest strongly favors requiring government agencies to follow their own regulations in order to ensure that persons dealing with the government are accorded their rights.  See Service v. Dulles, 354 U.S. 363, 388, 77 S. Ct. 1157, 1165 (1957); Brooks v. Clifford 409 F.2d 700, 706 (4th Cir. 1969); Clean Ocean Action v. York 57 F.3d 328, 333 (3rd Cir. 1995); Reuters, Ltd. v. FCC 781, F.2d 946 (D.C. Cir. 1946).

## CONCLUSION

Plaintiffs' Motion for Temporary Restraining Order should be granted.

Respectfully submitted,

/a/Alan F. Wohlstetter
Alan F. Wohlstetter DC Bar No. 112797
Stanley I. Goldman DC Bar No. 109405
DENNING & WOHLSTETTER
888 Seventeenth Street, NW
Suite 700
Washington, DC  20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorneys for Plaintiffs
Cartwright International Van Lines, Inc.,
Foremost Forwarders, Inc.

Dated:  December 4, 2007

## NOTICE OF OVERCHARGE

PAGE: 1

| RUN DATE | CARRIER | | DRN |
|---|---|---|---|
| 08/02/07 | CARTWRIGHT INTL VAN LINES INC | | JP185267Y |
| SCAC | 11901 CARTWRIGHT AVE | | BATCH-ID |
| CRWV | GRANDVIEW    MO    64030-1829 | | 0000000000 |
| AGENCY CODE | DATE BILL PAID | SHIPPING DATE | SHIP SPECIFIC NUMBER | CARRIER BILL NUMBER |
| 21- | 12/01/05 | 11/01/05 | Various | Various |
| AUDITOR NUMBER | REVIEWER NUMBER | CONTRACTOR 07MSF | PLEASE FURNISH A COPY OF THIS FORM WITH ALL CORRESPONDENCE. MAKE CHECK PAYABLE TO "GENERAL SERVICES ADMINISTRATION". | |

DIRECTOR, TRANSPORTATION AUDIT DIVISION
CTL# 07MSF0016T00121D27

TELEPHONE NUMBER (703) 605-9435
MODE FHG    FOREIGN CURRENCY N

MAIL TO ▶ GENERAL SERIVCES ADMINISTRATION
Transportation Audit Voluntary Program
P.O. BOX 979006
ST LOUIS, MO 63197-9006

THIS OVERCHARGE AMOUNT SHOULD BE PROMPTLY REFUNDED OR EVIDENCE FURNISHED TO SUPPORT CHARGES ORIGINALLY PAID; OTHERWISE, COLLECTION ACTION MUST BE INITIATED PURSUANT TO 31 U.S.C 3726.

| AMOUNT PAID | SHOULD BE AMOUNT | AMOUNT OF OVERCHARGE | INTEREST | TOTAL AMOUNT OF OVERCHARGE |
|---|---|---|---|---|
| 2,106.75 | .00 | 2,106.75 | .00 | 2,106.75 |

BASIS OF OVERCHARGE

Send PROTEST to:
General Services Administration
Crystal Plaza 4, Room 300(FBAA)
2200 Crystal Drive
Arlington, VA 20406

ORIGIN:        Various
DESTINATION:   Various
ROUTING:
Various

BASIS AND AUTHORITY:
This Notice of Overcharge is issued to recover charges that were erroneously billed by your company for War Risk Surcharges (WAR), Port/Terminal Security Handling Surcharges (COF), and Port Congestion Surcharges (CON), applied to codes T, 5, and J shipments.

The Surface Deployment and Distribution Command (SDDC) issued a letter dated February 24, 2006, clarifying the description and application of these surcharges. The letter states in Note 1 that, "Air fuel, bunker, War Risk, Port/Terminal Security Handling, and Port Congestion surcharges are not applicable on shipment codes of service T, 5, and J." Further, SDDC refers to this statement as a clarification of the billing procedure, not a



Att. 1
p. 2 of 3

## NOTICE OF OVERCHARGE

| RUN DATE | CARRIER | | DRN |
|---|---|---|---|
| 08/02/07 | CARTWRIGHT INTL VAN LINES INC<br>11901 CARTWRIGHT AVE. | | JP185267Y |
| SCAC | | | BATCH-ID |
| CRWV | GRANDVIEW | MO   64030-1829 | 0000000000 |
| AGENCY CODE | DATE BILL PAID | SHIPPING DATE | SHIP SPECIFIC NUMBER | CARRIER BILL NUMBER |
| 21- - | 12/01/05 | 11/01/05 | Various | Various |
| AUDITOR NUMBER | REVIEWER NUMBER | CONTRACTOR<br>07MSF | PLEASE FURNISH A COPY OF THIS FORM WITH ALL CORRESPONDENCE.<br>MAKE CHECK PAYABLE TO "GENERAL SERVICES ADMINISTRATION". |

DIRECTOR, TRANSPORTATION AUDIT DIVISION
CTL# 07MSF0016T00121D27

TELEPHONE NUMBER (703) 605-9435
MODE FHG   FOREIGN CURRENCY N

MAIL TO ▶ GENERAL SERIVCES ADMINISTRATION
Transportation Audit Voluntary Program
P.O. BOX 979006
ST LOUIS, MO  63197-9006

THIS OVERCHARGE AMOUNT SHOULD BE PROMPTLY REFUNDED OR EVIDENCE FURNISHED TO SUPPORT CHARGES ORIGINALLY PAID; OTHERWISE, COLLECTION ACTION MUST BE INITIATED PURSUANT TO 31 U.S.C 3726.

| AMOUNT PAID | SHOULD BE AMOUNT | AMOUNT OF OVERCHARGE | INTEREST | TOTAL AMOUNT OF OVERCHARGE |
|---|---|---|---|---|
| 2,106.75 | .00 | 2,106.75 | .00 | 2,106.75 |

BASIS OF OVERCHARGE

change. In accordance with this explanation of the appropriate billing of surcharges, the Audit Division is requesting a refund of excess charges related to the improper application of surcharges to Codes T, 5, and J shipments.

The following DRN's are included in this overcharge:

| | | |
|---|---|---|
| JP185267 $18.20 | JP403553 $67.00 | JP403566 $54.00 |
| JP403579 $29.00 | JP403586 $60.00 | JP438487 $46.30 |
| JP438488 $20.75 | JP655703 $21.00 | JP678320 $8.00 |
| JP688661 $37.60 | JP721599 $20.00 | JP721625 $46.50 |
| JP721626 $50.00 | JP721886 $58.00 | JP721903 $5.50 |
| JP721950 $16.50 | JP722154 $22.25 | JP722358 $37.00 |
| JP722359 $4.25 | JP722408 $33.25 | JP722551 $5.50 |
| JP722552 $20.75 | JP722696 $27.75 | JP800800 $10.60 |
| JP822182 $3.50 | JP822265 $35.50 | JP822271 $7.50 |
| JP867177 $5.90 | JP867179 $14.75 | JP867190 $7.55 |
| JP867194 $27.00 | JP867195 $4.40 | JP867203 $59.50 |
| JP867205 $29.20 | JP876637 $32.25 | JP902835 $58.45 |
| JP913378 $73.95 | JP913527 $44.65 | JP928550 $66.35 |
| JP928612 $16.00 | JP952305 $41.45 | JP952346 $113.85 |
| JP952356 $35.25 | JP952359 $45.30 | JP952389 $4.95 |
| JP980657 $69.35 | JQ002855 $46.90 | JQ004843 $16.80 |
| JQ008977 $8.40 | JQ009368 $91.10 | JQ009657 $43.65 |
| JQ010035 $57.90 | JQ010090 $41.15 | JQ010270 $37.80 |
| JQ010312 $27.55 | JQ010367 $28.05 | JQ010378 $6.70 |
| JQ010381 $5.00 | JQ010382 $25.05 | JQ010407 $29.90 |
| JQ010410 $37.15 | JQ010482 $37.15 | JQ010490 $50.20 |

AUG 0 7 2007

Att. 1
p. 3 of 3

# NOTICE OF OVERCHARGE

| RUN DATE 08/02/07 | CARRIER CARTWRIGHT INTL VAN LINES INC<br>11901 CARTWRIGHT AVE | | | DRN JP185267Y |
|---|---|---|---|---|
| SCAC CRWV | GRANDVIEW               MO   64030-1829 | | | BATCH-ID 0000000000 |
| AGENCY CODE 21- - | DATE BILL PAID 12/01/05 | SHIPPING DATE 11/01/05 | SHIP SPECIFIC NUMBER Various | CARRIER BILL NUMBER Various |
| AUDITOR NUMBER | REVIEWER NUMBER | CONTRACTOR 07MSF | PLEASE FURNISH A COPY OF THIS FORM WITH ALL CORRESPONDENCE. MAKE CHECK PAYABLE TO "GENERAL SERVICES ADMINISTRATION". | |
| DIRECTOR, TRANSPORTATION AUDIT DIVISION<br>CTL# 07MSF0016T00121D27 | | TELEPHONE NUMBER (703) 605-9435<br>MODE FHG   FOREIGN CURRENCY N | MAIL TO ▶ | GENERAL SERIVCES ADMINISTRATION<br>Transportation Audit Voluntary Program<br>P.O. BOX 979006<br>ST LOUIS, MO 63197-9006 |

THIS OVERCHARGE AMOUNT SHOULD BE PROMPTLY REFUNDED OR EVIDENCE FURNISHED TO SUPPORT CHARGES ORIGINALLY PAID; OTHERWISE, COLLECTION ACTION MUST BE INITIATED PURSUANT TO 31 U.S.C 3726.

| AMOUNT PAID | SHOULD BE AMOUNT | AMOUNT OF OVERCHARGE | INTEREST | TOTAL AMOUNT OF OVERCHARGE |
|---|---|---|---|---|
| 2,106.75 | .00 | 2,106.75 | .00 | 2,106.75 |

BASIS OF OVERCHARGE

IN ACCORDANCE WITH THE DEBT COLLECTION ACT OF 1982 (31 U.S.C 3711 ET SEQ.), GSA HAS THE AUTHORITY TO CHARGE INTEREST COSTS AGAINST COMMERCIAL DEBTORS. CURRENTLY, INTEREST IS CHARGED AUTOMATICALLY UNDER THE DEBT COLLECTION ACT FROM THE DATE OF GSA'S NOTICE OF OVERCHARGE. ADDITIONALLY, IF THE GBL OR THE GTR CONTAINS A CONTRACT PROVISION RELATING TO THE ASSESMENT OF INTEREST, THEN INTEREST IS CHARGED UNDER THE CONTRACT TERMS THEREOF, I.E., THE ORIGINAL INVOICE PAYMENT DATE. IF NEITHER CONTAINS SUCH A PROVISION, THEN INTEREST IS ASSESSED UNDER THE DEBT COLLECTION ACT (31 U.S.C. 3717) AND THE FEDERAL CLAIMS COLLECTION STANDARDS (4 CFR PARTS 101-105), AND REGULATIONS PUBLISHED IN 41 CFR PARTS 105-55.

AUG 0 7 2007

GENERAL SERVICES ADMINISTRATION                              GSA FORM 7925 (REV. 10-89)

## NOTICE OF OVERCHARGE

| RUN DATE | CARRIER | | DRN |
|---|---|---|---|
| 04/03/06 | FOREMOST FORWARDERS INC<br>P O BOX 23758 | | FOFD0001 |
| SCAC<br>FOFD | TIGARD | OR  97281-3758 | BATCH-ID<br>0000000000 |
| AGENCY CODE<br>21- | DATE BILL PAID<br>01/01/04 | SHIPPING DATE<br>12/31/03 | SHIP SPECIFIC NUMBER<br>Various | CARRIER BILL NUMBER<br>Various |

| AUDITOR NUMBER | REVIEWER NUMBER | CONTRACTOR<br>06MSF | PLEASE FURNISH A COPY OF THIS FORM WITH ALL CORRESPONDENCE.<br>MAKE CHECK PAYABLE TO "GENERAL SERVICES ADMINISTRATION". |
|---|---|---|---|
| DIRECTOR, TRANSPORTATION AUDIT DIVISION<br>CTL# 06MSF0018T00120D02 | TELEPHONE NUMBER<br>(202) 501-3334<br>MODE  FOREIGN CURRENCY<br>FHG  N | MAIL TO ▶ | GENERAL SERIVCES ADMINISTRATION<br>Transportation Audit Voluntary Program<br>P.O. BOX 979006<br>ST LOUIS, MO  63197-9006 |

THIS OVERCHARGE AMOUNT SHOULD BE PROMPTLY REFUNDED OR EVIDENCE FURNISHED TO SUPPORT CHARGES ORIGINALLY PAID; OTHERWISE, COLLECTION ACTION MUST BE INITIATED PURSUANT TO 31 U.S.C 3726.

| AMOUNT PAID | SHOULD BE AMOUNT | AMOUNT OF OVERCHARGE | INTEREST | TOTAL AMOUNT OF OVERCHARGE |
|---|---|---|---|---|
| 4,752,569.92 | 3,549,871.47 | 1,202,698.45 | .00 | 1,202,698.45 |

BASIS OF OVERCHARGE

Send PROTEST to:
General Services Administration
Crystal Plaza 4, Room 300 (FBAA)
2200 Crystal Drive
Arlington, VA 20406

ORIGIN:        Various
DESTINATION:   Various
ROUTING:
Various

BASIS AND AUTHORITY:
This Notice of Overcharge is issued to recover charges that were erroneously billed by your company for War Risk Surcharges (WAR), Port/Terminal Security Handling Surcharges (COF), and Port Congestion Surcharges (CON), applied to codes T, 5, and J shipments.

The Surface Deployment and Distribution Command (SDDC) issued a letter dated February 24, 2006, clarifying the description and application of these surcharges. The letter states in Note 1 that, "Air fuel, bunker, War Risk, Port/Terminal Security Handling, and Port Congestion surcharges are not applicable on shipment codes of service T, 5, and J." Further, SDDC refers to this statement as a clarification of the billing procedure, not a



GENERAL SERVICES ADMINISTRATION                      GSA FORM 7925 (REV. 10-89)

# NOTICE OF OVERCHARGE

| RUN DATE | CARRIER | | | DRN |
|---|---|---|---|---|
| 04/03/06 | FOREMOST FORWARDERS INC<br>P O BOX 23758 | | | FOFD0001 |
| SCAC | | | | BATCH-ID |
| FOFD | TIGARD | | OR  97281-3758 | 0000000000 |
| AGENCY CODE | DATE BILL PAID | SHIPPING DATE | SHIP SPECIFIC NUMBER | CARRIER BILL NUMBER |
| 21- | 01/01/04 | 12/31/03 | Various | Various |
| AUDITOR NUMBER | REVIEWER NUMBER | CONTRACTOR<br>06MSF | PLEASE FURNISH A COPY OF THIS FORM WITH ALL CORRESPONDENCE.<br>MAKE CHECK PAYABLE TO "GENERAL SERVICES ADMINISTRATION". | |
| DIRECTOR, TRANSPORTATION AUDIT DIVISION<br>CTL# 06MSF0018T00120D02 | | TELEPHONE NUMBER<br>(202) 501-3334 | MAIL<br>TO ▶ | GENERAL SERIVCES ADMINISTRATION<br>Transportation Audit Voluntary Program<br>P.O. BOX 979006<br>ST LOUIS, MO  63197-9006 |
| | | MODE    FOREIGN CURRENCY<br>FHG        N | | |

THIS OVERCHARGE AMOUNT SHOULD BE PROMPTLY REFUNDED OR EVIDENCE FURNISHED TO SUPPORT CHARGES ORIGINALLY PAID;
OTHERWISE, COLLECTION ACTION MUST BE INITIATED PURSUANT TO 31 U.S.C 3726.

| AMOUNT<br>PAID | SHOULD BE<br>AMOUNT | AMOUNT OF<br>OVERCHARGE | INTEREST | TOTAL AMOUNT<br>OF OVERCHARGE |
|---|---|---|---|---|
| 4,752,569.92 | 3,549,871.47 | 1,202,698.45 | .00 | 1,202,698.45 |

BASIS OF OVERCHARGE

change. In accordance with this explanation of the appropriate
billing of surcharges, the Audit Division is requesting a refund
of excess charges related to the improper application of
surcharges to Codes T, 5, and J shipments.

The following DRN's are included in this overcharge:

| | | | | | |
|---|---|---|---|---|---|
| AP221111 | $28.00 | AP221121 | $20.50 | AP221133 | $12.00 |
| AP221136 | $17.50 | AP221186 | $8.63 | AP221188 | $29.00 |
| AP221192 | $12.88 | AP221194 | $24.25 | AP221200 | $7.50 |
| AP221204 | $15.63 | AP221221 | $5.13 | AP241092 | $13.60 |
| AP241141 | $15.00 | AP241151 | $27.00 | AP241152 | $20.00 |
| AP241156 | $21.00 | AP241166 | $38.00 | AP241167 | $20.00 |
| AP241173 | $11.75 | AP241176 | $9.70 | AP241177 | $7.25 |
| AP241185 | $23.00 | AP241201 | $20.00 | AP241202 | $57.00 |
| AP241203 | $29.00 | AP241206 | $52.00 | AP241223 | $44.20 |
| AP241228 | $78.00 | AP241229 | $26.60 | AP241243 | $31.00 |
| AP241245 | $24.60 | AP241246 | $18.65 | AP241248 | $25.00 |
| AP241251 | $12.00 | AP241260 | $5.05 | AP241265 | $74.00 |
| AP241268 | $6.95 | AP241273 | $31.00 | AP241278 | $26.00 |
| AP241280 | $15.75 | AP241289 | $12.75 | AP241290 | $37.00 |
| AP241291 | $46.00 | AP241297 | $30.10 | AP241300 | $62.00 |
| AP241315 | $19.80 | AP241316 | $80.00 | AP241318 | $32.00 |
| AP241320 | $47.00 | AP241323 | $62.00 | AP241328 | $10.50 |
| AP241334 | $11.60 | AP241337 | $7.65 | AP356399 | $73.65 |
| AP356680 | $35.05 | AP356774 | $29.75 | AP356794 | $96.25 |
| AP356821 | $38.25 | AP356822 | $30.10 | AP356824 | $25.25 |
| AP356826 | $52.05 | AP356829 | $143.75 | AP356830 | $101.55 |
| AP356832 | $81.90 | AP356839 | $102.30 | AP356840 | $39.15 |
| AP356841 | $41.85 | AP356843 | $35.15 | AP356858 | $41.10 |
| AP356861 | $25.55 | AP356864 | $42.10 | AP356875 | $94.90 |
| AP356877 | $27.20 | AP356880 | $52.90 | AP356883 | $32.20 |
| AP356889 | $14.35 | AP356904 | $35.30 | AP356906 | $24.65 |

GENERAL SERVICES ADMINISTRATION                           GSA FORM 7925 (REV. 10-89)

# CARTWRIGHT INTERNATIONAL VAN LINES, INC.

April 28, 2006

Mr. James F. Fitzgerald
Director Audit Division (FBA)
General Services Administration
2200 Crystal Drive, Room 300
Arlington, VA 20406

Dear Mr. Fitzgerald:

    This is in response to the Notice of Overcharge issued on April 3, 2006 against Cartwright International Van Lines, Inc. in the amount of $241,210.84. As shown by the underlying support, these charges were incurred either as a result of port congestion and/or security handling matters, CON or COF. A review of our billing records show that we erroneously billed 133 of the charges as WAR, when they should have been billed as CON or COF. I am enclosing revised SF1113's, with supporting documentation, using the proper billing code of CON or COF. One additional billing originally billed as WAR has already been re-billed as CON. We found three additional items originally billed as WAR on which we accept chargeback. A check is enclosed for these three items. I am attaching a spreadsheet listing these items.

    As you are aware, SDDC has just released a clarification message dated April 11, 2006, which was posted to the SDDC website on April 25, 2006. The document recognizes the point made by the HHGFAA and Alan Wohlstetter, General Counsel of the Association, who is also our attorney, that port congestion results from trucks as well as vessels. You will note that the SDDC clarification reflects this fact in its definition of CON and further makes clear that these surcharges are applicable to Codes 5, T and J. On this basis we ask that the Notice of Overcharge be withdrawn.

    In the past we have also received Notices of Overcharge covering our assessment of unpacking charges on baggage shipments. As you may know, at the last Military/Industry Symposium SDDC agreed that the unpacking of baggage shipments will be made a pre-approved item thereby eliminating any need for authorization of this service by the Transportation Officer. In other words the request of the military member will suffice for payment of this service. Although nothing has yet been issued by SDDC on this subject I would ask, to avoid unnecessary administrative burdens, that you defer any further action on this type of overcharge until SDDC has advised of its final action.

Should anything further be required, please let me know.

Sincerely,

Cartwright International Van Lines, Inc.

Andrew W. Cartwright – President

11901 Cartwright Avenue * Grandview, Missouri 64030-1182 * (816) 763-2700
www.cartwrighttrans.com

Att. 4



**Foremost Forwarders, Inc.**
P.O. BOX 23758  •  TIGARD, OR  97223
(503) 245-1090  •  ITT TELEX 4997676
FAX # 503/245-1395

April 25, 2006

Mr. James F. Fitzgerald
Director Audit Division (FBA), GSA
2200 Crystal Drive, Rm 300
Arlington, Va. 20406

RECEIVED
MAY - 1
DENNING & WOHLSTETTER

Dear Mr. Fitzgerald:

This is in response to the Notice of Overcharge issued on April 3, 2006 against Foremost Forwarders, Inc. in the amount of $1,202,695.45. As shown by the underlying support, these charges were incurred either as a result of port congestion and/or security handling matters, CON or COF.

As you are aware, SDDC has just released a clarification message, dated April 11, 2006, now on SDDC's Website, which I understand has been furnished to you by the Household Goods Forwarders Association of America (HHGFAA). The document recognizes the point made by the HHGFAA and Alan Wohlstetter, General Counsel of the Association, who is also our attorney, that port congestion results from trucks as well as vessels. You will note that the SDDC clarification reflects this fact in its definition of CON and further makes clear that these surcharges are applicable to Codes 5, T and J. On this basis, we ask that the Notice of Overcharge be withdrawn.

In the past, we have also received Notices of Overcharge covering our assessment of unpacking charges on baggage shipments. As you may know, at the last Military/Industry Symposium, SDDC agreed that the unpacking of baggage shipments will be made a pre-approved item thereby eliminating any need for authorization of this service by the Transportation Officer. In other words the request of the military member will suffice for payment of this service.
Although nothing has yet been issued by SDDC on this subject, I would ask, to avoid unnecessary administrative burdens that you defer any further action on this type of overcharge until SDDC has advised of its final action on this matter.

Should anything further be required, please let me know.

Sincerely,

FOREMOST FORWARDERS, INC.

By: _____
Kenneth L. Sullivan, President

2505 S.W. SPRING GARDEN STREET  •  SUITE 100  •  PORTLAND, OREGON 97219
I.C.C. FF592

MAY 01,2006 14:26                                                                                          Page 1

## DECLARATION OF TERRY R. HEAD

1. My name is Terry R. Head. I am president of the Household Goods Forwarders Association of America, Inc. whose membership includes forwarders participating in the military household goods program who perform the Code J services involved in the forwarding of international unaccompanied baggage shipments. In that connection, I have participated in all meetings with GSA involving Notices of Overcharge issued by GSA, all of which solely state the inapplicability of Item 433 of the governing solicitation to Code J shipments. In that capacity, I originally negotiated with the Military Management Traffic Command (MTMC), the predecessor of SDDC, the surcharge item which provided compensation to carriers for additional expenses incurred as a result of 9/11.

2. I have been informed that the District Court for the District of Columbia has been advised by GSA that the fact that billings for this surcharge under Item 433 were made as "WAR" rather than as "CON" is a basis for denial for the surcharge although the Notices of Overcharge set forth as the sole ground for the disallowance, the inapplicability of this surcharge to Code J shipments. I can advise unequivocally that I participated in a telephone call with Mr. James Fitzgerald, Director of the Transportation Audit Division of GSA, in which he agreed that the surcharges under this item would not have to be rebilled as CON

Att. 5
p. 2 of 2

to be considered for payment. I transmitted Mr. Fitzgerald's statement to the carriers involved, which includes Foremost and Cartwright.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Terry R. Head

Dated: December 4, 2007

2



GSA Federal Supply Service

JUL 25 2007

Alan F. Wohlstetter
Denning & Wohlstetter
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20006

Dear Mr. Wohlstetter:

This letter is only in response to your letter dated January 23, 2007 in your capacity as the representative of the Household Goods Forwarders Association of America, Inc. (HHGFAA) concerning various Notices of Overcharge issued by GSA in connection with the pass-through of congestion expenses for Code J shipments. This letter is not in response to your January 23 letter to the extent your letter replied to any of the specific Notices that have been issued to various members of HHGFAA whom you listed in the signature block of your January 23 letter. Your January 23 letter responded to GSA's position that pass-through charges from the TSPs for port congestion, which were billed by port agents for the TSPs, were not properly filed with the appropriate regulatory body, and consequently, not allowable. You disagreed, and requested rescission of the subject Notices of Overcharge issued on that basis.

You have made various arguments to support your position including those summarized below.

(1) The legal assumption upon which the Notices of Overcharge are based is incorrect -- there is no legal requirement for port agents to issue tariffs.

(2) SDDC erroneously assumed that the surcharges (including port congestion surcharges) listed in Items 432 Application of Transportation SFR -- HHG and 433 Application of Transportation SFR -- UB are required to be filed with a regulatory body.

(3) The Notices of Overcharge result in services rendered without payment since the Government requested the services from transportation service providers (TSPs) who contracted with port agents who performed and were paid by the TSPs.

(4) In International Personal Property Rate Solicitation (IPPRS) 13, Items 432 and 433 were amended to compensate the TSPs for charges billed by

U.S. General Services Administration
1901 S. Bell Street
Arlington, VA  20406-0002
www.gsa.gov

port agents for excessive delays caused by increased security measures as a result of September 11, 2001 (9/11).

GSA has reviewed your arguments. GSA is not convinced that the provisions of IPPRS 13, Items 432 and 433, can be interpreted and applied under the circumstances in the manner that you have described. The provisions are unambiguous and GSA applies them significantly differently from the way that you have.

### IPPRS 13, Items 432 and 433

The Port Congestion Surcharge (CON) has been defined by SDDC as "an extra charge that is billed to the TSP for controlling congestion of trucks/vessels entering/departing the port." Since only the port has control over congestion at its own port, only the port can levy a fee for controlling congestion at the port. Only fees levied by the port are applied to control congestion at the port. Such fees may be imposed by commercial ports (ocean or air). Such fees are not imposed by ports on military installations. Fees denoted as for congestion at the port imposed by "port agents" who are subcontractors to the TSPs are not applied to control congestion at the port. Thus, they are not CON (fees for controlling congestion at the port) in accordance with the provisions of Items 432 and 433.

The Notices of Overcharge were issued against the TSPs for congestion surcharges billed by the "port agents" to the TSPs. These "port agents" are, in fact, the agents or subcontractors of the TSPs; they are not the agents of, and do not represent, the port. Such surcharges from "port agents" who are subcontractors of the TSPs are inappropriate under Items 432 and 433. In addition, these surcharges have been applied to shipments entering/departing ports on military installations where such fees are not levied by the military port. Thus, it is clear that the "port agents" are subcontractors to the TSPs and are not representatives of the port, and these charges are deemed inappropriate.

### Compensation for Services Rendered

You have described the service provided by the ITGBLTSP port agents that warrants compensation as delays at military installations resulting from increased security measures as a consequence of "9/11." Such delays, additional waiting time due to the increased security, is not Port Congestion Surcharge (CON) as defined by SDDC. Such additional waiting time has already been provided for. The IPPRS 13 provides for excessive delays as defined by Item 503 Waiting Time. For international shipments, the TSP will expend 3 hours waiting time for direct deliveries and 1 hour for from SIT or attempted pickups, the free waiting time, before the TSP will have excessive delays which potentially meets the definition of Item 503 Waiting Time. The TSP must notify the PPSO of the potential delay, and notify the PPSO prior to expiration of the free waiting time

and obtain further instructions. Paid waiting time, the additional waiting time, begins only upon the expiration of the free waiting time and requires the prior approval of the PPSO of the potential delay. These instructions have also been posted on SDDC's website as a policy regarding delays due to installations security requirements.

Additionally, the Defense Transportation Regulation (DTR) requires TSPs to immediately notify the local transportation officer and HQ MTMC via email of any incidents that "produce significant loss, damage, or delay resulting from strikes, port congestion, fires, pilferage, vandalism and similar incidents." See DTR, IV-B-9. These procedures illustrate the importance to SDDC of delays including those caused by port congestion. These reporting requirements are separate and apart from the prior notification and approval required for Item 503 Waiting Time.

GSA concludes that ITGBL TSPs are not entitled to separately bill for waiting time due to increase security at the port incurred by the TSPs' port agent under the provisions of IPPRS13, Items 432 and 433 (as amended). A certain amount of free waiting time is included in the Transportation SFR for Items 432 and 433. The appropriate charge for delays at the ports resulting in excessive waiting time is provided for in IPPRS 13, Item 503 (as amended) where prior notification and approval of the PPSO is prescribed. GSA therefore denies your request for rescission of the subject Notices of Overcharge.

Accordingly, GSA will immediately resume the issuance of Notices of Overcharge for the pass-through of congestion surcharges for Code J shipments from the TSPs' "port agents," as well as the collection of the debt due the Government from the TSPs for these transportation overcharges as permitted by regulations, including administrative offset. Such Notices of Overcharge may be successfully rebutted by presenting documentation supporting waiting time in accordance with IPPRS 13, Item 503 (as amended). If a TSP is unable to pay the debt due to the Government immediately, GSA is willing to consider alternate arrangements for payment.

Sincerely,

James F. Fitzgerald
Director